## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
LIBERTY HEALTHSHARE,
BREANNA TENERIA,
LAURA SMITH, and
TAMMY WATERS,

        Plaintiffs,

                                    CASE NO: 23-cv-00276 MLG-KK

v.

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
JENNIFER A. CATECHIS,
Interim Superintendent of Insurance,
in her official capacity,

        Defendants.

## RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

**COME NOW** the New Mexico Office of the Superintendent of Insurance, and Jennifer A. Catechis, Interim Superintendent of Insurance, in her official capacity, (collectively, the "Defendants"), who respectfully submit this Response to Plaintiffs' Motion For Preliminary Injunction.

## I.      INTRODUCTION

The New Mexico Superintendent of Insurance has plenary jurisdiction to oversee the business of insurance in this state. Included in that jurisdiction is the oversight of health benefit plans, including their offering, sale, and administration. The Interim Superintendent concluded that the Liberty HealthShare program, a health care sharing ministry ("HCSM") offered, sold, and administered in New Mexico by the Gospel Light Mennonite Church Medical Aid Plan's (Gospel

Light), was a health benefits plan subject to the Superintendent's jurisdiction. Further, before offering its HCSM in New Mexico, Gospel Light was required to obtain a certificate of authority, and obtain the Superintendent's approval of the plan, but failed to do so. As a result, the Interim Superintendent ordered Gospel Light to cease and desist from selling or servicing HCSM memberships in New Mexico and to pay a fine ("Final Order"). Now, by this particular proceeding, Gospel Light seeks a Preliminary Injunction to stay the enforcement of the Final Order.

As discussed below, Gospel Light cannot meet its burden to show it would be entitled to such a stay. To the contrary, a stay would defeat the state's interest in prompt enforcement of the order. In addition, there exist significant legal issues that must be first addressed before considering the requested stay. Accordingly, the Defendants request that this Court deny the Motion for a Preliminary Injunction.

## II.    ARGUMENT

### A.    The Superintendent properly ordered Gospel Light to cease and desist from violating the New Mexico Insurance Code and this Court should not interfere with the state court proceeding seeking to challenge that decision by issuing a stay.

In its continuing attempt to evade its statutory compliance obligations, Gospel Light now resorts to various overlapping claims for injunctive relief. On one hand, Gospel Light sought a judicial review of the Final Order when it filed a Notice of Appeal with the First Judicial District Court (D-101-CV-2023-00660) on March 22, 2023, pursuant to Section 39-3-1.1(C) NMSA 1978,[1] and Rule 1-074(E) NMRA. Shortly thereafter, on April 5, 2023, Gospel Light requested

---

[1]    Section 39-3-1.1(A) provides that "this section shall apply only to judicial review of agency final decisions that are placed under the authority of this section by specific statutory reference." Section 59A-4-20(A), NMSA 1978, is the specific statutory provision which subjects final decisions originating from the Office of the Superintendent of Insurance to Section 39-3-1.1(A).

*Defendants' Response to Motion for Preliminary Injunction*
Page 2

the state district court to stay the Final Order until the completion of the state appeal.

On the other hand, after filing its state appeal, on March 31, 2023, Gospel Light filed the present Complaint for Injunctive and Declaratory Relief in the United States District Court for the District of New Mexico. (Doc. 1). On that same day, Gospel Light filed the pending Motion for Temporary Injunction. (Doc. 3). As a result, Gospel Light currently has two pending stay requests, one in state court and the other in federal court.

Defendants have raised the question of abstention by its Motion to Dismiss. (Doc. 8). Under the abstention doctrine that the Supreme Court articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970) ("Younger"), "federal courts should not 'interfere with state court proceedings' by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings"— when the state forum provides an adequate avenue for relief. *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001) (*quoting Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). The *Younger* abstention doctrine is a recognition "that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Morrow v. Winslow*, 94 F.3d 1386, 1392 (10th Cir. 1996) (*quoting Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (*quoting Seneca–Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989)). The *Younger* doctrine is based "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems." *Kingston v. Utah Cnty.,* 161 F.3d 17 (10th Cir. 1998) (*quoting Phelps v. Hamilton*, 122 F.3d 885,

889 (10th Cir.1997). It is for those reasons that prior to engaging in any analysis of the merits of the Plaintiffs' requested injunction, the Court must first address the *Younger* issue. *See e.g., Goodwin v. Cnty. of Summit, Ohio*, 45 F. Supp. 3d 692, 698 (N.D. Ohio 2014) (*citing Tenet v. Doe*, 544 U.S. 1, 6 n. 4, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005)).

