IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

    Plaintiffs,

v.       Case No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE,
and ALICE T. KANE, New Mexico
Superintendent of Insurance, in her
official capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO RECONSIDER**

This matter comes before the Court on Breanna Renteria, Laura Smith, and Tammy Waters' (the "Individual Plaintiffs") Emergency Motion to Reconsider Memorandum Order Denying Motion for Preliminary Injunction, filed August 9, 2023. Doc. 44. Having reviewed the parties' submissions and the applicable law, the Court grants the motion to the extent it requests that the Court consider new evidence. However, the Court finds that the new evidence is insufficient to change its previous ruling and therefore denies the motion to the extent it seeks a different outcome on the July 14, 2023, Memorandum Opinion and Order ("July 14, 2023, MOO"). Doc. 38.

INTRODUCTION

The Individual Plaintiffs, alongside Gospel Light Mennonite Church Medical Aid Plan d/b/a Liberty HealthShare ("Gospel Light"), filed a complaint seeking various forms of injunctive relief, all of which are encompassed by their demand that Gospel Light receive a blanket exemption from New Mexico's Insurance Code. Doc. 1 at 78 (requesting a "permanent injunction enjoining Defendants from enforcing the New Mexico Insurance Code against [Gospel Light] and other HCSMs"). Along with the complaint, Plaintiffs filed a motion for preliminary injunction that, if granted, would stall the Office of the Superintendent of Insurance's efforts to take administrative enforcement actions against Gospel Light. Doc. 3 at 27. The Court refused to issue a preliminary injunction, but after a state court issued a temporary restraining order commanding Gospel Light to comply with an OSI cease-and-desist order, Individual Plaintiffs filed the instant motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). For the reasons explained below, the Court again finds that Individual Plaintiffs have not demonstrated they are entitled to the relief sought.

FACTUAL BACKGROUND

The underlying facts giving rise to this litigation were summarized in the July 14, 2023, MOO, Doc. 38, and that discussion is incorporated by reference here. However, some background is provided below for clarity.

Gospel Light is a foreign corporation that "facilitates voluntary contributions for the sharing of qualifying health care costs between members . . . based on shared ethical and religious beliefs." Doc. 1-10 at 4. To effectuate that objective, Gospel Light collects a "monthly share amount" from its members. *Id.* at 34. The amount of those contributions is "determined by majority vote of the Board of Directors" who look to various factors including the "amount of bills," "the

2

amount needed to administer the [p]rogram," and "the number of participating [m]embers." *Id*. at 10. Gospel Light also collects membership enrollment dues, annual dues, and administrative fees from its members to "defray administrative costs" and address overhead. *Id*. at 11. Although "[e]ach month a Sharing Member is assigned a specific need in which to share," *id.*, Gospel Light bears no responsibility or obligation to pay for any healthcare bill. *Id.* at 36.

After two consumer complaints were lodged against Gospel Light, the New Mexico Superintendent of Insurance ("Superintendent") initiated an administrative enforcement action against the corporation, which resulted in an Order to Cease and Desist and Order to Show Cause ("Order to Show Cause"). Doc. 3-3. That decision was appealed to a hearing officer, who recommended that the Superintendent uphold all aspects of the Order to Show Cause. Doc. 3-4 at 98. Ultimately, Gospel Light was fined $5,000 for each of the 502 plans issued in New Mexico (a total of $2,510,000.00) and required to cease operating until the corporation complied with the New Mexico Insurance Code. Doc. 3-5 at 7 (Superintendent's final order adopting the hearing officer recommendations). Gospel Light appealed that decision to the New Mexico State District Court, and Judge Francis J. Mathew upheld the prior directives providing Gospel Light with a choice—comply with pertinent statutory authority or discontinue its operations.[1] Doc. 51-1. That order is pending and remains in effect until sixty days from August 17, 2023. *Id.* at 2. Thereafter, it may be amended, continued, or vacated conditional on written argument from the parties. *Id.*

