**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

     *Plaintiffs,*

v.                            No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

     *Defendants.*

<u>**GOSPEL LIGHT'S RESPONSES TO**</u>
<u>**THE OSI'S APRIL 25, 2024 SUBPOENA**</u>

TO:    The Office of the Superintendent of Insurance
        c/o Jacqueline Ortiz, Alyssa Herrera, & Stephen Thies
        6200 Uptown Blvd NE, #400
        Albuquerque, NM   87110
        jacqueline.ortiz@osi.nm.gov
        alyssa.herrera@osi.nm.gov
        stephen.thies@osi.nm.gov

Gospel Light Mennonite Church Medical Aid Plan, d/b/a Liberty HealthShare ("Gospel

Light"), by and through its counsel of record, Harrison & Hart, LLC and Commonwealth Law

Offices, P.C., hereby responds to the New Mexico Office of the Superintendent of Insurance's (the

"OSI's") subpoena, which was served to Gospel Light on April 25, 2024.

Gospel Light's responses and objections are based upon, and necessarily limited by,

information now reasonably available to it. Gospel Light responds to the OSI's subpoena by

1

**EXHIBIT A**

applying the plain, common sense meaning of the words and phrases used therein. Gospel Light specifically reserves all rights to revise, correct, supplement, modify, or clarify the content of its responses and objections below in accordance with the applicable Federal Rules of Civil Procedure and Evidence. Finally, Plaintiff submits these responses and objections without conceding to the relevancy, materiality, or admissibility of any information, document, or item produced and without prejudice to its right to object to further attempts to obtain additional documents through this subpoena. Gospel Light reserves the right to assert additional objections which may become apparent throughout the course of this action, including those based on undue burden.

## SUBPOENAED DOCUMENTS

No. 1.   Please provide full electronic copies of Breanna Renteria's Enrollment Application and Documents Relating to the Enrollment Application and Enrollment Activation Date including but not limited any and all documents submitted in support of Plaintiff Renteria's Enrollment Application.

Response: Gospel Light directs the OSI to GOSPEL LIGHT 000001 – GOSPEL LIGHT 000054, produced herewith.

No. 2. Please provide full electronic copies of Laura Smith's Enrollment Application and Documents Relating to the Enrollment Application and Enrollment Activation Date including but not limited to any and all documents submitted in support of Plaintiff Smith's Enrollment Application.

Response: Gospel Light directs the OSI to GOSPEL LIGHT 000055 – GOSPEL LIGHT 000079, produced herewith.

No. 3. Please provide full electronic copies of Tammy Waters' Enrollment Application and Documents Relating to the Enrollment Application and Enrollment Activation Date including but not limited to any and all documents submitted in support of Plaintiff Waters' Enrollment Application.

Response: Gospel Light directs the OSI to GOSPEL LIGHT 000080 – GOSPEL LIGHT 000125, produced herewith.

No. 4. Please provide full electronic copies of any and all Documents demonstrating the amount Plaintiff Breanna Renteria has paid into Liberty's HealthShare Program including but not limited to the total amount of Monthly Share Amounts she has made from the date of her enrollment through the present.

Response: Gospel Light objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Taylor v. Grisham*, No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34" (internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is "insurance" under New Mexico law, and details concerning particular members' medical expenses and contributions are wholly irrelevant to any contested issue here.

Additionally, Gospel Light objects to this request on the basis that it seeks documents and information that are protected under the Health Insurance Portability and Accountability Act ("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v. The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16 (D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected health information entitled to protections under HIPAA). Accordingly, the OSI's request for documents concerning payments associated with the medical expenses and costs of Gospel Light's individual members is protected health information that Gospel Light cannot disclose.

No. 5. Please provide full electronic copies of any and all Documents demonstrating the amount Plaintiff Laura Smith has paid into Liberty's HealthShare Program including but not limited to the total amount of Monthly Share Amounts she has made from the date of her enrollment through the present.

Response: Gospel Light objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Taylor v. Grisham*, No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34" (internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is

"insurance" under New Mexico law, and details concerning particular members' medical expenses and contributions are wholly irrelevant to any contested issue here.

Additionally, Gospel Light objects to this request on the basis that it seeks documents and information that are protected under the Health Insurance Portability and Accountability Act ("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v. The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16 (D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected health information entitled to protections under HIPAA). Accordingly, the OSI's request for documents concerning payments associated with the medical expenses and costs of Gospel Light's individual members is protected health information that Gospel Light cannot disclose.

No. 6. Please provide full electronic copies of any and all Documents demonstrating the amount Plaintiff Tammy Waters has paid into Liberty's HealthShare Program including but not limited to the total amount of Monthly Share Amounts she has made from the date of her enrollment through the present.

Response: Gospel Light objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Taylor v. Grisham,* No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of

discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34"
(internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is
"insurance" under New Mexico law, and details concerning particular members' medical expenses
and contributions are wholly irrelevant to any contested issue here.

Additionally, Gospel Light objects to this request on the basis that it seeks documents and
information that are protected under the Health Insurance Portability and Accountability Act
("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v.
The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16
(D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected
health information entitled to protections under HIPAA). Accordingly, the OSI's request for
documents concerning payments associated with the medical expenses and costs of Gospel Light's
individual members is protected health information that Gospel Light cannot disclose.

No. 7. Please provide full electronic copies of any and all Documents Relating to all
requests for payment of medical expenses made by Plaintiff Breanna Renteria to Liberty's
HealthShare Program, including but not limited to documentation demonstrating Plaintiff
Renteria's Medical Expense Submission(s) and the total amount of expenses Liberty's
HealthShare Program covered or reimbursed to Plaintiff Renteria as a result of Plaintiff Renteria's
Medical Expense Submission(s).

Response: First, Gospel Light objects to the OSI's use of the term "covered" in the above
request, as the term is misleading and mischaracterizes Gospel Light's ministry role as a mere
facilitator of member-to-member sharing by improperly suggesting that Gospel Light "covered"
its individual members' Medical Expense Submission(s), which is a contested legal issue in this

6

case. The use of the term "covered" is prejudicial, incorrect, argumentative, and presents an improper legal conclusion. By law, health care sharing ministries are not considered health insurance, because they do not assume any risk and because these ministries are not legally or contractually obligated to pay health care costs. As such, Gospel Light does not "cover" its individual members' medical expenses as implied by this request.

Gospel Light further objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Taylor v. Grisham*, No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34" (internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is "insurance" under New Mexico law, and details concerning particular members' medical expenses and contributions are wholly irrelevant to any contested issue here.

Finally, Gospel Light objects to this request on the basis that it seeks documents and information that are protected under the Health Insurance Portability and Accountability Act ("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v. The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16 (D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected health information entitled to protections under HIPAA). Accordingly, the OSI's request for

documents concerning payments associated with the medical expenses and costs of Gospel Light's individual members is protected health information that Gospel Light cannot disclose.

No. 8. Please provide full electronic copies of any and all Documents Relating to all requests for payment of medical expenses made by Plaintiff Laura Smith to Liberty's HealthShare Program, including but not limited to documentation demonstrating Plaintiff Smith's Medical Expense Submission(s) and the total amount of expenses Liberty's HealthShare Program covered or reimbursed to Plaintiff Smith as a result of Plaintiff Smith's Medical Expense Submission(s).

Response: First, Gospel Light objects to the OSI's use of the term "covered" in the above request, as the term is misleading and mischaracterizes Gospel Light's ministry role as a mere facilitator of member-to-member sharing by improperly suggesting that Gospel Light "covered" its individual members' Medical Expense Submission(s), which is a contested legal issue in this case. The use of the term "covered" is prejudicial, incorrect, argumentative, and presents an improper legal conclusion. By law, health care sharing ministries are not considered health insurance, because they do not assume any risk and because these ministries are not legally or contractually obligated to pay health care costs. As such, Gospel Light does not "cover" its individual members' medical expenses as implied by this request.

Gospel Light further objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case"); *Taylor v. Grisham*, No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34" (internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is "insurance" under New Mexico law, and details concerning particular members' medical expenses and contributions are wholly irrelevant to any contested issue here.

Finally, Gospel Light objects to this request on the basis that it seeks documents and information that are protected under the Health Insurance Portability and Accountability Act ("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v. The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16 (D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected health information entitled to protections under HIPAA). Accordingly, the OSI's request for documents concerning payments associated with the medical expenses and costs of Gospel Light's individual members is protected health information that Gospel Light cannot disclose.