This Court should accordingly defer consideration of the Motion for a Preliminary Injunction until such time that the issues raised in the Defendants' Motion to Dismiss have been addressed.

**B.**    **Gospel Light cannot make the required showings to obtain a stay of the Superintendent's order.**

To obtain a stay in this Court, Gospel Light must establish: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *See, e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *United States v. Various Tracts of Land in Muskogee and Cherokee Counties*, 74 F.3d 197, 198 (10th Cir. 1996) (citing *Hilton*); *Pueblo of Pojoaque v. State*, 223 F.Supp.3d 1021, 1091 (D.N.M. 2017) (quoting *Hilton* and discussing the factors), *aff'd*, 863 F.3d 1226 (10th Cir. 2017).

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant. The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted); *see also Pueblo of Pojoaque*, 223 F.Supp.3d at 1140. For these reasons, federal courts are hesitant

to delay the prompt execution of administrative orders and will do so only in the rarest circumstances.

> Moreover, stays are a matter of the court's sound, but not unfettered, discretion.

> A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

*Nken*, 556 U.S. at 433-34 (internal quotation marks, alteration marks, and citations omitted). "A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id*. at 434 (internal quotation marks and alteration marks omitted). Sound legal principles support the denial of the Plaintiffs' requested stay.

Further, and most importantly, since Gospel Light has a statutory right to appeal the Final Order in state court, and has done so, in accordance with the *Younger* doctrine, this Court should abstain from considering the requested injunction unless and until such time the Plaintiffs make a showing of extraordinary circumstances justifying the Court's refusal to abstain. *See Chapman v. Barcus,* 372 F. App'x 899, 902 (10th Cir. 2010); *Hall v. New Mexico Child., Youth & Fams. Dep't*, No. 09-CV-660 BB/RHS, 2010 WL 11619317, *3 (D.N.M. July 21, 2010).

### 1.    Gospel Light is not likely to prevail on the merits.

Turning to the four *Hilton* factors, "[t]he first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.' … By the same token, simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citations omitted); *see also Pueblo of Pojoaque*, 233 F.Supp.3d at 1091 (quoting and discussing this language). This language has been interpreted to

mean that "the Supreme Court has required a strong showing of likelihood of success **and** irreparable injury." *Pueblo of Pojoaque* at 1093 (emphasis in original); *see also Hilton*, 481 U.S. at 776 (applicant must make "a ***strong showing*** that he is likely to succeed on the merits" (emphasis added); *Nken*, 556 U.S. at 438 (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other").  Gospel Light has failed to make a strong showing of a sufficient chance of success on the merits and has failed to make a strong showing of a sufficient possibility of irreparable injury to grant a stay.

The Plaintiffs have raised several arguments why they will prevail.  One such argument is that the Gospel Light program is not insurance subject to regulation by the Superintendent.  This argument has been soundly rejected by both the courts and other state insurance authorities.  *See e.g., Commonwealth v. Reinhold*, 325 S.W.3d 272 (2010).  *LeCann v. The Aliera Campanies, Inc,* Case No. 1:20-cv- 02429 (N.D. GA. slip op at 65, June 22, 2021, appeal dismissed, llth Cir., Dec. 15, 2021); *Jackson v. Aliera Companies, Inc.,* U.S. W.D.Wash. (Seattle), 462 F.Supp.3d. 1129 (May 26, 2020) (plaintiff's claims survived motions to dismiss on the defendant's legitimacy as an HCSM, sales of unauthorized health plans, and unfair and deceptive practices; multilevel internal review and binding arbitration requirements of plans violated state law); and *Kelly v. Aliera Companies, Inc.,* U.S. W.D.Mo. (So. Div.), slip op. (Nov. 23, 2020) (plaintiff's claims survived motion to dismiss as to unauthorized health plans, ACA violations including lack of essential benefits, and plan arbitration requirements).