---

[1] Judge Mathew granted a temporary restraining order ("TRO") requiring Gospel Light "to cease and desist from soliciting, offering to sell, selling, collecting membership fees or monthly share amounts, or servicing Health Care Sharing Ministries in New Mexico until [Gospel Light] complies with the requirements of the New Mexico Insurance Code." Doc. 51-1 at 2. That order does not address the fines issued to Gospel Light. *See generally id.*

During the pendency of the state proceedings, the Individual Plaintiffs and Gospel Light filed the present federal suit against the New Mexico Office of the Superintendent of Insurance as well as the Superintendent herself in her official capacity (collectively "OSI"), asserting various violations of state and federal law. Doc. 1. These parties also sought a preliminary injunction. Doc. 3. OSI responded with a motion to dismiss. Doc. 8. The Court held an evidentiary hearing on the preliminary injunction and carefully considered the parties' briefing. Ultimately, the Court granted, in part, the Superintendent's motion to dismiss and denied the preliminary injunction. Doc. 38. Gospel Light was dismissed from the federal suit, but the Individual Plaintiffs were permitted to move forward with their claims. *Id.* Plaintiffs filed a notice of appeal, Doc. 41, and the Individual Plaintiffs filed a motion to reconsider the Court's July 14, 2023, MOO. *See* Docs. 38, 44. The stated basis for that request is Judge Mathew's decision, which the Individual Plaintiffs assert gives rise to "new evidence that was unavailable at the time the motion was decided." Doc. 44 at 1.[2]

## LEGAL STANDARD

"Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Pueblo of Jemez v. United States*, 63 F.4th 881, 897 (10th Cir. 2023) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)). Rather, reconsideration is appropriate under circumstances including "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest

---

[2] As this discussion indicates, the Individual Plaintiffs have not sought reconsideration of the portions of the July 14, 2023, MOO pertaining to the motion to dismiss. *See generally* Doc. 44. As a result, the following analysis focuses only on the portions of the July 14, 2023, MOO addressing the motion for preliminary injunction.

injustice." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018). This Court possesses considerable discretion in deciding whether to grant a motion to reconsider. *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996).

## ANALYSIS

### I. Threshold Jurisdictional and Federalism Issues

Before the Court can reach the merits of the preliminary injunction issue, it must address OSI's concerns attendant to jurisdiction and comity. Specifically, OSI argues that the Individual Plaintiffs' appeal of the July 14, 2023, MOO to the Tenth Circuit Court of Appeals divests this Court of jurisdiction to reconsider the issues in that order. Doc. 46 at 1-2. Additionally, OSI contends that even if this Court has jurisdiction, it should refrain from ruling in a manner that would interfere with the state court TRO. *Id.* at 4-5.

The Court looks first to OSI's argument about appellate jurisdiction. Critically, after OSI filed its response, the Tenth Circuit ruled the appeal would be held in abeyance pending this Court's decision on Individual Plaintiffs' motion to reconsider. *See* Doc. 53 (filed August 30, 2023). That guidance is dispositive and binding on this Court. Further, Federal Rule of Appellate Procedure 4(a)(4)(B)(i) provides that "[i]f a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of [a motion to alter or amend the judgment under Rule 59]—the notice becomes effective . . . when the order disposing of the . . . motion is entered." That is, the notice of appeal becomes effective at the appellate level after the district court rules on the motion for reconsideration. Accordingly, the Court possesses jurisdiction to address the matters raised by Individual Plaintiffs in their motion for reconsideration.