No. 9. Please provide full electronic copies of any and all Documents Relating to all requests for payment of medical expenses made by Plaintiff Tammy Waters to Liberty's HealthShare Program, including but not limited to documentation demonstrating Plaintiff Waters' Medical Expense Submission(s) and the total amount of expenses Liberty's HealthShare Program covered or reimbursed to Plaintiff Waters as a result of Plaintiff Waters' Medical Expense Submission(s).

Response: First, Gospel Light objects to the OSI's use of the term "covered" in the above request, as the term is misleading and mischaracterizes Gospel Light's ministry role as a mere

facilitator of member-to-member sharing by improperly suggesting that Gospel Light "covered" its individual members' Medical Expense Submission(s), which is a contested legal issue in this case. The use of the term "covered" is prejudicial, incorrect, argumentative, and presents an improper legal conclusion. By law, health care sharing ministries are not considered health insurance, because they do not assume any risk and because these ministries are not legally or contractually obligated to pay health care costs. As such, Gospel Light does not "cover" its individual members' medical expenses as implied by this request.

Gospel Light further objects to this request on the basis that it seeks documents and information that are irrelevant to the current legal dispute. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendments (explaining that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); Fed. R. Civ. P. 26(b)(1) (limiting the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Taylor v. Grisham*, No. 20-CV-00267, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *6 (D.N.M. Nov. 3, 2020) (noting that "it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34" (internal quotes and cites omitted)). The present dispute concerns whether or not Gospel Light is "insurance" under New Mexico law, and details concerning particular members' medical expenses and contributions are wholly irrelevant to any contested issue here.

Finally, Gospel Light objects to this request on the basis that it seeks documents and information that are protected under the Health Insurance Portability and Accountability Act ("HIPAA") and which Gospel Light has no authority to produce to the OSI. *See, e.g., Plambeck v. The Kroger Co.,* No. 11-CV-005054, 2012 WL 640051, 2012 U.S. Dist. LEXIS 24853, at *16

(D.S.D. Feb. 27, 2012) (finding that an individual's medical records and medical bills are protected health information entitled to protections under HIPAA). Accordingly, the OSI's request for documents concerning payments associated with the medical expenses and costs of Gospel Light's individual members is protected health information that Gospel Light cannot disclose.

No. 10. Please provide full electronic copies of any and all Documents Relating to any First, Second, and Third Level Appeals and/or Arbitration as a result of any dispute(s) created by Plaintiff Breanna Renteria, including but not limited to documentation created during the dispute, recorded phone calls between Plaintiff Renteria and Liberty representatives regarding the dispute, any written correspondence between Plaintiff Renteria and Liberty representatives regarding the dispute, notes taken by Liberty's representatives related to the dispute, and any other documents detailing the nature of the dispute and final outcome of the dispute.

Response: There are no documents responsive to this request within Gospel Light's possession, custody, or control.

No. 11. Please provide full electronic copies of any and all Documents Relating to any First, Second, and Third Level Appeals and/or Arbitration as a result of any dispute(s) created by Plaintiff Laura Smith, including but not limited to documentation created during the dispute, recorded phone calls between Plaintiff Smith and Liberty representatives regarding the dispute, any written correspondence between Plaintiff Smith and Liberty representatives regarding the dispute, notes taken by Liberty's representatives related to the dispute, and any other documents detailing the nature of the dispute and final outcome of the dispute.

<u>Response:</u> There are no documents responsive to this request within Gospel Light's possession, custody, or control.

<u>No. 12.</u> Please provide full electronic copies of any and all Documents Relating to any First, Second, and Third Level Appeals and/or Arbitration as a result of any dispute(s) created by Plaintiff Tammy Waters, including but not limited to documentation created during the dispute, recorded phone calls between Plaintiff Waters and Liberty representatives regarding the dispute, any written correspondence between Plaintiff Waters and Liberty representatives regarding the dispute, notes taken by Liberty's representatives related to the dispute, and any other documents detailing the nature of the dispute and final outcome of the dispute.

<u>Response:</u> There are no documents responsive to this request within Gospel Light's possession, custody, or control.

<u>No. 13.</u> Please provide any and all policies, procedures, memorandums, employee handbooks, guidelines, and any other documents related to Liberty's HealthShare Program, including but not limited to documentation related to all programs offered by Liberty's HealthShare Program to its enrolled members, the process in which members file requests for payment of medical expenses with Liberty's HealthShare Program, and the process in which Liberty accepts or denies the member's request for payment of medical expenses.

<u>Response:</u> Gospel Light objects to this request as overbroad and unduly burdensome to the extent that the request has an unlimited and undefined temporal scope. *See, e.g., Dalton v. Town of Silver City*, No. 17-CV-01143, 2021 WL 4307149, 2021 U.S. Dist. LEXIS 181328, at *10

(D.N.M. Sep. 22, 2021) (finding party's document request overbroad because it lacked any temporal limitation).

Subject to, and without waiving, its objection, Gospel Light directs the OSI to GOSPEL LIGHT 000647 – GOSPEL LIGHT 001363, produced herewith. Additionally, Gospel Light directs the OSI to the below publicly-available documents. *See, e.g., XTO Energy, Inc. v. ATD, LLC*, No. 14-CV-01021, 2016 WL1730171, 2016 U.S. Dist. LEXIS 57050, at *101 (D.N.M. Apr. 1, 2016) (finding that complying with a subpoena would pose an undue burden where the requesting party could readily obtain the information from an already available source and citing case law exempting a party from producing publicly available literature).

| Liberty HealthShare website link | Webpage Description |
|---|---|
| https://www.libertyhealthshare.org/how-it-works | What is Sharable |
| https://www.libertyhealthshare.org/how-it-works | What is Not Sharable |
| https://www.libertyhealthshare.org/how-it-works | How Our Medical Cost Sharing Programs Work |
| https://www.libertyhealthshare.org/how-it-works | The Liberty HealthShare Process |
| https://www.libertyhealthshare.org/how-it-works | Request Information form (for persons who have specific questions about what is—or is not—shareable through Liberty HealthShare) |
| https://www.libertyhealthshare.org/explore-our-programs | Explore Our Programs |
| https://www.libertyhealthshare.org/liberty-assist | Liberty Assist: A Healthsharing Program for Seniors |
| https://www.libertyhealthshare.org/liberty-rise | Liberty Rise: A Healthsharing Program for people 18-29 years old |
| https://www.libertyhealthshare.org/additional-services | Additional Liberty HealthShare Features |
| https://www.libertyhealthshare.org/do-i-qualify | Eligibility for Healthcare Sharing Programs: Find Out if You and Your Family Qualify for Liberty HealthShare |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Our Sharing Guidelines |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Frequently Asked Questions |

| | |
|---|---|
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Blog |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: News |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Videos |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Downloads |
| https://www.libertyhealthshare.org/resources-education | Resources & Education: Tax Information |
| https://www.libertyhealthshare.org/blog/itemized-hospital-bill | Why You Should Always Get an Itemized Hospital Bill |
| https://www.libertyhealthshare.org/blog/christian-healthsharing-ministries-answers-to-common-questions | What expenses are eligible for sharing in a Christian health sharing ministry? |
| https://www.libertyhealthshare.org/blog/christian-healthsharing-ministries-answers-to-common-questions | Does faith-based healthcare cover the essential health benefits mandated by the Affordable Care Act (ACA)? |
| https://www.libertyhealthshare.org/hubfs/Liberty-Healthshare-Decision-Guide-010824.pdf?hsLang=en | Decision Guide |
| https://www.libertyhealthshare.org/downloadable-resources | Surgery FAQ: How do I submit my medical expenses after surgery? |
| https://www.libertyhealthshare.org/downloadable-resources | Maternity FAQ: How do I submit my maternity expenses? |

No. 14. Please provide any and all policies, procedures, memorandums, employee handbooks, guidelines, and any other documents in which Liberty's HealthShare Program defines "Fair and Reasonable Eligible Medical Expenses" in which members may be reimbursed for medical expenses, and in which Liberty's HealthShare Program defines "Ineligible Medical Expenses" in which members are not reimbursed for medical expenses.

Response: Gospel Light objects to this request as overbroad and unduly burdensome to the extent that the request has an unlimited and undefined temporal scope. *See, e.g., Dalton v. Town of Silver City*, No. 17-CV-01143, 2021 WL 4307149, 2021 U.S. Dist. LEXIS 181328, at *10 (D.N.M. Sep. 22, 2021) (finding party's document request overbroad because it lacked any temporal limitation).

Subject to, and without waiving, its objection, Gospel Light directs the OSI to GOSPEL LIGHT 000126 – GOSPEL LIGHT 000646, produced herewith.