State regulatory authorities who have concluded that a HSCM is an insurance product include the Maryland Insurance Administration *(*Memorandum Opinion dated August 18, 2022, *Maryland Insurance Administration v. Medi Share, Inc., DBA Christian Care Ministry, et al*,

Case Nos. MIA-2020-06-019; MIA-2020-06-022;[2] MIA-2020-06-023; MIA-2020-06-023; MIA-2020-07-001; MIA-2020-02-005; and MIA-2020-07-010) (finding that the programs offered by Gospel Light and other HCSMs were insurance), and the Washington State Office of the Insurance Commissioner (*In the Matter of Aliera Healthshare, Inc.*, Dkt. No. 19-0251, *Final Order On Summary Judgment* (Nov. 13, 2020) (finding the HSCM's products were insurance and recommending cease and desist order be upheld).

The Plaintiffs also advance the constitutional argument that the Final Order constitutes a violation of their Free Exercise Clause under the Free Exercise Clause of the 1st Amendment and the New Mexico Religious Freedom Restoration Act.  However, the New Mexico Insurance Code "is in the form of a rule of general applicability and does not directly discriminate against religion or among religions".  *See Employment Division of Oregon v. Smith,* 494 U.S. 872 (1990).  It is therefore necessary for the Plaintiffs to show that the Insurance Code allows secular motivated conduct to be favored over religiously motivated conduct.  *See e.g., We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2nd Cir. 2021). However, Plaintiffs have made so such showing.  Without such a showing, the Final Order and the laws it enforces are not subject to strict scrutiny which makes it extremely difficult for the Plaintiffs to make the necessary showing that they have a strong likelihood of success.

Similarly, the Final Order and the laws it enforces does not violate the New Mexico Religious Freedom Restoration Act.  The Insurance Code is unconcerned with religion and seek only to enforce the general requirement of proper statutory authority for entities that undertake insurance business.

---

[2]    Case No. MIA-2020-022 involves an enforcement action brought by the Maryland Insurance Administration against Gospel Light.

And further, the Plaintiffs' requested relief falls into a category of disfavored injunctions. The Tenth Circuit disfavors some injunctive relief and requires "more of the parties who request them." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (*citing Schrier v. Univ. of Colo.,* 427 F.3d at 1258-59 (10th Cir. 2005)). Disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir.2004) (*en banc*) (internal citations and quotations omitted), *cert. granted sub nom on other grounds, Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973, 125 S.Ct. 1846, 161 L.Ed.2d 723 (2005).

Plaintiffs are requesting that the Defendants act in a particular way, that is refrain from enforcing the Insurance Code against the Plaintiffs and other HSCMs. Such a request places the Court in a position where it may be required to provide ongoing supervision to assure that the Defendants are abiding by the injunction especially with respect to enforcements actions involving other HCSMs. For example, Defendants have entered into Consent Agreements in the past six months with similar entities, the House of Prayer and Life, Incorporated, dba Jericho Share, eDocket No: 2022-0090, and Sedera Medical Cost Sharing Community, eDocket No: 2023-0026. Investigations of similar entities are ongoing. The Plaintiffs' requested relief could allow these entities to resume operations, shut down any investigations of similar entities, and essentially require the Court to perform some type of oversight to ensure compliance. Therefore, Plaintiffs' requested injunction falls within the first disfavored category, a "mandatory preliminary injunction." *See Schrier v. Univ. of Colo.*, 427 F.3d at 1259. Any preliminary injunction fitting within any of the disfavored

categories "must be more closely scrutinize[ ] to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Legacy Church, Inc. v. Kunkel,* 455 F. Supp. 3d 1100, 1144 (D.N.M. 2020) (*quoting O Centro*, 389 F.3d at 975).