Invoking the *Rooker-Feldman* doctrine, OSI also asserts a decision from this Court on Individual Plaintiffs' request for a preliminary injunction would improperly interfere with Judge

Mathew's ruling and corresponding issuance of a temporary restraining order. Doc. 46 at 4-5. But as OSI concedes, the *Rooker-Feldman* doctrine does not squarely apply to the instant matter. "Generally, the *Rooker-Feldman* doctrine precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)). The *sine qua non* of the doctrine is to prevent state-court losers from "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Although it serves as a jurisdictional bar, the *Rooker-Feldman* doctrine has limited scope: it "does not apply 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Mo's Express, LLC*, 441 F.3d at 1237 (quoting *Exxon Mobil Corp.*, 544 U.S. at 282). It also "does not bar a suit by a federal-court plaintiff who was not a party in the state court litigation, nor does it bar a claim that does not seek to modify or set aside a state court judgment." *Bruce v. City & Cty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023).

    Here, the present federal action is concurrent with the state court action and the Individual Plaintiffs are only involved in the federal action, which distinguishes the present circumstances considerably from those giving rise to the *Rooker-Feldman* doctrine. While cognizant of the need to avoid inappropriately stepping on the toes of the state court, this Court has a duty to resolve questions properly before it. *See Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 194-95 (2012) (citing *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821)). Therefore, the Court may not refrain from deciding this motion based on principles of comity.

Having determined that it must address the motion to reconsider, the Court turns to the question of whether reconsideration is proper. Individual Plaintiffs argue that the Court should grant the motion based on new evidence previously unavailable: at the time of the Court's previous order, the state court had not yet ruled on whether to restrain Gospel Light from operating in New Mexico. Doc. 44 at 3-4. Since then, the state court has issued a temporary restraining order requiring Gospel Light to cease operations for sixty days.[3] *See generally* Doc. 51-1. The Court agrees with the Individual Plaintiffs and finds that the state court decision constitutes new evidence previously unavailable. Therefore, the Court turns to the substance of Individual Plaintiffs' request for a preliminary injunction.

## II. Preliminary Injunction

To obtain a preliminary injunction, the movant must show "(1) a substantial likelihood of success on the merits, (2) irreparable injury in the absence of the injunction, (3) its threatened injury outweighs the harm to the opposing party under the injunction, and (4) the injunction is not adverse to the public interest." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1139 n.2 (10th Cir. 2017). The burden is on the movant, and "the right to relief must be clear and unequivocal" due to the extraordinary nature of preliminary injunctions as a remedy. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

### A. Individual Plaintiffs fail to demonstrate a likelihood of success on the merits of their free exercise claims.

The Tenth Circuit has held that the preliminary injunction factors affect each other, and specifically, that the likelihood of success on the merits can "color[]" a court's conclusions on the

---

[3] OSI responds that this new evidence is immaterial because the Individual Plaintiffs have not provided any evidence that the temporary restraining order will impede their exercise of religion. Doc. 46 at 3-4. OSI's argument goes to the merits of the preliminary injunction, not the threshold question of whether reconsideration is proper.

7

other prongs. *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1121 (10th Cir. 2014). This observation has particular import in this case because Individual Plaintiffs' allegations of irreparable harm are directly related to their likelihood of success on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1266 (10th Cir. 2005) ("[The plaintiff] has failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims. As a result, he is not entitled to a presumption of irreparable injury."); *see also Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 737 n.11 (8th Cir. 2008) ("[W]ithout a showing that it will likely prevail on its claim that physicians will be compelled to deliver an ideological message, [the plaintiff's] asserted threat of irreparable harm is correspondingly weakened[.]"). Simply put, if Individual Plaintiffs cannot demonstrate a likely constitutional violation, then they are also unlikely to demonstrate irreparable harm warranting injunctive relief. *See Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1030 (D.N.M. 2016) ("[A] plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm."); *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) ("Where a Plaintiff fails to show a likelihood of success on the merits of their claim that their constitutional rights were violated, a finding of irreparable harm is not warranted."). For this reason, the Court first considers Individual Plaintiffs' likelihood of success on the merits.