DATED: May 16, 2024

Respectfully submitted,

/s/   Nicholas T. Hart
Carter B. Harrison IV
Nicholas T. Hart
Elise C. Funke
**Harrison & Hart, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com
elise@harrisonhartlaw.com

- and -

J. Michael Sharman
Commonwealth Law Offices, P.C.
246 E. Davis Street, Suite 200
Culpeper, VA 22701
(540) 727-1007
mikesharman@verizon.net
*Admitted Pro Hac Vice*

*Attorneys for Gospel Light*

# STATE OF NEW MEXICO
# OFFICE OF SUPERINTENDENT OF INSURANCE

**SUPERINTENDENT OF INSURANCE**

Alice T. Kane



**DEPUTY SUPERINTENDENT**

Colin Baillio

May 31, 2024

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
**Harrison & Hart, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com
carter@harrisonhartlaw.com
elise@harrisonhartlaw.com

**VIA E-MAIL ONLY**

and

J. Michael Sharman
Commonwealth Law Offices, P.C.
246 E. Davis Street, Suite 200
Culpeper, VA 22701
(540) 727-1007
mikesharman@verizon.net

Re:    <u>Gospel Light, et. al. v. New Mexico Office of Superintendent of Insurance, et al.,</u>
       <u>No. 1:23-cv-00276 MLG-KK</u>

Dear Mr. Hart, Mr. Harrison, Ms. Funke, and Mr. Sharman,

        The purpose of this letter is to respond to Gospel Light Mennonite Church Medical Aid Plan d/b/a Liberty HealthShare's ("Gospel Light") objections to the Office of the Superintendent of Insurance's ("OSI") subpoena requests in the above-referenced matter. Pursuant to Federal Rule of Civil Procedure 37, OSI would like to schedule a meet and confer to discuss Gospel Light's objections in a good faith effort to resolve any disagreements regarding the requested documents. Below, please find specific objections OSI would like to address during the meet and confer:

**EXHIBIT B**

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
J. Michael Sharman
May 31, 2024
Page 2

**I.      The Documents Requested by OSI are Relevant Because They are Related to the Plaintiffs' Standing in this Matter and are Material to OSI's Defenses.**

First, Gospel Light objects to Subpoena Request Nos. 4, 5, 6, 7, 8, and 9, as "irrelevant to the current legal dispute." *See* Gospel Light's Responses to the OSI's April 25, 2024 Subpoena ("Gospel Light's Response"), at pp. 3-5, 7-8, 10. Request Nos. 4-6 request information related to each individual Plaintiffs' Monthly Share Amounts starting on the date of enrollment in Liberty's HealthShare Program. Request Nos. 7-9 request information related to any medical expenses Plaintiffs have submitted to Liberty's HealthShare Program for coverage or reimbursement.

In order for Plaintiffs to satisfy the constitutional standing requirement, Plaintiffs must first demonstrate an injury in fact which is concrete, particularized, and imminent—not only hypothetical. *See Bd. of Cnty. Comm's of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (other citations omitted). OSI's requests regarding Plaintiffs' Monthly Share Amounts and information related to any medical expense requested through Liberty's HealthShare Program are material and necessary to OSI's defenses to Plaintiffs' constitutional claims and standing to bring such claims. Therefore, such information is relevant to the pending action and is discoverable.

The Supreme Court has long recognized that the Federal Rules of Civil Procedure support liberal discovery. *See Hickman v. Taylor*, 329 U.S. 495, 506 (1947) ("[T]he discovery provisions are to be applied as broadly and liberally as possible . . . ."); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964) (quoting Fed. R. Civ. P. 26(b)) (stating discovery is available "regarding any matter, not privileged, which is relevant to the subject matter involving in the pending action.").

Request Nos. 4-6 do not request privileged information because the amount paid into the Monthly Share is not a matter of privilege. Further, OSI is entitled to Plaintiffs' history of requests for payment of medical expenses and the outcome of those requests as sought in Request Nos. 7-9 because such information is material to OSI's defenses to Plaintiffs' constitutional claims. The amount of money paid into the Monthly Share will demonstrate the amount of monetary contributions Plaintiffs have given over time to Liberty's HealthShare Program, and the benefits in return of the contributions. Any medical expenses covered or reimbursed are also relevant to OSI's defenses for several reasons. First, Plaintiffs claim they will be constitutionally harmed by OSI's issuance of the cease and desist order. If Plaintiffs' medical expenses have never been reimbursed or covered by Liberty's HealthShare Program, then a cease and desist order will not have harmed Plaintiffs. Pursuant to the constitutional standing analysis, the injury in fact must be actual, not hypothetical. Further, if Plaintiffs have had their medical expenses reimbursed, then that information supports Plaintiffs' constitutional claims, and OSI is entitled to such information.

Additionally, the information requested in Request Nos. 4-9 is likely to lead to the reasonable discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
J. Michael Sharman
May 31, 2024
Page 3

Information within this scope of discovery need not be admissible in evidence to be discoverable."). "Discovery . . . is meant to allow the parties to flesh out allegations for which they initially heave at least a modicum of objective support." *Landry v. Swire Oilfield Services*, L.L.C., 323 F.R.D. 376 (D.N.M 2018) (other citations omitted). By objecting to OSI's requests for relevant information from Plaintiffs, Gospel Light is denying OSI's ability to flesh out Plaintiffs' allegations, in violation of the Federal Rules of Civil Procedure.

Therefore, Plaintiffs' objection to Request Nos. 4, 5, 6, 7, 8, and 9 as "irrelevant" is improper. For these reasons, please supplement the responses to these subpoena requests as indicated above.

## II.     Gospel Light is not a Protected Entity Under HIPAA.

Next, Gospel Light cannot claim the documents within their possession are protected by the Health Insurance Portability and Accountability Act ("HIPAA") because Gospel Light is not an entity covered by HIPAA's protections. HIPAA only prohibits a "covered entity" from disclosing protected health information. *See U.S. v. Yazzie*, 998 F. Supp. 2d 1044, 1115 (D.N.M. 2014); *see also* 45 C.F.R. § 164.502(a). For HIPAA's privacy rule to apply, an entity must be "(1) a health plan; (2) a health care clearinghouse; or (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA." *Ehrlich v. Union Pac. R.R. Co.,* 302 F.R.D. 620, 628 (D. Kan. 2014). Gospel Light has consistently and adamantly rejected that it is a "health plan" throughout this and related litigation. Further, Gospel Light does not meet the definitions of the other entities that are covered by HIPAA, as it is neither a clearinghouse nor a health care provider.[1] While, Defendants disagree with Gospel Light's self-

---

[1] *See* HIPAA Privacy Rule and Its Impacts on Research (nih.gov), which provides the following definitions for each covered entity:

**Health Plan** – With certain exceptions, an individual or group plan that provides or pays the cost of medical care (as defined in section 2791(a)(2) of the PHS Act, 42 U.S.C. 300gg-91(a)(2)). The law specifically includes many types of organizations and government programs as health plans.

**Health Care Clearinghouse** – A public or private entity, including a billing service, repricing company, community health management information system or community health information system, and "valueadded" networks and switches that either process or facilitate the processing of health information received from another entity in a nonstandard format or containing nonstandard data content into standard data elements or a standard transaction, or receive a standard transaction from another entity and process or facilitate the processing of health information into a nonstandard format or nonstandard data content for the receiving entity.

**Health Care Provider** – A provider of services (as defined in section 1861(u) of the Act, 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in section 1861(s) of the

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
J. Michael Sharman
May 31, 2024
Page 4

identification, Gospel Light cannot, on the one hand, claim that it will not provide documents because it is a "covered entity," and then on the other, claim that it is not a covered entity to avoid governmental oversight.

Gospel Light continues to contend, "[b]y law, health care sharing ministries **are not considered health insurance,** because they do not assume any risk and **because these ministries are not legally or contractually obligated to pay health care costs**." *See* Gospel Light's Response, at pp. 7-8, 10 (emphasis added). Gospel Light does not provide health plans, is not a health care clearinghouse, nor a health care provider. Therefore, HIPAA's protections do not apply to Gospel Light as an entity.

### A.     The Proper Analysis is Under the Federal Rules of Civil Procedure.

Moreover, HIPAA's protections do not outweigh the necessity of providing records to OSI through the discovery process. *See BNSF Ry. Co.,* 2008 WL 11322949, at *5 ("HIPAA regulations do not trump the rules of civil procedure with respect to discovery obligations or questions of relevance."). Instead, the proper analysis is under Rule 26(b). *See Bayne v. Provost*, 359 F.Supp.2d 234, 237 (N.D.N.Y. 2005) ("it is evidently denudate that a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase.") (citing C.F.R. § 164.512(e)(1)(ii)).