### 2.    Plaintiffs will not suffer irreparable harm in the absence of a stay.

The Plaintiffs must also make a showing that they will suffer an irreparable harm unless the stay is granted. Demonstrating irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). "The injury must be actual and substantial, or an affirmative prospect thereof, and not a mere possibility of harm." *State ex rel. State Hwy. & Transp. Dep't of N.M. v. City of Sunland Park*, 2000-NMCA-044, ¶ 19, 120 N.M. 151, 3 P.3d 128, *cert. denied*, 129 N.M. 207, 4 P.3d 35 (2000). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted); *New Mexico v. Dep't of Interior*, 126 F.Supp.3d 1201, 1213 (D.N.M. 2014) (internal quotation marks omitted).

With respect to the individual Plaintiffs, they advance a free exercise claim by alleging that they will suffer irreparable harm because they will be unable to "join with other religiously minded individuals to share in each other's burdens". The "free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice ...." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 565, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1983) (quotation and citation omitted). A substantial burden is a regulation that significantly inhibits or constrains conduct or expression that constitutes an exercise of religion. Stated otherwise, a substantial burden exists when the state puts "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Thomas v. Review Bd. of the Indiana*

*Employment Sec. Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). A substantial burden must place more than an inconvenience on religious exercise and must have more of an impact than making the practice of religious beliefs more expensive. *Braunfeld v. Brown*, 366 U.S. 599, 605–607, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004). However, the individual Plaintiffs have made no showing how requiring Gospel Light to comply with the Insurance Code puts them in a position where they are being given the choice of either engaging in conduct that seriously violates their religious beliefs or facing serious consequences.

As for Gospel Light's claim that it will be irreparably harmed unless an injunction is issued, Gospel Light's harm is self-inflicted. Gospel Light refuses to comply with the relevant requirements of the Insurance Code, such as obtaining a certificate of authority or even explore how its program could be modified or structured to obtain regulatory approval. Instead, Gospel Light takes the position that its program is not insurance despite numerous court and administrative decisions to the contrary or is otherwise exempt from state insurance regulation because it is a HCSM. "[C]ase law is well-settled that '[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'" *Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001); *Fiba Leasing Co., Inc. v. Airdyne Indus., Inc.*, 826 F.Supp. 38, 39 (D.Mass.1993); *see also San Francisco Real Estate Investors v. Real Estate Investment Trust*, 692 F.2d 814, 818 (1st Cir.1982).

### 3. Other interested persons, including the other 487 members, would be irreparably harmed if a stay is granted.

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge

when the Government is the opposing party." *Nken*, 556 U.S. at 435. But the Court must guard against the temptation to consider the government's interest as negligible. *See, e.g.*, *Nken* at 435-36 (when question is whether to order a stay pending appeal of administrative removal order, it is erroneous to describe the government's interest in removal of alien as negligible; government has interest in streamlined administrative proceedings and in preventing a prolonged violation of law); *Pueblo of Pojoaque*, 223 F.Supp.3d at 1146 ("That state actors are opposing parties, moreover, 'does not make the public interest ... negligible'", quoting *Nken* at 435).

The harm-to-other-interested-persons factor does not turn on whether the moving party will be injured absent a stay; it simply requires that the moving party meet its burden to establish that the requested stay will not be harmful to the public interest. *Associated Sec. Corp. v. Sec. & Exch. Comm'n*, 283 F.2d 773, 775 (10th Cir. 1960). Federal courts have formulated this test as requiring the Court to inquire "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 426; *Hilton*, 481 U.S. at 776; *Pueblo of Pojoaque*, 223 F.Supp.3d at 1147. The emphasis on this factor is the harm to the non-moving party, or others, regardless of whether there is harm to the moving party.

As Gospel Light has expressly acknowledged, as of March 31, 2023, Gospel Light has 490 members in New Mexico. As of that same date, 1,433 medical bills totaling $1,483.352 are outstanding. New Mexico requires insurers to "maintain reserves in such amount as is requisite to cover losses and claims incurred and unpaid . . .." NMSA 1978, § 59A-8-8(A) (1984). Because of its refusal to comply to any insurance regulation, it is unknown whether Gospel Light has adequate financial reserves to provide coverage to its members in the event of the entity's financial failure.