  "Under [Supreme Court] precedent[], a plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-22 (2022) (internal quotation marks

omitted).[4] Pointing to this decisional authority, Individual Plaintiffs assert the New Mexico Insurance Code (hereinafter the "Insurance Code") is not generally applicable, because, in their view, it exempts fraternal benefit societies, which are secular organizations, but not HCSMs, which are religious.[5] Doc. 51 at 9; *see also* NMSA 1978, § 59A-1-15(A) (1985). Additionally, in their previous briefing—briefing which the Court here reconsiders—Individual Plaintiffs argued that OSI's actions were not neutral and motivated by hostility towards Gospel Light. Doc. 28 at 38. The Court addresses these issues in turn.

1. General applicability

The Insurance Code provides that "[n]o person or entity shall sell or issue, or cause to be sold or issued, a health benefits plan that is unlicensed or unapproved for sale or delivery in the state." NMSA 1978, § 59A-16-21.2(A) (2019). That same statute defines a "health benefits plan" as "a policy or agreement entered into, offered or issued by a health insurance carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services," § 59A-16-21.2(C)(1), and a characterizes a "health insurance carrier" as, inter alia, an entity that "enters into enters into agreements to provide, deliver, arrange for, pay for or reimburse any costs of health care services . . . in this state." § 59A-16-21.2(C)(2). Although Gospel Light's cost-sharing model

---

[4] Individual Plaintiffs argue that the case from which this standard originally derives, *Employment Division v. Smith*, 494 U.S. 872 (1990), has been "effectively overruled," citing to Justices Alito's and Gorsuch's concurrences in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). Doc. 51 at 9. This position is inconsistent with existing law. The majority opinion in *Fulton* explicitly stated that the Court "need not revisit [*Smith*] here" despite being asked to overrule it by one of the parties; the Court found that "[t]his case falls outside *Smith*" because the policy in question was not neutral or generally applicable. 141 S. Ct. at 1877. That concurring opinions have criticized *Smith* does not undermine the validity of its holding. *Smith* remains (at the time of filing) binding precedent.

[5] Significantly, Individual Plaintiffs do not point to a specific provision of the Insurance Code as legally infirm; rather, they argue that the Insurance Code writ large should not apply to Gospel Light.

falls squarely within the ambit of this statutory authority, Individual Plaintiffs claim that application of the Insurance Code to Gospel Light's operations subjects the corporation to disparate treatment. The crux of Individual Plaintiffs' argument is that secular fraternal benefit societies go unfettered by the strictures of the Insurance Code while Gospel Light must comply with New Mexico insurance law. *See* Doc. 17 at 12. This argument fails to acknowledge several dispositive facts.

Section 59A-1-15(A) generally exempts fraternal benefit societies from the Insurance Code.[6] However, many of the Insurance Code's provisions apply to fraternal benefit societies, including Articles 1, 2, 4, 16C, 18, 19, 20, 22, 24A, and 41 in their entireties, along with several portions of other articles. *See* NMSA 1978, § 59A-44-41(F) (2001). So, although it is true that certain provisions of the Insurance Code do not apply to fraternal benefit societies, many still do. Further, as discussed in the July 14, 2023, MOO, "[f]raternal benefit societies can be religious in nature, such as the Knights of Columbus (a Catholic organization), or they can be secular, such as the Croatian Fraternal Union of America (an organization supporting Croatian heritage)." Doc. 38 at 18.

But that is not the only distinction. As the New Mexico Attorney General's Office has explained, any insurance provided by fraternal benefit societies is ancillary to the organization's purpose:

> The fraternal benefit societies and the insurance available to a member of such fraternal society is contemplated in the law to be an incidental part of the operation of a lodge or fraternal organization. It is not contemplated that a lodge or fraternal

---

[6] The Insurance Code does not allow for individualized exemptions subject to governmental discretion—if it did, it would plainly run afoul of Supreme Court precedent. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1879 (2021) ("The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude.") (internal quotation marks and brackets omitted).

>organization set itself up with the sole purpose of insuring members. This would be in direct contravention of the statutes relating to the fraternal benefit societies and lodges, which organizations and lodges frequently provide insurance for the members of that organization as an additional service to the members.