Plaintiffs' argument that the records sought are protected is misplaced, as HIPAA regulations do not create a federal privilege. *See BNSF Ry. Co. v. Lafarge S.W., Inc.*, No. CIV 06-1076, 2008 WL 11322949, at *5 (D. N.M. May 9, 2008). Even if such information was privileged, however, Plaintiffs have failed to provide OSI with a privilege log, as required by the Federal Rules of Civil Procedure:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

_____

Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business.

**Health Care** – Care, services, or supplies related to the health of an individual, including (1) preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual that affects the structure or function of the body; and (2) sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
J. Michael Sharman
May 31, 2024
Page 5

(i) expressly make the claim; and

(ii) **describe the nature of the documents, communications, or tangible things not produced or disclosed**—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii) (emphasis added).

As previously indicated in this letter, OSI's requests are related to non-privileged and relevant information, which may lead to the discovery of admissible evidence in support of OSI's defenses. Therefore, Request Nos. 4-9 are relevant under the Rule 26 analysis, and OSI is entitled to complete responses to those requests. For these reasons, please supplement the responses to these subpoena requests as indicated above.

**B.     The Records Requested in Request Nos. 4-6 are not Protected Health Information Under HIPAA.**

As for the particular records requested, HIPAA protects "identifiable health information, held or transmitted by a covered entity or its business associate in any form or media." *Protection & Advocacy System, Inc., v. Freudenthal*, 412 F. Supp. 2d 1211, 1216 (D. Wyo. 2006). However, the protections are in place to handle *protected* health information, not to create or change substantive law. *See id*.

Here, Request Nos. 4-6 request information related to the amount paid into the Monthly Share by the Plaintiffs. Certainly, such information is not "identifiable health information," or related to any of Plaintiffs' protected information as defined under HIPAA. Request Nos. 4-6 are not protected by HIPAA and should be answered fully and completely as required by the Federal Rules of Civil Procedure.

Therefore, Plaintiffs' objection to Request Nos. 4, 5, 6, 7, 8, and 9 as "protected under HIPAA" is improper. For these reasons, please supplement the responses to these subpoena requests as indicated above.

**C.     OSI Will Agree to the Redaction of Protected Health Information or the Entry of a Confidentiality/Protective Order.**

Despite the analysis provided above, OSI will agree to accept the relevant documents with the redaction of protected health information ("PHI"). OSI will also agree to enter a confidentiality and/or protective order to protect Plaintiffs' PHI within the relevant records, if necessary. The drafting and approval of a protective order in situations such as this is supported by caselaw in New Mexico and other jurisdictions. *See BNSF Ry. Co.* 2008 WL 11322949, at *5 (stating "the confidentiality of [plaintiff's] medical records, may be addressed through an appropriate Protective

Nicholas T. Hart
Carter B. Harrison IV
Elise Funke
J. Michael Sharman
May 31, 2024
Page 6

Order"); *see also Thomas v. Hickman*, 2007 WL 4302974 at *10 (E.D. Ca. Dec. 6, 2007) (rejecting position that HIPAA barred discovery; adequate protective order would permit discovery).

Please provide some available dates and times the week of June 3, 2024 and the week of June 10, 2024, in which you are available to meet and confer regarding Plaintiffs' objections and OSI's subsequent responses indicated in the letter above.

Thank you for your attention to this matter. Please contact me should you have any questions or concerns.

Sincerely,

Alyssa Herrera

cc:   Jacqueline Ortiz, OSI Attorney Supervisor, jacqueline.ortiz@osi.nm.gov
      Stephen Thies, OSI General Counsel, stephen.thies@osi.nm.gov

| From: | Nicholas T. Hart |
|---|---|
| To: | Herrera, Alyssa, OSI; Trish Hernandez; Ortiz, Jacqueline, OSI; Thies, Stephen, OSI; Gallegos, Frances, OSI |
| Cc: | Carter B. Harrison IV; Elise Funke; mikesharman@verizon.net |
| Subject: | RE: Meet & Confer - RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light"s Subpoena Responses |
| Date: | July 10, 2024 2:34:53 PM |
| Attachments: | image001.png |

This is correct. Thank you.

-----
Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com

**From:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>
**Sent:** Wednesday, July 10, 2024 1:57 PM
**To:** Trish Hernandez <trish@harrisonhartlaw.com>; Ortiz, Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI <frances.gallegos@osi.nm.gov>
**Cc:** Nicholas T. Hart <nick@harrisonhartlaw.com>; Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke <elise@harrisonhartlaw.com>; mikesharman@verizon.net
**Subject:** RE: Meet & Confer - RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light's Subpoena Responses

Hello Nick,

To recap our meet and confer:

Although the Rule 37 letter highlighted the deficiencies of the subpoena responses to request nos. 4-9, as Tammy Waters has been dismissed as a party, we did not need to discuss Nos. 6 and 9.

As for Nos. 4, 5, 7, and 8, we disagreed to the relevancy/discoverability of the requests, but agreed that HIPAA was not applicable here. We also agreed that, should the Judge issue an order for the production of the documents requested, we would agree to the redaction of the Plaintiffs' protected health information, and have a meet and confer regarding the redactions.

Please let me know if I missed anything regarding the meet and confer for the subpoena requests/responses.

Jackie will check on the other items we discussed and get back to you on those.

Thanks,

Alyssa Herrera

**EXHIBIT C**

Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov



**From:** Herrera, Alyssa, OSI
**Sent:** Wednesday, July 10, 2024 1:10 PM
**To:** Trish Hernandez <trish@harrisonhartlaw.com>; Ortiz, Jacqueline, OSI
<jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos, Frances,
OSI <frances.gallegos@osi.nm.gov>
**Cc:** Nicholas T. Hart <nick@harrisonhartlaw.com>; Carter B. Harrison IV
<carter@harrisonhartlaw.com>; Elise Funke <elise@harrisonhartlaw.com>;
mikesharman@verizon.net
**Subject:** RE: Meet & Confer - RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 -
Gospel Light's Subpoena Responses

Hi Nick,

Jackie and I are both on the call but haven't heard you come through. Are you still planning on
attending the meet and confer today?

Please let us know if you can join or if you need to reschedule.

Thanks,

Alyssa Herrera
Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov



**From:** Trish Hernandez <trish@harrisonhartlaw.com>
**Sent:** Monday, July 8, 2024 10:02 AM
**To:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>; Ortiz, Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI <frances.gallegos@osi.nm.gov>
**Cc:** Nicholas T. Hart <nick@harrisonhartlaw.com>; Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke <elise@harrisonhartlaw.com>; mikesharman@verizon.net
**Subject:** Meet & Confer - RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light's Subpoena Responses

Please reserve Wednesday at 1:00 p.m. Mountain time – following is conference call-in information:

**Dial-in number (US):** 1-720-843-2395
**Access code:** 3056157#
Then HOST ONLY (Nick):  *4520#

Trish Hernandez, Paralegal for Nicholas T. Hart,
HARRISON & HART, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
trish@harrisonhartlaw.com

Begin forwarded message:

> **From:** "Herrera, Alyssa, OSI" <alyssa.herrera@osi.nm.gov>
> **Date:** July 5, 2024 at 1:12:50 PM MDT
> **To:** "Nicholas T. Hart" <nick@harrisonhartlaw.com>
> **Cc:** "Carter B. Harrison IV" <carter@harrisonhartlaw.com>, Elise Funke <elise@harrisonhartlaw.com>, Trish Hernandez <trish@harrisonhartlaw.com>, mikesharman@verizon.net, "Ortiz, Jacqueline, OSI" <jacqueline.ortiz@osi.nm.gov>, "Thies, Stephen, OSI" <Stephen.Thies@osi.nm.gov>, "Gallegos, Frances, OSI" <frances.gallegos@osi.nm.gov>
> **Subject: RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light's Subpoena Responses**
>
> Hi Nick,
>
> Thanks for the response. Jackie and I are available at the following dates and times next week:

Monday after lunch, starting at 1:00 pm;

Tuesday between 9:00 am until 11:00 am or at 3:00 pm to 4:00 pm;

Wednesday between 9:00 am until 12:00 pm or 1:00 pm to 2:00 pm;

Thursday after lunch, starting at 1:00 pm; and

Friday at any time between 9:00 am and 3:00 pm.

Please let me know if one of these dates and times work for you.