In passing the McCarran–Ferguson Act,[3] Congress expressly acknowledged that that "continued regulation and taxation by the several States of the business of insurance is in the public interest". *Humana Inc. v. Forsyth*, 525 U.S. 299, 306, 119 S. Ct. 710, 716, 142 L. Ed. 2d 753 (1999). "The prevention of insolvency and the maintenance of 'sound' financial condition in terms of fixed-dollar obligations is precisely what traditional state regulation [of insurance] is aimed at." *First Nat'l Bank of E. Ark. v. Taylor*, 907 F.2d 775, 780 (8th Cir.1990) (*quoting SEC v. Variable Annuity Life Ins. Co. of Am.,* 359 U.S. 65, 90–91, 79 S.Ct. 618, 631–32, 3 L.Ed.2d 640 (1959).

The Insurance Code contains several provisions intended to protect the consumer from an insurer's failure to maintain adequate reserves. For example, section 59A-47-16 of the "Nonprofit Health Care Plan Law", Chapter 59A, Article 47 NMSA 1978, requires "[a] health care plan shall establish and maintain reserves in amount clearly adequate, as determined by the superintendent, to cover all liabilities for losses incurred and unpaid." Loss reserves are a critical measure of financial health for an insurance company because the reserves represent expected future amounts that the company will be required to pay on its policies. Yet, because of its refusal to comply with the Insurance Code, the Superintendent is unable to determine whether Gospel Light has sufficient reserves to cover the unpaid medical bills of its members.

To obtain a stay, Gospel Light must make "a showing that no harm will ensue to the public interest." A state's ability to enact and enforce measures it deems to be in the public interest is an equity to be considered in balancing hardships. *Heideman*, 348 F.3d at 1191; *Pueblo of Pojoaque*, 223 F.Supp.3d at 1146; *see also Nken*, 556 U.S. at 436. As the McCarran–

---

[3]      See 15 U.S.C. §§ 1011–1015.

Ferguson Act,[4] Congress expressly acknowledged, the "continued regulation and taxation by the several States of the business of insurance is in the public interest". It is clearly in the public's interest, which includes the members of the Gospel Light HCSM, to prevent Gospel Light's insolvency through the maintenance of its sound financial condition in terms of fixed-dollar obligations. Staying the enforcement of the Superintendent's order would therefore be contrary to the public interest.

**WHEREFORE,** for all of the foregoing reason, NMOSI requests that this Court deny the Plaintiffs' Motion for Preliminary Injunction. Should the Court decide to the grant to stay, the Defendants requests that Gospel be directed to submit a bond to the Court, in the full amount of the penalty ordered by the Superintendent, to remain in the custody of the Court pending the outcome of this proceeding.

Respectfully submitted,

_____
Stephen P. Thies
Associate Legal Counsel
Lawrence M. Marcus
Associate Legal Counsel
Office of General Counsel
NM Office of Superintendent of Insurance
PO Box 1689, Santa Fe, NM 87504-1689
505-470-7366
505-709-8405
Stephen.Thies@osi.nm.gov
Larry.Marcus@osi.nm.gov

Attorneys for Defendants Office of the Superintendent of Insurance, and Jennifer A. Catechis, Interim Superintendent of Insurance, in her official capacity

---

[4]    See 15 U.S.C. §§ 1011–1015.

*Defendants' Response to Motion for Preliminary Injunction*
Page 13

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, a true and accurate copy of the foregoing *Response to Motion For Preliminary Injunction* was electronically filed with the Court and served upon the parties by means of the CM/ECF system.

_____
Stephen P. Thies
Office of General Counsel
NM Office of Superintendent of Insurance
PO Box 1689, Santa Fe, NM 87504-1689
505-470-7366
Stephen.Thies@osi.nm.gov

One of the Attorneys for Defendants Office of the Superintendent of Insurance, and Jennifer A. Catechis, Interim Superintendent of Insurance, in her official capacity