1953 Op. Att'y Gen. No. 53-5671. By contrast, Gospel Light exists expressly for the purpose of collecting dues to be dispersed for members' medical costs. *See* Doc. 1-4 at 1 (Gospel Light's articles of incorporation stating that "[t]he purpose for the formation of this Corporation is to enable followers of Christ to bear each other's burdens and . . . [t]o associate within the community of the Christian faith for discipleship, *medical-sharing, physical needs-sharing, financial stewardship*, and evangelical purposes. . . .") (emphasis added). Thus, where Gospel Light and fraternal benefit societies are treated differently under the law, it is without regard to religious beliefs. They are different entities with distinct purposes and the provision of health insurance serves a different role for each—a peripheral benefit for fraternal benefit society members and the core purpose for Gospel Light and other similarly situated corporations.[7]

2. Neutrality or hostility towards religious beliefs

Separate from the question of general applicability is the question of neutrality.[8] In their post-hearing brief, Individual Plaintiffs argue that the Superintendent's March 26, 2020, press

---

[7] This difference distinguishes the present circumstances from the Supreme Court's ruling in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). In *Tandon*, the Supreme Court granted a preliminary injunction striking down California's restrictions on at-home worship gatherings during the COVID-19 pandemic. *See generally id.* The Supreme Court reasoned that the law restricting such gatherings was not neutral and generally applicable because it treated some comparable secular activities, such as gatherings at hair salons and indoor restaurants, more favorably than religious ones: individuals from more than three households could gather in certain secular locations when they were not permitted to gather for religious purposes. *Id.* at 1297. Those facts stand in stark contrast to those presented here. The Insurance Code does not contain specific prohibitions on religious conduct, and it does not apply a more exacting set of regulations to religious activities.

[8] Although Individual Plaintiffs do not raise the issue in their motion to reconsider, earlier briefing made this argument, which the Court addresses for completeness.

release, Doc. 1-8—which cautions consumers about HCSMs and stating that these plans are unauthorized insurance products—is not neutral because it "sends a signal of official disapproval" of Individual Plaintiffs' religious beliefs. Doc. 28 at 38. The Court disagrees. The press release states, in relevant part,

> [A] HCSM plan is an unauthorized insurance product that likely will not provide the protections of an authorized, regulated, and ACA compliant major medical plan.
> . . .
> Members may also be subject to religious or moral restrictions from the sharing ministry, which may leave members responsible for the full costs of health care that result from an activity the ministry does not agree with.
> . . .
> "I urge consumers not to purchase health insurance other than an ACA compliant plan. A consumer's best source for individual and family health plan coverage is to shop affordable major medical coverage with your broker or agent or with BeWellNM.com. . . ." said Superintendent of Insurance Russell Toal.

Doc. 1-8 at 1. As the text indicates, this correspondence merely clarifies that HCSMs are not equivalent to Affordable Care Act ("ACA") compliant plans, outlines areas in which HCSMs may not provide coverage, and communicates that HCSMs do not comply with applicable state insurance laws—all of which are accurate statements.[9] The Plaintiffs' attempt to recast the press

---

[9] Individual Plaintiffs' arguments that the state court is "disinterest[ed] in protecting Gospel Light's members from religious harm" because it "compar[ed] efforts to engage in health care sharing to a white supremacist arguing that their beliefs were based on religion rather than racism" mischaracterizes Judge Mathew's comments. Doc. 51 at 4. During the TRO hearing, Gospel Light's counsel stated that "it's not sufficient to say that a religious organization has to comply with any local rules or regulations, because the next step of that analysis is that if the local rule or regulation prevents them or even minimally burdens carrying out that religious practice, then they have the freedom to do so." Doc. 51-2 at 16:16-22. Judge Mathew's comment was a response to Gospel Light's assertion that, essentially, faithful individuals may exercise their religious beliefs notwithstanding any law that "even minimally burdens" religious practice with the example of invidious discrimination. *Id* at 16:21. Judge Mathew asked, "But can't the law prohibit someone from discriminating even if their religious belief is that [people of other races are] inferior to them?" *Id.* at 16:25-17:1-4. He clarified shortly afterward that invidious discrimination is "not the issue entirely" in the present case; rather, his aim was plainly to discuss the extent to which neutral and generally applicable state laws, such as anti-discrimination laws, could constitutionally burden religious exercise. *Id.* at 17:20-22.