Best,

Alyssa Herrera
Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov



**From:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Sent:** Friday, July 5, 2024 10:48 AM
**To:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke <elise@harrisonhartlaw.com>; Trish Hernandez <trish@harrisonhartlaw.com>; mikesharman@verizon.net; Ortiz, Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI <frances.gallegos@osi.nm.gov>
**Subject:** Re: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light's Subpoena Responses

Alyssa -

Things have been quite hectic for me these past weeks. Send me some times that

work for you next week and I'll make it work for the meeting and confer.

-Nick

———

Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com

Sent from my iPhone

> On Jul 3, 2024, at 11:50 AM, Herrera, Alyssa, OSI
> <alyssa.herrera@osi.nm.gov> wrote:
>
> Counsel,
>
> At the May 6, 2024 hearing, Judge Khalsa encouraged/directed us to meet
> and confer on matters that can be resolved without the Court's
> intervention. I am still interested in meeting and conferring regarding
> Gospel Light's subpoena responses, but have not heard back from you
> over the past few weeks, despite my several email requests.
>
> At this point, I do believe some of our concerns are resolvable. However,
> we plan to file a Motion to Compel Gospel Light's responses to the
> subpoena requests if we do not hear back from you to schedule the meet
> and confer.
>
> Please let me know if you concur or oppose the Motion to Compel no
> later than noon on Friday, July 5, 2024.
>
> Thank you,
>
> Alyssa Herrera
> Staff Attorney
> NM Office of Superintendent of Insurance
> 6200 Uptown Blvd. NE, Ste. 400
> Albuquerque, NM 87110
> Mobile: (505) 584-7347
> Email: alyssa.herrera@osi.nm.gov
> <image001.png>

**From:** Herrera, Alyssa, OSI
**Sent:** Tuesday, July 2, 2024 3:38 PM

**To:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke
<elise@harrisonhartlaw.com>; Trish Hernandez
<trish@harrisonhartlaw.com>; mikesharman@verizon.net; Ortiz,
Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI
<Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI
<frances.gallegos@osi.nm.gov>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276
- Gospel Light's Subpoena Responses

Good afternoon, Counsel.

I am following up on my email below regarding rescheduling the
meet and confer.

Thank you,

Alyssa Herrera
Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov
<image001.png>

---

**From:** Herrera, Alyssa, OSI
**Sent:** Friday, June 21, 2024 2:59 PM
**To:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke
<elise@harrisonhartlaw.com>; Trish Hernandez
<trish@harrisonhartlaw.com>; mikesharman@verizon.net; Ortiz,
Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI
<Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI
<frances.gallegos@osi.nm.gov>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276
- Gospel Light's Subpoena Responses

Good afternoon, Counsel.

I wanted to follow up on my email below to see if we can reschedule
the meet and confer for next week.

Thank you, and have a nice weekend.

Best,

Alyssa Herrera
Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov
<image001.png>

---

**From:** Herrera, Alyssa, OSI
**Sent:** Thursday, June 20, 2024 9:30 AM
**To:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke <elise@harrisonhartlaw.com>; Trish Hernandez <trish@harrisonhartlaw.com>; mikesharman@verizon.net; Ortiz, Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI <frances.gallegos@osi.nm.gov>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276 - Gospel Light's Subpoena Responses

Hi Nick,

I apologize for the short notice, but I had an emergency come up that I need to take care of this afternoon. Can we please move this meet and confer to next week?

Please let me know your availability at your convenience and we will work on getting it rescheduled as soon as we can.

Thank you,

Alyssa Herrera
Staff Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov
<image001.png>

---

**From:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Sent:** Monday, June 10, 2024 11:17 AM
**To:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke

<[elise@harrisonhartlaw.com](mailto:elise@harrisonhartlaw.com)>; Trish Hernandez
<[trish@harrisonhartlaw.com](mailto:trish@harrisonhartlaw.com)>; [mikesharman@verizon.net](mailto:mikesharman@verizon.net); Ortiz,
Jacqueline, OSI <[jacqueline.ortiz@osi.nm.gov](mailto:jacqueline.ortiz@osi.nm.gov)>; Thies, Stephen, OSI
<[Stephen.Thies@osi.nm.gov](mailto:Stephen.Thies@osi.nm.gov)>; Gallegos, Frances, OSI
<[frances.gallegos@osi.nm.gov](mailto:frances.gallegos@osi.nm.gov)>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276
- Gospel Light's Subpoena Responses

That works for me. Thanks.

-----
Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
[nick@harrisonhartlaw.com](mailto:nick@harrisonhartlaw.com)

**From:** Herrera, Alyssa, OSI <[alyssa.herrera@osi.nm.gov](mailto:alyssa.herrera@osi.nm.gov)>
**Sent:** Monday, June 10, 2024 11:14 AM
**To:** Nicholas T. Hart <[nick@harrisonhartlaw.com](mailto:nick@harrisonhartlaw.com)>
**Cc:** Carter B. Harrison IV <[carter@harrisonhartlaw.com](mailto:carter@harrisonhartlaw.com)>; Elise Funke
<[elise@harrisonhartlaw.com](mailto:elise@harrisonhartlaw.com)>; Trish Hernandez
<[trish@harrisonhartlaw.com](mailto:trish@harrisonhartlaw.com)>; [mikesharman@verizon.net](mailto:mikesharman@verizon.net); Ortiz,
Jacqueline, OSI <[jacqueline.ortiz@osi.nm.gov](mailto:jacqueline.ortiz@osi.nm.gov)>; Thies, Stephen, OSI
<[Stephen.Thies@osi.nm.gov](mailto:Stephen.Thies@osi.nm.gov)>; Gallegos, Frances, OSI
<[frances.gallegos@osi.nm.gov](mailto:frances.gallegos@osi.nm.gov)>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276
- Gospel Light's Subpoena Responses

Hi Nick,

How about 2 pm next Thursday, the 20th?

Thanks,

Alyssa Herrera
Associate Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: [alyssa.herrera@osi.nm.gov](mailto:alyssa.herrera@osi.nm.gov)
<image001.png>

**From:** Nicholas T. Hart <[nick@harrisonhartlaw.com](mailto:nick@harrisonhartlaw.com)>

**Sent:** Monday, June 10, 2024 11:04 AM
**To:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>; Elise Funke
<elise@harrisonhartlaw.com>; Trish Hernandez
<trish@harrisonhartlaw.com>; mikesharman@verizon.net; Ortiz,
Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies, Stephen, OSI
<Stephen.Thies@osi.nm.gov>; Gallegos, Frances, OSI
<frances.gallegos@osi.nm.gov>
**Subject:** Re: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al., 23-CV-00276
- Gospel Light's Subpoena Responses

I am free any time thursday of next week.

————

Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com

Sent from my iPhone

> On Jun 10, 2024, at 11:00 AM, Herrera, Alyssa, OSI
> <alyssa.herrera@osi.nm.gov> wrote:
>
> Hi Nick,
>
> Thanks for the email.
>
> Can we actually push this meeting to late next week?
> What is your availability on Thursday or Friday next
> week?
>
> Thanks,
>
> Alyssa Herrera
> Associate Attorney
> NM Office of Superintendent of Insurance
> 6200 Uptown Blvd. NE, Ste. 400
> Albuquerque, NM 87110
> Mobile: (505) 584-7347
> Email: alyssa.herrera@osi.nm.gov
> <image001.png>

**From:** Nicholas T. Hart <nick@harrisonhartlaw.com>
**Sent:** Monday, June 10, 2024 10:43 AM
**To:** Herrera, Alyssa, OSI <alyssa.herrera@osi.nm.gov>
**Cc:** Carter B. Harrison IV <carter@harrisonhartlaw.com>;
Elise Funke <elise@harrisonhartlaw.com>; Trish Hernandez
<trish@harrisonhartlaw.com>; mikesharman@verizon.net>;
Ortiz, Jacqueline, OSI <jacqueline.ortiz@osi.nm.gov>; Thies,
Stephen, OSI <Stephen.Thies@osi.nm.gov>; Gallegos,
Frances, OSI <frances.gallegos@osi.nm.gov>
**Subject:** Re: [EXTERNAL] Gospel Light, et al. v. NM OSI, et al.,
23-CV-00276 - Gospel Light's Subpoena Responses

Alyssa -

I need to move the meet and confer today. What is your
availability for later this week?

-Nick
————

Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com

Sent from my iPhone

> On Jun 3, 2024, at 1:04 PM, Herrera, Alyssa,
> OSI <alyssa.herrera@osi.nm.gov> wrote:
>
> Hi Nick,
>
> Thank you for your email. Friday works fine
> to respond to the good faith letter.
>
> Looking at the calendar, Monday 6/10 looks
> like a better day for us to conduct the meet
> and confer, although if that I changes, I can
> certainly let you know.
>
> How about after the lunch hour, at 1:00 pm
> for the meeting?