release as a manifestation of religious animus falls flat. Doc. 28 at 38. Nothing in the press release demonstrates (or even suggests) that the Superintendent is hostile towards religion.

In sum, Individual Plaintiffs have failed to demonstrate that the Insurance Code violates the principles of neutrality or general applicability. *See Kennedy*, 142 S. Ct. at 2421-22 (employing standard from *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879-81 (1990)). Nor have they shown that "official expressions of hostility" have taken place. *See id.* at 2422 n.1. Accordingly, rational basis review applies to the Court's analysis of this claim. *See Harmon v. City of Norman, Okla.*, 61 F.4th 779, 793 (10th Cir. 2023).

3. Rational basis review

Under rational basis review, the Court must determine whether the regulation "rationally relates to a legitimate government interest." *Id.* at 794 (brackets omitted). The standard is a deferential one. "State actions subject to rational-basis review are 'presumed constitutional,' and courts uphold the actions 'if there is any reasonably conceivable state of facts that could provide a rational basis for' them." *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *14 (10th Cir. June 14, 2022) (quoting *Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015). "A party challenging a law under rational-basis review must 'negative every conceivable basis which might support it.'" *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 767 (10th Cir. 2023) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

With this legal authority as a backdrop, the Court has little difficulty concluding that state laws mandating compliance with the Insurance Code constitute a legitimate area of governmental concern. *See Hunter v. Hirsig*, 660 F. App'x 711, 717 (10th Cir. 2016) (explaining that "the regulation and licensure of insurance producers" constitutes an important state interest). "The state long has regulated the business of insurance pursuant to its police powers," and "it is beyond

13

peradventure that protection of consumers from unsafe and unsound insurance companies is a substantial state interest." *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.*, 1991-NMSC-036, ¶ 33, 111 N.M. 750, 809 P.2d 1278. The Insurance Code itself emphasizes that the New Mexico legislature's purpose is to protect state residents and businesses against unauthorized business practices in this area:

> The legislature declares that it is concerned with the protection of residents of this state against acts by insurers not authorized to do an insurance business in this state, by the maintenance of fair and honest insurance markets, by protecting authorized insurers which are subject to regulation from unfair competition by unauthorized insurers, and by protecting against the evasion of the insurance regulatory laws of this state.

NMSA 1978, § 59A-15-1 (1984). A later section adds, "The legislature finds that insurance fraud is pervasive and expensive, and has the potential for increasing premium rates, placing businesses at risk, reducing the ability of consumers to raise their standard of living and decreasing the economic vitality of the state." NMSA 1978, § 59A-16C-2(A) (1998). As these legislative pronouncements demonstrate, the regulation of insurance is a legitimate sphere of government interest. OSI's exercise of powers, which were conferred by the New Mexico legislature, safeguard a legitimate government interest in regulating the insurance industry.[10]