Thanks,

Alyssa Herrera
Associate Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov
<image001.png>

---

**From:** Nicholas T. Hart
<nick@harrisonhartlaw.com>
**Sent:** Monday, June 3, 2024 12:46 PM
**To:** Herrera, Alyssa, OSI
<alyssa.herrera@osi.nm.gov>; Carter B.
Harrison IV <carter@harrisonhartlaw.com>;
Elise Funke <elise@harrisonhartlaw.com>;
Trish Hernandez <trish@harrisonhartlaw.com>;
mikesharman@verizon.net
**Cc:** Ortiz, Jacqueline, OSI
<jacqueline.ortiz@osi.nm.gov>; Thies, Stephen,
OSI <Stephen.Thies@osi.nm.gov>; Gallegos,
Frances, OSI <frances.gallegos@osi.nm.gov>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v.
NM OSI, et al., 23-CV-00276 - Gospel Light's
Subpoena Responses

Alyssa –

There is no deadline for a response to this
good faith communication in the letter.
Would Friday of this week suffice for a
response?

As for availability next week for a meet and
confer, I am available all day on 6/10 and
6/12. Do you have time any of those days?

-Nick

-----
Nicholas T. Hart
Harrison & Hart, LLC
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261

nick@harrisonhartlaw.com

---

**From:** Herrera, Alyssa, OSI
<alyssa.herrera@osi.nm.gov>
**Sent:** Friday, May 31, 2024 11:50 AM
**To:** Nicholas T. Hart
<nick@harrisonhartlaw.com>; Carter B.
Harrison IV <carter@harrisonhartlaw.com>;
Elise Funke <elise@harrisonhartlaw.com>;
Trish Hernandez <trish@harrisonhartlaw.com>;
mikesharman@verizon.net
**Cc:** Ortiz, Jacqueline, OSI
<jacqueline.ortiz@osi.nm.gov>; Thies, Stephen,
OSI <Stephen.Thies@osi.nm.gov>; Gallegos,
Frances, OSI <frances.gallegos@osi.nm.gov>
**Subject:** RE: [EXTERNAL] Gospel Light, et al. v.
NM OSI, et al., 23-CV-00276 - Gospel Light's
Subpoena Responses

Good morning, Counsel.

Please find a letter attached to this email
regarding Plaintiffs' objections and
responses to OSI's subpoena requests.

Thank you,

Alyssa Herrera
Associate Attorney
NM Office of Superintendent of Insurance
6200 Uptown Blvd. NE, Ste. 400
Albuquerque, NM 87110
Mobile: (505) 584-7347
Email: alyssa.herrera@osi.nm.gov
<image001.png>

---

**From:** Elise Funke
<elise@harrisonhartlaw.com>
**Sent:** Thursday, May 16, 2024 3:53 PM
**To:** Ortiz, Jacqueline, OSI
<jacqueline.ortiz@osi.nm.gov>; Herrera,
Alyssa, OSI <alyssa.herrera@osi.nm.gov>;
Thies, Stephen, OSI
<Stephen.Thies@osi.nm.gov>
**Cc:** Nicholas T. Hart
<nick@harrisonhartlaw.com>; Carter B.

Harrison IV <carter@harrisonhartlaw.com>;
Trish Hernandez <trish@harrisonhartlaw.com>
**Subject:** [EXTERNAL] Gospel Light, et al. v. NM
OSI, et al., 23-CV-00276 - Gospel Light's
Subpoena Responses

> CAUTION: This email originated outside
> of our organization. Exercise caution
> prior to clicking on links or opening
> attachments.

Counsel,

Attached, please find Gospel Light's
responses to the OSI's April 25, 2024
subpoena concerning the above-referenced
matter.

Additionally, the following links will
provide you with the materials referenced as
Bates numbers GOSPEL LIGHT 000001 –
GOSPEL LIGHT 001363:

1. https://www.dropbox.com/t/Okq7F
   ZoLCLqgUzbS
2. https://www.dropbox.com/t/neCgp
   9KddaKDcBwG

**Please note that these links expire in one
week.**

Should you have questions or follow up,
please do not hesitate to reach out.

Many thanks,
Elise

Elise C. Funke
*Of Counsel*
Harrison & Hart, LLC
924 Park Avenue SW, Suite E
Albuquerque, New Mexico 87102
Tel:  (505) 295-3261
Fax: (505) 341-9340



# 2024 Sharing Guidelines



**Effective January 1, 2024**

EXHIBIT D

## A. Purpose of Guidelines

These Guidelines are for use by Liberty HealthShare in directing monthly contributions in accordance with the Program's Guidelines. The Guidelines describe the types of medical expenses the members have agreed to share among themselves. Decisions made by Liberty HealthShare concerning the interpretation of these Guidelines in individual cases may not set precedent for future decisions.

## B. Participation is Voluntary

Monthly contributions are voluntary gifts and are not refundable. Each member is a self-pay patient who sends monthly contributions to assist another member who has medical expenses. Whether anyone chooses to share in another member's medical expenses is voluntary. Giving a monetary gift to assist another member in the Program does not create a legally enforceable right to receive funds for healthcare expenses.

Whether or not any member receives assistance from other members for medical expenses, members are always liable for their own medical decisions and the expenses that may accrue as a result of their decisions and remain ultimately responsible to pay their bill.

As a voluntary sharing ministry, we are always constrained by finite resources no matter how many members we may have. We are acutely aware that we cannot always be all things to all people and may therefore decline participation to those who present pre-existing medical needs since such expenses may strain our giving beyond our current capacity.

Liberty HealthShare reserves the right to sever the voluntary relationship with members who are not aligned with the sharing mentality or who are unwilling to cooperate with stewardship efforts to avoid exorbitant medical prices.

## II. Types of Members

Two types of Membership are available for participants:

## A. Sharing Member

Sharing Members are those who wish to regularly participate each month by contributing at least the suggested Monthly Share Amount to share in another member's medical expenses. Sharing Members, when they experience medical expenses, may submit those needs for sharing among other members according to the Sharing Guidelines.

## B. Donors

Members and non-members who wish to contribute amounts of their own choosing to be applied and/or used for sharing wherever Liberty HealthShare determines funds ought to be directed.

### G. Membership and Program Changes

#### 1. Membership Changes

Any primary or guardian member who requests to add or exclude a Dependent or spouse on an active membership, or change their membership sharing level, **must complete a membership change form by the 25th of the month prior to the requested date of change.** To complete a membership change, the primary member must submit an electronic document request to change members, which is available through their ShareBox. If a member does not have access to their ShareBox, they must contact the enrollment department with the requested membership change information. All membership additions (except babies added within 60 days from date of birth), are subject to medical history review prior to approval of addition.

#### 2. Program Level Changes

Program level changes can only be **made 60 days prior to the annual membership renewal date. A Program level change must be requested by the primary member by the 25th of the month prior to the annual renewal date and will become effective the 1st of the annual renewal month.** To complete a Program level change, the primary member must submit an electronic document request to change Programs, which is available through their ShareBox. If a member does not have access to their ShareBox, they must contact the enrollment department with the requested Program level change information.

### H. Divorce/Separation of Couples

In the event of divorce or separation where the primary member and spouse desire to continue as Sharing Members with Liberty HealthShare, both parties must complete and sign the Liberty HealthShare membership separation agreement. The original combined membership will be cancelled, and a new membership created for each party the 1st of the following month agreement is signed and received. Both members will keep their original effective date and the first-time membership enrollment dues will be waived. Each new membership is subject to the new Monthly Share Amount and any new AUA changes.

### I. Submit Dues and Suggested Monthly Shares

To remain an active member, Sharing Members must submit membership dues and contribute a monthly share of at least the amount suggested by Liberty HealthShare each month.

#### 1. Membership Dues

Membership Enrollment dues are required at the time of application for enrollment and are non-refundable unless the enrollment is denied for medical reasons. Annual renewal dues are applied annually by the 1st day of the member's annual renewal month. A member's renewal will not be prevented or disallowed due to the amount of bills submitted for sharing in any prior year(s) of membership.

#### 2. Monthly Share Amount and How it Changes

The Monthly Share Amount is the monetary contribution, not including the annual renewal dues, voluntarily given to share in another member's Eligible Medical Expenses as suggested by Liberty HealthShare. The Monthly Share Amount is determined by majority vote of the Board of Directors and is based upon the amount of bills submitted by members for sharing, the amount needed to administer the Program, and the number of participating Members. An annual or more frequent advisory vote of the Members may be taken to assess Program features, changes and the will of the Members regarding the same. The Monthly Share Amount may be revised upward or downward as determined by majority vote of the Board of Directors. Notice of such change will be made to the Members in a timely manner, but with no less than 60 days' notice.

c.  **Other Sources** Other sources include, but are not limited to, all private insurance and governmental and institutional insurance including, but not limited to, Medicare, Medicaid, Veterans Administration, Champus, Medpay, PIP, Uninsured and Underinsured Motorist coverages, No-Fault coverage and Worker's Compensation. If the Sharing Member is 65 years of age or older, this limitation also includes needs that are payable by Medicare Parts A, B, C and/or D, whether the Sharing Member is enrolled in Medicare or not.

d.  **Medical Expenses Paid by Other Source Ineligible; Duty to Assist with Reimbursement** To the extent that such expenses are paid by any other source, such expenses will be regarded as not eligible for sharing. To the extent that members then share in expenses that may be the responsibility of any other source, the member receiving sharing is obliged to cooperate with any documentation or information needed to facilitate reimbursement to the members.

e.  **Receipt of Payment from Other Sources** To the extent that such expenses are then subsequently paid by any other source, as allowed by law, the Sharing Member is responsible for reimbursing Liberty HealthShare members for any payment subsequently received from another source, which was previously shared among the members and paid. The right to reimbursement to Liberty HealthShare's members shall take priority over that of the Sharing Member and applies even if the payment received from the other source does not provide full compensation for the actual loss suffered by the Sharing Member, without regard to any asserted "Made Whole" doctrine.

f.  **Reimbursement Policy** After a 6-month post-accident period, sharing may be permitted, if necessary, where payment of medical expenses by any other source is not presently available.

## 7. Pre-existing Conditions

A condition for which signs, symptoms or treatment were present prior to application, or can be reasonably expected to require medical intervention in the future, **needs to be declared upon application for Liberty HealthShare membership,** and updated with any new symptoms/signs or diagnoses that become apparent after the application submission. Failure to declare a medical condition upon application, or failure to update Liberty HealthShare after application, may preclude sharing in that condition any time in the future. **Failure to fully disclose known or suspected Pre-existing Condition information at the time of application and before Enrollment Date is a violation of our shared trust between members and may subject the member to termination of membership.** Chronic or recurrent conditions that have evidenced signs/symptoms and/or received treatment and/or medication within the past 36 months are not eligible for sharing during the first year of membership.

After the first full year of continuous membership, up to $50,000 of total medical expenses incurred for a Pre-existing Condition may be shared in total during the second and third years of membership. Upon the inception of the 37th month of continuous membership and thereafter, the condition may no longer be subject to the Pre-existing Condition Sharing Limitations. Appeals may be considered for earlier sharing in surgical interventions when it is in the mutual best interest of both the members and the membership to do so.

## 8. Pre-existing Condition Review

Eligible medical expenses submitted for sharing may be subject to Pre-existing Condition review including, but not limited to, request for medical notes, records, Hospital charts, surgical records or other relevant medical history information. Any prior sharing for a given condition shall not serve as evidence that the condition is other than pre-existing.

## I. Eligibility for Sharing Limited to Medical Expenses Exceeding $200

Medical Expenses $200 or less in billed charges (per visit/per member) are not to be submitted and are ineligible for sharing unless otherwise noted in the Liberty HealthShare Sharing Guidelines. Ineligible expenses cannot be applied to a Member's Annual Unshared Amount (AUA). All Eligible Medical Expenses must be submitted for sharing within 180 days of the date of service, in the manner and form specified by Liberty HealthShare. This may include, but not limited to, standard industry billing forms (HCFA 1500 and/or UB 92) and medical records.

## J. Prenotification

Prenotification of services is required to identify Sharing Members who would benefit from the Liberty HealthShare clinical support team helping to navigate the complicated health care systems. **Prenotification of services is required for:**

1. **Hospital Admissions –** All Inpatient Hospital confinements, including emergency admissions must be reported to the prenotification/Care Navigation staff within 48 hours following admission (or the next business day, whichever comes first) to be eligible for sharing. If the Sharing Member is unable to prenotify due to the severity of the illness or injury, then a Physician or a responsible party representing the member should contact the prenotification/Care Navigation department at the earliest time reasonably possible. Failure to prenotify may be reviewed by Liberty HealthShare staff and its requirement waived if there is reasonable justification for that failure. This includes treatment at a skilled nursing Facility or inpatient rehabilitation.

2. **Cancer Care –** Treatment/plan of care review at initiation of treatment and with course of treatment change.

3. **Invasive Diagnostic Testing –** Testing involving puncturing the skin and entering the body in an Outpatient or surgical setting.

## X.  Liberty Unite, Liberty Connect and Liberty Essential Sharing Program Guidelines

The provisions of the preceding Liberty HealthShare Sharing Guidelines are applicable to members of the Liberty Unite, Liberty Connect and Liberty Essential Sharing Programs with the following additions:

## A. Prenotification of Medical Expense

To be considered for medical cost sharing, the member **MUST** notify Liberty HealthShare **IN ADVANCE** by contacting the prenotification department for any Services, procedures and diagnostics listed below, except in the case of true emergencies. The Sharing Member, their physician, or their representative should contact the prenotification department **as soon as the need for admission or Services is recognized, and at least seven (7) days prior to admission whenever possible.** An electronic prenotification form can be found on the Liberty HealthShare website and in ShareBox. **It is the responsibility of the Sharing Member to ensure that the prenotification staff is contacted and not depend on the Physician or Facility to do so. Liberty HealthShare's relationship is with the member, not the medical provider.**

## To be eligible for consideration for medical cost sharing, prenotification is required:

1. Inpatient Hospital confinements including emergency admissions (as soon as it becomes evidently needed), skilled nursing, inpatient rehabilitation Facility and hospice. The term "Inpatient" includes any Facility admission, observation or other confinement that lasts more than 23 hours.

2. Organ/tissue transplant Services.

**Liberty Unite, Liberty Connect, and Liberty Essential Sharing Program Members may share in these types of medical costs below, which may be limited in extent by other paragraphs in these Sharing Guidelines:**

1. **Acute Hospital Charges** Inpatient or Outpatient Hospital treatment or surgery for a medically diagnosed condition.

2. **Ambulance** Emergency land or air ambulance transportation to the nearest medical Facility capable of providing the Medically Necessary care to avoid seriously jeopardizing the Sharing Member's life or health.

3. **Cancer Care** Medical expenses for cancer are eligible as follows:
   a. Onset of signs/symptoms related to the cancer diagnosis that are exhibited after initiation of sharing membership;
   b. Limitations are set by subscribed Sharing Program at the time of diagnosis and are subject to AUA;
   c. Prenotification is required for cancer treatment plan review to determine eligibility including naturopathic and alternative treatments;
   d. Adjunct treatment medications will be evaluated for eligibility relative to the treatment plan; and,
   e. Maintenance or long-term therapy medications (including but not limited to Lupron, Prolia, Eligard, Zometa and Tasigna) are only eligible for sharing for the first 45 days following initiation of the maintenance therapy, regardless of route of administration.

4. **Cardiac Rehabilitation** Up to 12 therapy visits provided by a Licensed therapist per membership year. After initial evaluation, prenotification and approval is required before any therapy needs will be considered for sharing. After a Sharing Member has completed 12 visits, a reassessment is required to approve additional visits (up to 24) for a total of 36 visits.

5. **Chiropractic Care, Acupuncture, Osteopathic Manipulative Treatment and Ancillary Therapies (Physical Therapy, Speech Therapy, Occupational Therapy, Respiratory Therapy).** Chiropractic care, acupuncture, osteopathic manipulative treatment and ancillary therapies are eligible for sharing **up to $50 per visit by a Licensed Provider with $1,000 maximum share limit per member per membership year** (inclusive of ALL chiropractic, acupuncture, osteopathic, manipulative treatment and ancillary Services) and subject to AUA.

6. **Cosmetic Procedures** Cosmetic care and treatment provided for disfiguration caused by amputation, disease (including acne), accident or initial breast reconstruction following a mastectomy, are eligible for sharing.

7. **Direct Primary Care (DPC) Membership** Members may request to have a variable portion of their monthly DPC membership fees shared, the amounts of which may be adjusted from time to time by the Liberty HealthShare administration. If a practice bills separately for an office visit, those bills are eligible for sharing if the member has not also requested a reimbursement for DPC monthly fees. If a practice is identified as billing excessively, ordering unnecessary tests, or profiting egregiously from ancillary Services that should be included within their DPC membership, then fees for that practice may not be shared in or the sharing stopped once identified. **DPC membership is not subject to the AUA nor subject to Guideline limitations for medical expenses $200 or less.**

### C. How to submit an expense for evaluation of sharing:

- Members select a Licensed Dentist of their choice.

- Members present their Liberty HealthShare Dental Program ID at the time of service.

- Members request that their Licensed Dentist submit the expense electronically.

- If the Member's Licensed Dentist does not submit the expense electronically, the member must mail their dental expense information to the vendor's address detailed on the Liberty HealthShare Dental card.

### D. Receipt of Payment from Other Sources

To the extent that dental expenses are subsequently paid by any other source, as allowed by law, the Sharing Member is responsible for reimbursing Liberty HealthShare members for any payment subsequently received from another source which was previously shared among the members and paid.

The right to reimbursement to Liberty HealthShare's members shall take priority over that of the Sharing Member and applies even if the payment received from the other source does not provide full compensation for the actual loss suffered by the Sharing Member, without regard to any asserted "Made Whole" doctrine.

bill the Sharing Member directly for Co-Shares, Annual Unshared Amounts or charges for Ineligible Services. If a Provider refuses to accept an Assignment of Member Shares under the conditions and limitations as set forth herein, any Eligible Medical Expenses shareable under the terms of the Sharing Guidelines will be shareable directly to the Sharing Member.

**5. Balance Bill -** A medical bill from a healthcare Provider billing a member for the difference between the Provider's total billed charges less any portion of the medical need applied to the member's Annual Unshared Amount and any amount shared by members.

**6. CMS -** A federal agency within the United States Department of Health and Human Services known as the Centers for Medicare and Medicaid Services.

**7. Complications of Pregnancy -** Conditions in evidence before the pregnancy ends: acute nephritis, ectopic pregnancy; hemorrhage, miscarriage; nephrosis; cardiac decompensation; missed abortion; hyperemesis gravidarum; pre-eclampsia, and eclampsia of pregnancy.

**8. Co-Share -** The portion of eligible medical bills a Sharing Member with a Co-Share option must pay after his or her Annual Unshared Amount has been met.

**9. Dental Care -** Any care rendered by a dentist who is properly trained and Licensed to practice dentistry and who is practicing within the scope of such License.

**10. Dependent -** The Applicant's spouse; children (natural born or legally adopted of either spouse) or an unmarried person under the age of 26 who is the Applicant's child by birth or legal adoption or for which the Applicant has a Qualified Medical Child Support Order (QMCSO). An Applicant's stepchild is also a Dependent so long as the Applicant's spouse is also participating under the same sharing membership.

**11. Discount Provider -** Any Hospital, Physician or other health care Provider who has agreed to accept reduced fees for Services rendered to Liberty HealthShare members.

**12. Eligible Medical Expenses -** The charge for a Service or Supply provided in accordance with the terms of the Sharing Guidelines and approved for sharing, whose applicable charge amount does not exceed the Program limits.

**13. Enrollment Date -** The date that membership becomes effective. Conditions that exist prior to the Enrollment Date will be considered pre-existing.

**14. Excess or Excessive Charges -** Charges in excess of Fair and Reasonable Consideration or Reasonable fees; or for Services not deemed to be Reasonable or Medically Necessary; or for billed amounts found to constitute invalid charges, based upon the determination of Liberty HealthShare or its delegate in accordance with the terms of the Sharing Guidelines.

**15. Facility -** Any Facility that provides medical Services on an Outpatient basis, whether a Hospital-affiliated Facility or independent Facility.

**16. Fair and Reasonable Consideration -** An amount that would constitute Fair and Reasonable payment to a Provider for Services provided in accordance with the terms of the Sharing Guidelines and approved for sharing, under the facts and circumstances surrounding the provision thereof, taking into consideration the cost to the Provider for providing the Services and the Medicare reimbursement rates for such Services. Regardless of typical practices of any Provider or other Providers of comparable Services, Fair and Reasonable Consideration shall not include amounts for any invalid charges.

Fair and Reasonable Consideration means the maximum amount shareable for a Service, Supply, or treatment and is the lesser of (1) the charge made by the Provider that furnished the care, Service or Supply, (2) the negotiated amount established by a discounting

arrangement, or (3) the Reasonable and Customary Charge for the same treatment, Services or Supply furnished in the same geographic area by a Provider of like Service of similar training and experience as further described below, or (4) an amount equivalent to the following:

**a.** For inpatient or Outpatient Facility Eligible Medical Expenses, an amount equivalent to 140% of the Medicare equivalent allowable amount; or

**b.** For Physician and ancillary Eligible Medical Expenses, an amount equivalent to 120% of the Medicare equivalent allowable amount.

The term "Reasonable and Customary Charge" shall mean the lesser of an amount calculated using the equivalent of a commercially available database or such other cost or quality-based reimbursement methodologies as may be available and used by Liberty HealthShare from time-to-time.

If there is insufficient information submitted for a given procedure, Liberty HealthShare will determine the Fair and Reasonable Consideration based upon charges made for similar Services. Determination of the Reasonable and Customary Charge will take into consideration the nature and severity of the condition being treated, medical complications or unusual circumstances that require more time, skill or experience and any cost and quality data for that Provider.

The term "Geographic Area" shall be defined as a metropolitan area, county, ZIP Code, state or such greater area as is necessary to obtain a representative cross-section of Providers, persons, or organizations rendering such treatments, Service or Supply for which a specific charge is made. For Eligible Medical Expenses rendered by a Provider in a Geographic Area where applicable law may dictate the maximum amount that can be billed by the rendering Provider, the Fair and Reasonable Consideration shall mean the lesser of the amount established by applicable law for that Eligible Medical Expense or the amount determined as set forth above.

Liberty HealthShare or its designee has the final determination of what constitutes Fair and Reasonable Consideration, including establishing the negotiated terms of a Provider arrangement as the Fair and Reasonable Consideration even if such negotiated terms do not satisfy the "lesser of" test described above.

**17. Gross Negligence –** A conscious and voluntary indifference to, and a blatant violation of, a legal duty. It is also a reckless disregard to safety.

**18. Guidelines or Sharing Guidelines -** The documentation that describes the types of medical expenses shared by members and how Liberty HealthShare functions to facilitate that sharing.

**19. Hospital -** An institution that meets all of the following requirements:

**a.** It provides medical and surgical facilities for the treatment and care of injured or sick persons on an inpatient basis;

**b.** It is under the supervision of a staff of Physicians;

**c.** It provides 24-hour-a-day nursing service by registered nurses;

**d.** It is duly licensed as a Hospital;

**e.** It is not, other than incidentally, a place for rest, a place for the aged, a nursing home or a custodial or training type institution, or an institution which is supported in whole or in part by a federal government fund and

**f.** It is accredited by the Joint Commission on Accreditation of Hospitals sponsored by the AMA and the AHA.

# Frequently Asked Questions

## Healthsharing

**What is Liberty HealthShare?**

**What makes Liberty HealthShare different?**

**What can I expect from Liberty HealthShare?**

**How do I become a member?**

**When does sharing begin?**

## Connect

**When I join, am I obligated for a period of time or can I drop out at any time?**

**What guarantees do I have that my money will be used as**

EXHIBIT E

...there a health screening required for membership approval? ⌄

Do I have a deductible or co-pay? ⌄

Can I participate in Liberty HealthShare and also have health insurance? ⌄

How do I know my medical history is safe? ⌄

## Give

How much do I pay each month even though I don't have any medical expenses myself? ⌄

What if I'm unable to make the monthly contribution, or I'm late? ⌄

Members are asked to send in their Monthly Share Amount by the 1st day of each month.

If your Monthly Share Amount is not received by the due date, the Sharing Membership becomes inactive. This means any medical expenses that incur during this time will not be eligible for sharing.





Liberty HealthShare®

**What do I say to my doctor or at the hospital when I need medical care?**

**How does my doctor or hospital get paid?**

**What if I have medical bills that are not eligible and I don't agree with the decision?**

**What are the minimum and maximum amounts of medical bills I can submit to be shared?**

**Will my bills be paid?**

**How do I submit medical expenses from my ShareBox?**

From within ShareBox, click on the Medical tab, then click Medical Expense Submissions. A new medical expense can be submitted or information can be added to a previously submitted expense. It is important that members confirm that healthcare providers are not submitting an expense before they do it themselves. Eligible expenses must be submitted within 180 days of service date and include appropriate CPT and Diagnosis Codes.