---

[10] The Court's doubts about Individual Plaintiffs' likelihood of success on the merits receives support from other state laws. Some jurisdictions have created "safe harbor" statutes that exempt HCSMs from regulatory oversight but require compliance with the minimum criteria necessary to satisfy the relevant ACA provisions; some have exempted HCSMs but imposed conditions more onerous than the minimum imposed by the ACA; and many, like New Mexico, have not enacted any legislation shielding HSCMs from regulatory oversight. *See* Doc. 37 at 204-05; *see, e.g.*, Wash. Rev. Code § 48.43.009 (2011) (safe harbor provision requiring compliance with ACA provisions); N.H. Rev. Stat. Ann. § 126-V:1 (2012) (exempting HCSMs but imposing additional conditions, including disclaimer, annual audit, and distribution of monthly written statement to members accounting for money requested by members and money actually shared). Whatever regulatory scheme is employed, "states are free to regulate [HCSMs] as they choose." Doc. 37 at 198:16-17. Indeed, former Florida Insurance Commissioner Kevin McCarty, who testified as Gospel Light's insurance expert, repeatedly emphasized that states possessed authority to regulate these entities. *See id.* at 195:14-25-196:1-16, 198:10-20, 207:1-12.

### B. Because Individual Plaintiffs have not demonstrated a violation of their constitutional rights, they are unable to demonstrate irreparable harm.

Individual Plaintiffs are unlikely to prove that their free exercise rights have been violated, and for that reason they have also not proven that they are suffering an irreparable constitutional injury. *See McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) (affirming denial of preliminary injunction and noting that because plaintiff "does not have a likelihood of success on the merits . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails"); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (holding that because the Plaintiff was unable "to demonstrate that he has a cognizable constitutional claim . . . his argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit"); *see also Goldstein v. Hochul*, No. 22-CV-8300, 2023 WL 4236164, at *9 (S.D.N.Y. June 28, 2023) (applying similar logic). The result is a bitter pill to swallow given the allegations in a complaint pertain to fundamental rights, which the Court views with particular solicitude. But Individual Plaintiffs have not shown a likelihood of success on the merits of their First Amendment claims; there is only the incidental burden that *Smith* accepts as a necessity when a neutral and generally applicable law brushes up against religious exercise. Without a constitutional violation, under the facts presented, Individual Plaintiffs have not demonstrated irreparable harm.

### C. The balance of equities and public interest weigh against a preliminary injunction.

The third and fourth preliminary injunction factors are whether "(3) [the movant's] threatened injury outweighs the harm to the opposing party under the injunction, and (4) the injunction is not adverse to the public interest." *First W. Capital Mgmt. Co.*, 874 F.3d at 1139 n.2. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

As discussed above, the public has an important interest in a well-regulated insurance industry. Meanwhile, Individual Plaintiffs' interest in participating in a cost-sharing plan, because it does not have a constitutional dimension, is legally no different from the interest of any individual in purchasing an unlicensed insurance product. This interest is minimal when compared to the public health and safety concerns implicated by the question of insurance regulation. Public safety is an important consideration in the preliminary injunction analysis. *See Aposhian v. Barr*, 958 F.3d 969, 991 (10th Cir. 2020) (finding strong public interest in "banning the possession and transfer of machine guns" based on safety, including safety of law enforcement and first responders); *Martinez v. City of Rio Rancho*, No. 1:14-cv-00841, 2015 WL 13650058, at *5-6 (D.N.M. June 10, 2015) (finding public interest in avoiding driver distraction on roadways). Accordingly, the Court finds that Individual Plaintiffs fail to demonstrate that the balance of harms favors them or that an injunction would not be adverse to the public interest.

**D.     The factors, weighed together, do not warrant the extraordinary relief of a preliminary injunction.**

As discussed above, the first two factors—likelihood of success on the merits and irreparable injury—are the most important. The Court finds Individual Plaintiffs fail to satisfy either of these prongs, and they have not met their burden on the balance of harms and public interest factors. Considering all factors together, the Court finds that a preliminary injunction is not warranted and therefore (again) denies Individual Plaintiffs' request for injunctive relief.

**CONCLUSION**

For the foregoing reasons, the Court grants the motion for reconsideration to the extent it has identified new evidence. Doc. 44. However, having reviewed the new evidence, the Court finds that its original ruling on the motion for preliminary injunction remains accurate and

therefore denies the motion for reconsideration to the extent it seeks a different ruling on the July 14, 2023, MOO.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA