**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE.
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

     *Plaintiffs*,

v.                                     No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

     *Defendants*.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, New Mexico Office of the Superintendent of Insurance and Alice T. Kane, Superintendent of Insurance, in her official capacity (collectively "OSI"), by and through their counsel of record, and pursuant to Federal Rules of Civil Procedure 56, and other applicable law, if any, moves this Court under Fed. R. Civ. P. 56 to enter summary judgment because Plaintiffs do not have standing.

**CERTIFICATION OF CONFERRAL**

Undersigned counsel (Stephen P. Thies) certifies that he conferred with the Plaintiffs' counsel regarding the relief requested in this motion which counsel opposes.

**INTRODUCTION**

This case arises out of an administrative decision in which the former Interim Superintendent issued her Final Order that required Gospel Light Mennonite Church Medical Aid Plan ("Gospel Light"), d/b/a Liberty HealthShare ("Liberty Plan"), to cease and desist from

soliciting, offering to sell, selling, collecting membership fees or monthly share amounts, or servicing healthcare sharing ministries in New Mexico, and fined Gospel Light $2.51 million for various violations of the New Mexico Insurance Code.

Subsequently, Gospel Light and three individual members of the Liberty Plan ("Plaintiffs") filed suit against OSI alleging several constitutional violations. Doc. No.  filed on March 31, 2023, Docket No. 1:23-cv-276-MLG-KK ("Complaint").  Specifically, in their Complaint, Gospel Light and the member Plaintiffs brought causes of action against OSI for violations of the Free Exercise Clause under 42 U.S.C. § 1983; violations of the Establishment Clause under 42 U.S.C. § 1983; violations of the Free Speech and Assembly Clauses under 42 U.S.C. § 1983; violations of the Due Process Clause under 42 U.S.C. § 1983; federal preemption; declaratory judgment under 28 U.S.C. § 2201; violations of the New Mexico Constitution against OSI; and violations of the New Mexico Religious Freedom Restoration Act.  Doc. 1, at pp. 46-77.

OSI now moves for summary judgment.  As will be demonstrated below, OSI is entitled to summary judgment because the doctrine of standing requires a litigant to "prove [1] she has suffered a concrete and particularized injury.  At this point in these proceedings, the Plaintiffs are unable to show that they suffered an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical because they continue to engage in the very activity that they claim constitutes an exercise of their religious beliefs and which they allege the Final Order prevents them from doing.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Gospel Light is a Virginia corporation having been incorporated on or about June 24, 2014.  Gospel Light maintains that its Liberty Plan is a health care sharing ministry ("HCSM") exempt from insurance regulation.

2.      Gospel Light does not hold a Certificate of Authority to transact the business of insurance in the State of New Mexico.

3.      OSI began an investigation of the Liberty Plan after receiving two consumer complaints. After completing its investigation, the former Superintendent issued an Order to Cease and Desist and Order to Show Cause, Docket No. 2021-0085, *In the Matter of Gospel Light Mennonite Church Medical Aid Plan, dba Liberty Healthshare* on November 23, 2021.

4.      Gospel Light filed a request for hearing to contest the Order to Cease and Desist and Desist and Order to Show Cause.

5.      On January 20, 2023, the assigned Hearing Officer issued his *Recommended Decision and Order Setting Deadline for Exceptions*.

*6.*      On February 22, 2023, former Interim Superintendent, Ms. Jennifer Catechis, issued her *Final Order*.

*7.*      The *Final Order* ordered Gospel Light to "cease and desist from soliciting, offering to sell, selling, collecting membership fees or monthly share amounts, or servicing HSCMS in New Mexico until [Gospel Light] complies with the requirements of the New Mexico Insurance Code."

8.      On March 31, 2023, Gospel Light filed, together with three individual members of the Liberty Plan, Breanna Renteria, Laura Smith, and Tammy Waters, filed the Complaint in the United States District Court for the District of New Mexico. Doc. 1.

9.      OSI responded with a motion to dismiss. Doc. 8.

10.      By Order dated July 14, 2023, the Court granted in part OSI's motion to dismiss and denied the preliminary injunction. Doc. 38.

11.      Gospel Light was dismissed as a party from the case, but the Individual Plaintiffs

were permitted to move forward with their claims. Doc. 38.

12.     The parties subsequently dismissed Tammy Waters as a plaintiff. Doc. 75, Joint Motion to Dismiss Plaintiff Tammy Waters, filed on June 12, 2024.

13.     Plaintiff Renteria was deposed on October 9, 2024.  A copy of the transcript is attached as Exhibit A.

14.     Plaintiff Renteria was asked whether she is continuing to make a monthly share payment to Gospel Light.  Ms. Renteria responded as follows:

> 12 Q. And when was the last time you contributed to the
> 13 monthly share amount?
> 14 **A. I don't have the exact day, but it is every month.**
> 15 **So it would have been a few days ago, I believe.**
> 16 Q. So you contributed to your monthly share amount in
> 17 October 2024; is that right?
> 18 **A. I can't answer you definitely because I don't have**
> 19 **it in front of me, but I -- I believe it's at the first of**
> 20 **the month.**
> 21 Q. Okay. And so -- I know you don't have it in front
> 22 of you. So possibly not October, but you definitely did pay
> 23 it in September of 2024? Would that be accurate to say?
> 24 **A. Correct.**

Renteria Deposition Exhibit A, page 22.

15.     Plaintiff Smith was deposed on November 12, 2024.  A copy of the transcript is attached as Exhibit B.

16.     Plaintiff Smith was asked whether she is continuing to make a monthly share payment to Gospel Light.  Ms. Smith responded as follows:

> 22 Q. And when was the last time you made a
> 23 monthly share payment?
> 24 **A. The 1st of November.**

Smith Deposition Exhibit B, page 11.

*Motion for Summary Judgment*

## II. ARGUMENT

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "If the movant makes this showing, the burden then shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.'" *Tesone*, 942 F.3d at 994 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Based on its current posture, this suit involves the Plaintiffs, who are members of the Liberty Plan, challenging the legality of OSI's actions. Plaintiffs' asserted injury arises from the allegedly unlawful regulation of the Liberty Program by the OSI. Plaintiffs allege that the Final Order which directed Gospel Light to "cease and desist from soliciting, offering to sell, selling, collecting membership fees or monthly share amounts, or servicing HSCMS in New Mexico until [Gospel Light] complies with the requirements of the New Mexico Insurance Code", infringed on Plaintiffs' sincerely held religious beliefs which they exercise through their participation in the Liberty Plan.

At the core of the Plaintiffs' position is their belief that they have a biblical obligation to help their fellow man when in need which is accomplished by sharing each other's medical expenses. Doc. 37 at 85-87. Plaintiffs allege that the Final Order prevents them from carrying out their religious beliefs because they are unable to participate in the Liberty Plan. Doc. 1 at 52.

Previously, the Court held that at the pleading stage these general factual allegations of injury were sufficient to establish standing. Doc. 38 at 6. Now, when called upon to respond to a

motion for summary judgement, the Plaintiffs "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.  And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115, n. 31, 99 S.Ct. 2601, 1616, n. 31, 60 L.Ed.2d 66 (1979));  *Rio Grande Foundation v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023).

At this stage of proceedings, OSI, as the party moving for summary judgment, bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  That burden may be met by " 'showing'—that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. See id. at 323-24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Failure to do so mandates the entry of summary judgment. *Celotex Corp*., 477 U.S. at 322.

For purposes of meeting its burden, OSI offers the deposition of the two remaining Plaintiffs.  During their respective depositions each Plaintiff was asked the similar question whether they are continuing to make a monthly share payment to Gospel Light?  Both testified that they are continuing to make those payments.

The inability to exercise their religious belief by making a monthly share payment is the injury in fact claimed by the Plaintiffs to satisfy the requirements of standing.  Yet, as both

*Motion for Summary Judgment*

Plaintiffs testified, they continue to make their monthly contributions the very act they claim the Final Order prohibits them from doing.

A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). The doctrine of standing requires a litigant to "prove [1] he has suffered a concrete and particularized injury [2] that is fairly traceable to the challenged conduct, [3] and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 592 U.S. 53, 57, 141 S. Ct. 493, 498, 208 L. Ed. 2d 305 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013); *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).

Injury in fact is the "[f]irst and foremost" of standing's three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-339, 136 S. Ct. 1540, 1547-1548, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S., at 560, 112 S.Ct. 2130 (internal quotation marks omitted).

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S., at 339-340, 136 S. Ct., at 1548.  Plaintiffs allege that they have been personally and individually affected by the Final Order because it prohibits the exercise of their religious belief though the sharing of other's medical expenses, which they engage in through the act of making a monthly payment to the Liberty Plan.  However, as they testified during their respective depositions, Plaintiffs are continuing to make those payments.  Consequently, they have not been affected in a personal and individual way.

*Motion for Summary Judgment*

In addition to the need for an injury to be particularized, the injury must be concrete. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo,* 578 U.S. at 340, 136 S. Ct. at 1549. Because the Plaintiffs are continuing to make their monthly contributions, the Plaintiffs are not suffering any actual injury.

## CONCLUSION

In response to a summary judgment motion the Plaintiffs must come forward with affidavits or other evidence of specific facts in support of their claim of standing, facts that would be supported adequately by the evidence adduced at trial. As the evidence currently before this Court shows, the Plaintiffs have not suffered "an invasion of a legally protected interest" that is "concrete and particularized. This Court should therefore grant OSI's motion for summary judgment due to the Plaintiffs' lack of standing.

Respectfully submitted,
**OFFICE OF THE SUPERINTENDENT OF INSURANCE**


____*/s/Stephen P. Thies*_____
Stephen P. Thies
General Counsel
Office of General Counsel
NM Office of Superintendent of Insurance
PO Box 1689, Santa Fe, NM 87504-1689
505-470-7366
Stephen.Thies@osi.nm.gov


*Attorney for Defendants Office of the Superintendent of Insurance and Alice T. Kane, Superintendent of Insurance, in her official capacity*

*Motion for Summary Judgment*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2025, I filed the foregoing through the Court's CM/ECF filing system, causing a true and correct copy of the same to be served electronically upon all counsel of record reflected on the Notice of Electronic Filing to be served by electronic means.

*/s/ Stephen P. Thies*
Stephen P. Thies

*Motion for Summary Judgment*

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

      Plaintiffs,

vs.              No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

      Defendants.

VIDEOTAPED DEPOSITION OF BREANNA RENTERIA
October 9, 2024
9:04 a.m.
1805 Corte Adelina Street SW
Albuquerque, New Mexico 87105

    PURSUANT TO THE NEW MEXICO RULES OF CIVIL PROCEDURE,
this VIDEOTAPED DEPOSITION was:

TAKEN BY: ALYSSA NICOLE HERRERA
      ATTORNEY FOR DEFENDANTS

REPORTED BY: VERONICA E. BYRD, CCR, RPR
      NEW MEXICO CCR #36
      TRATTEL COURT REPORTING | VIDEOGRAPHY
      609 12th Street NW
      Albuquerque, New Mexico 87102    Exhibit A

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 2

```
 1                 A P P E A R A N C E S
 2    For the Plaintiffs:
 3        Carter B. Harrison, IV, Esq.
          HARRISON & HART, LLC
 4        924 Park Avenue SW, Suite E
          Albuquerque, New Mexico 87102-3023
 5        (505) 295-3261
          carter@harrisonhartlaw.com
 6
          J. Michael Sharman, Esq.
 7        COMMONWEALTH LAW OFFICES, P.C.
          246 E. Davis Street, Suite 200
 8        Culpepper, Virginia 22701
          (540) 727-1007
 9        mikesharman@verizon.net
10    For the Defendants:
11        Alyssa Nicole Herrera, Esq.
          OFFICE OF THE SUPERINTENDENT OF INSURANCE
12        6200 Uptown Boulevard NE, Suite 400
          Albuquerque, New Mexico 87110-4161
13        (505) 383-0800
          alyssa.herrera@osi.nm.gov
14
          Also Present:  Gary Goldblum, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 3

1                    I N D E X

2   WITNESS:                          PAGE:LINE
    BREANNA RENTERIA
3   Examination by MS. HERRERA              5:4

4

5

6                  E X H I B I T S

7   1   EMAIL                      18:11

8   2   LIBERTY HEALTHSHARE MEMBER INFORMATION        18:11

9   3   EMAIL                  23:3

10

11  Deponent Signature/Correction Page        56:1

12  Certificate of Completion of Deposition      57:1

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 4

1           THE VIDEOGRAPHER:  Good morning.  Today's date is

2    October 9th, 2024.  We are now on the record.  The time is

3    9:04 a.m.  This begins the deposition of Breanna Renteria in

4    the matter of Gospel Light Mennonite Church Medical Aid

5    Plan, et al. versus New Mexico Office of the Superintendent

6    of Insurance, et al., filed in the United States District

7    Court for the District of New Mexico.

8           This deposition is being held remotely via Zoom

9    video conferencing.  My name is Gary Goldblum, Certified

10   Legal Video Specialist.  The court reporter is Veronica

11   Byrd.

12          For the record, will counsel, please, introduce

13   themselves and who they represent and stipulate to the

14   validity of the remote swearing in of the witness.

15          MS. HERRERA:  Yes.  Hi.  This is Alyssa Herrera,

16   and I represent the Office of the Superintendent of

17   Insurance.  And I will stipulate to the validity of the

18   remote deposition today.

19          MR. HARRISON:  And this is Carter Harris, and I

20   represent the plaintiff, Breanna Renteria.  And I will also

21   so stipulate.

22          THE VIDEOGRAPHER:  The court reporter will now

23   swear in the witness.

24

25

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 5

1          BREANNA RENTERIA,

2     having been first duly sworn, testified as follows:

3          MS. HERRERA:  Thank you.

4               EXAMINATION

5     BY MS. HERRERA:

6     Q.   Good morning, Mrs. Renteria.  My name is Alyssa

7     Herrera, and as you just heard, I represent the Office of

8     the Superintendent of Insurance.  I'll be asking you some

9     questions today, but before we begin, can you please state

10    and spell your name for the record?

11    **A.   Breanna Renteria, B-R-E-A-N-N-A R-E-N-T-E-R-I-A.**

12    Q.   Thank you.  Have you ever had your deposition

13    taken before?

14    **A.   No.**

15    Q.   Okay.  I know the court reporter and videographer

16    have already mentioned a couple of things, but I'd just like

17    to go over a few more before we get started.  Our court

18    reporter is writing everything down that we're saying, so

19    just to make sure to have a clear record, I ask that -- for

20    your answers, you just give verbal yes or nos.  No shaking

21    heads or uh-uh, nuh-uhs, just because it makes it harder for

22    the -- the court reporter to -- to write that down, although

23    it's sometimes easy to do.

24          I may phrase some of my questions poorly, and if

25    that's the case, please let me know so I can rephrase.  If

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 6

1    you don't tell me that you don't understand or if you just

2    go ahead and answer the question, then I'll assume you

3    understood.  Is that fair?

4        **A.  Yes.**

5        Q.   Okay.  And I don't imagine we will be here too

6    long today, but if you do need a break at any time, please

7    let me know.  I just ask that if there's a question pending,

8    that you answer the question, and then we take the break.

9    Otherwise, I'll remain cognizant of the time as well.

10          Now, before we go into further questioning, have

11    you consumed alcohol in the past 24 hours?

12       **A.  No.**

13       Q.   Have you consumed nonprescription drugs in the

14    past 24 hours?

15       **A.  No.**

16       Q.   Have you consumed prescription drugs in the past

17    24 hours?

18       **A.  No.**

19       Q.   Is there any reason you cannot give complete and

20    accurate testimony today?

21       **A.  No.**

22       Q.   How did you prepare for your deposition today?

23       **A.  I reviewed previous testimonies [sic] and just**

24    **spoke with Mr. Harrison.**

25       Q.   Okay.  And what testimony did you review?

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 7

1    A.   The -- I'm trying to remember the names.  Sorry.

2    The administrative, and then the -- the one from

3    Albuquerque, two years ago.  I'm trying -- I don't remember

4    the names of them.  I'm sorry.

5    Q.   That's okay.  When you say you reviewed testimony,

6    was it your previous testimony that you reviewed?

7    A.   Yes, ma'am.

8    Q.   Okay.  Thank you.  And you said you met with

9    Mr. Harrison.  I'm not going to ask questions about the

10   nature of your conversations.  How many times did you meet

11   with him to prepare?

12   A.   Just once.

13   Q.   Okay.  And how long was that meeting?

14   A.   Fifty-three minutes.

15   Q.   Okay.  Thank you.  Did you speak to anyone else

16   about your deposition today?

17   A.   No.

18   Q.   When is your date of birth?

19   A.   April 28, 1993.

20   Q.   And where were you born?

21   A.   In the -- Southfield, Michigan.

22   Q.   Where do you currently live?

23   A.   Santa Teresa, New Mexico.

24   Q.   And how long have you lived in Santa Teresa?

25   A.   It's probably been -- I'm trying to think, because

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 8

1    **we've had two -- two homes here.  Hold on.  At least three**

2    **years.**

3        Q.   And were you living elsewhere in New Mexico before

4    you moved to Santa Teresa, or did you move to New Mexico?

5        **A.   I was living in El Paso, right across the border.**

6        Q.   Gotcha.  And what brought you to New Mexico?

7        **A.   It was more cost effective, initially.**

8        Q.   Okay.  Are you married?

9        **A.   Yes.**

10       Q.   And how long have you been married?

11       **A.   Nine years.**

12       Q.   And I can see you're -- you're holding your little

13   baby.  Do you have other kids?

14       **A.   Yes.  I have three other children.**

15       Q.   Gosh.  Busy household, I'm sure.

16       **A.   Yes.**

17       Q.   And how old are your kids?

18       **A.   The oldest is seven, and then there's five, one**

19   **and a half, and five weeks.**

20       Q.   Wow.  Congratulations.

21       **A.   Thank you.**

22       Q.   Did you graduate from high school?

23       **A.   Yes.**

24       Q.   And where did you graduate from?

25       **A.   Homeschool.  My mom was my teacher.**

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 9

1     Q.   Got it.  Did you seek any higher education after

2     graduating from high school?

3     **A.   I went to a Bible college.  And I completed a**

4     **three-year degree there, but it's not accredited.**

5     Q.   Okay.  And which college was that?

6     **A.   Christ For The Nations Institute.**

7     Q.   Where is that located?

8     **A.   In Dallas, Texas.**

9     Q.   And are you currently working?

10    **A.   I'm employed, but I'm on break.**

11    Q.   Gotcha.  And where are you employed at?

12    **A.   Dutch Sheets Ministries.**

13    Q.   And what do you do there?

14    **A.   I'm a graphic designer.**

15    Q.   What kind of things do you do as a graphic

16    designer?

17    **A.   Social media posts, website, graphics -- I'm more**

18    **of, like, the assistant fill-in.**

19         **(Court reporter clarification requested.)**

20         THE WITNESS:  Dutch Sheets Ministries.

21    Q.   (BY MS. HERRERA)  And how long have you been a

22    graphic designer at Dutch Sheets Ministries?

23    **A.   I reemployed there a year ago, but I was employed**

24    **there previously for several years.**

25    Q.   Were you employed elsewhere between being employed

Electronically signed by Veronica Byrd (401-065-732-9396)                                      da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 10

1    there the first time and when you were reemployed?

2    **A.  No, ma'am, just a stay-at-home mom.**

3    Q.  Gotcha.  Okay.  And when did you first join

4    Liberty HealthShare's program?

5    **A.  In 2019.**

6    Q.  And how did you hear about the program?

7    **A.  I -- Liberty -- my boss had helped me try to find**

8    **it, but back when I was employed with Dutch Sheets**

9    **Ministries the first time, and -- I think that's it.  We**

10   **were just looking at healthshare ministries, and that was --**

11   **was a good one.**

12   Q.  And why were you searching for healthcare-share

13   ministries, specifically?

14   **A.   The primary reason would be family, maternity --**

15   **excuse me.  We were starting our family.  We wanted**

16   **something that went along with our beliefs, that was**

17   **supportive of family and -- particular, for me, it was**

18   **difficult to find the right maternity coverage of -- in**

19   **different types of insurances, and I really liked the**

20   **healthshare methods and -- I was previously with a**

21   **healthshare ministry, before, and I really, really enjoyed**

22   **that, so -- we liked how everything operated.  It fit with**

23   **our family and our beliefs, and so we continued on with**

24   **that.**

25   Q.   And you said that you were part of a

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 11

1    healthcare-sharing ministry before Liberty; is that right?

2        **A.  Yes.**

3        Q.  And which healthcare-sharing ministry were you a

4    part of before Liberty?

5        **A.  Christian Healthshare [sic] Ministries.**

6        Q.  How long were you a -- a member of that group?

7        **A.  I believe it was just one year.**

8        Q.  And when was that?

9        **A.  Oh.  I can't remember exactly, but it might have**

10   **been 2016 to 2017.**

11       Q.  And why did you leave that program?

12       **A.  I was with my dad's insurance at the time, also,**

13   **and when I phased out of that, I was just looking for the**

14   **best switch when I was going to make a switch.  So I went on**

15   **to search for something, if there was anything better -- or**

16   **a better fit for our family.**

17       Q.  Okay.  And you said you thought it might be

18   between 2016 and 2017, but didn't join Liberty until 2019;

19   is that correct?

20       **A.  Correct.**

21       Q.  Were you a part of any other healthcare-sharing

22   ministry between 2017 and 2019?

23       **A.  It could have still been the Christian Healthshare**

24   **[sic], and then I started -- I know I had it when I had my**

25   **first son, so I'm trying to remember the days.  He was born**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 12

1    in 2017, and I believe we enrolled before he was born.  So

2    it could have been 2017 through 2018, but I don't have the

3    paperwork in front of me.

4        Q.   During your time in the Christian

5    healthcare-sharing ministry, did you have any other health

6    insurance?

7        A.   I had my dad's, which was Blue Cross Blue Shield.

8        Q.   And then phased out of that one, correct?

9        A.   Correct.

10       Q.   Okay.  So going back to Liberty.  When you joined

11   in 2019, what kind of program did you join?

12       A.   In 2019 -- I'm trying to get the program right,

13   because I don't have it all in front of me.  I believe it

14   was the family -- their family plan.  I don't know the names

15   of them.

16       Q.   That's okay.  And are you still part of the family

17   plan?

18       A.   No.

19       Q.   Okay.  What's your current plan, or program?

20       A.   It's just the single.

21       Q.   Gotcha.  And when you first joined, how long were

22   you a member of that first program that you joined?

23       A.   I don't remember.  It's all blended in.

24       Q.   Why did you switch from family plan to single?

25       A.   Because of all of the things going on with this

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 13

1    case.

2        Q.  Can you explain what you mean by that?

3        **A.  It was uncertain what was going to happen, at the**

4    **time, and so I moved my family members, aside from myself,**

5    **out, for the time being, but we would love to reconnect.**

6        Q.  And where did your family members move to?

7        **A.  It's called Altrua HealthShare.**

8        Q.  Is it another healthcare-sharing ministry?

9        **A.  Yes.**

10       Q.  Okay.  So I am going to share my screen now to go

11   through the first document, and we'll make sure this comes

12   up correctly.  Okay.  Can you see this?

13       **A.  Yes, ma'am.**

14       Q.  Okay.  I'm going to scroll -- make sure.  Do you

15   recognize this email?

16       **A.  Yes.**

17       Q.  Okay.  And who is the email from?

18       **A.  From Liberty HealthShare.**

19       Q.  And who is the email to?

20       **A.  Myself and my husband.**

21       Q.  Okay.  Can you please read that portion that I

22   have highlighted?

23       **A.  "This is to confirm that Fernie Renteria and**

24   **Breanna Renteria are active members of Gospel Light**

25   **Mennonite Church Medical Aid Plan, Inc., d/b/a Liberty**

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 14

1    **HealthShare, which is a Health Cost Sharing Ministry."**

2        Q.   So Fernie is your husband; is that correct?

3        **A.   Yes.**

4        Q.   And what is the date on this email?

5        **A.   December 17, 2018.**

6        Q.   Okay.  I'm going to scroll down a little bit.  And

7    can you read the effective date?

8        **A.   "January 1st, 2019."**

9        Q.   So your membership in Liberty became effective as

10   of January 1st, 2019; is that correct?

11       **A.   Yes.**

12       Q.   Okay.  And where it says "Participation Level,"

13   can you read that?

14       **A.   "Couple."**

15       Q.   And how long did the effective date for your

16   participation level as a couple last?

17       **A.   How long was I in the couple participation level?**

18       Q.   Yes.

19       **A.   That's what I don't remember, how long.**

20       Q.   Gotcha.  Is it your understanding that the

21   effective date goes as long as you choose to be that

22   participation level, or is it something you have to renew

23   annually?

24       **A.   It's -- it's as -- as long as you're a part of,**

25   **meaning you're contributing to the healthsharing and you**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 15

1    renew it by doing that.

2       Q.   Gotcha.  So there's -- there's nothing specific

3    you have to -- to do, I guess, on top of contributing the

4    monthly share amount; is that correct?

5       A.   Correct.  They have their requirements before you

6    sign up, but once you're signed up, you just continue to

7    share your -- share into it, and you're -- you're good.

8          (Court reporter clarification requested.)

9          THE WITNESS:  There's a monthly sharing

10   contribution.

11      Q.   (BY MS. HERRERA)  And when you first joined at the

12   participation level as -- the couple, what did this program

13   offer you -- or what were the benefits for you?

14      A.   The primary benefit would have been a chance at

15   having people share into any large medical costs that we

16   might have.  It wasn't a guarantee, but that was definitely

17   something that was a benefit to us that -- that was offered

18   to us through -- through Liberty HealthShare.  That would

19   have been the primary reason.

20      Q.   And when you say "large medical costs" -- what's

21   [sic] a large medical cost mean to you?

22      A.   It could have been, say, anything above 250 or

23   500.  It's not -- there's not a set number, at the time.

24   You know, our life changes drastically from year to year,

25   and you could have some costs that feel like a lot one year

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 16

1    and some that feel like less, the next.  So I don't have an

2    exact number for you.

3         Q.   Okay.  And I'll ask some more questions about that

4    a little bit later.  Aside from the couple participation

5    level that we see here and then the single level, have you

6    been part of any other programs offered by Liberty?

7         A.   I don't remember if they had changed their names

8    of their programs while I was a member.  So as far as I

9    know, we were in couple and single, but I had my children as

10   members also, at one point, and I don't remember if they

11   have a different name for that.  But it's been a

12   continual -- a continual chain of events.

13        Q.   Gotcha.  And you testified, a little bit earlier,

14   about the expectation of giving the monthly share amount.

15   What is the purpose of giving the monthly share amount?

16        A.   The monthly share amount allows the costs to be

17   shared a little bit more evenly, from my perspective,

18   instead of just asking people -- or -- or expecting people

19   to not give for a few months, and then give a massive amount

20   to help somebody out.  I think it's a very smart way to

21   spread it out, but I don't have -- that's just my

22   perspective.

23        Q.   And at the single level that you're at now, what

24   is the minimum requirement for you to participate, in giving

25   that monthly share amount?

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 17

1      A.   Are you asking the cost of the monthly share

2   amount?

3      Q.   Yes.

4      A.   I have to look at the paperwork to see what it is

5   this -- at this moment.

6      Q.   Can you decide how much you want to give through

7   the monthly share amount or is there a minimum expectation?

8      A.   The monthly share amount is set -- the agreed-upon

9   amount, and then you can give above and beyond that amount

10  as you choose.

11     Q.   But you can't give below the set amount; is that

12  correct?

13     A.   Right.  As a member, that's the agreement when you

14  come in.  Yep.

15     Q.   What are the consequences if you don't pay the

16  minimum set amount?

17     A.   If you don't pay your monthly contribution, then

18  you're basically saying you -- you don't want to be a

19  member, so you would re- -- resign your membership.

20     Q.   Okay.  And do you recall what your minimum -- or

21  the set share amount was when you first joined at the couple

22  participation level?

23     A.   I don't recall the exact amount.  I know it's been

24  fluctuating throughout the years, so I -- I don't remember

25  the exact amount.  I would have to look all that back up.

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 18

1          Q.   Okay.  And when you say "fluctuating," is it

2    fluctuating by a couple dollars or a couple hundred dollars?

3          **A.   Based on the plan, it changes.  So the couple plan**

4    **was higher than the single plan, and then they've been very**

5    **transparent with their -- you know, with sharing needs, and**

6    **so it's been, I would say, a couple, not hundreds.**

7          Q.   I'm going to go ahead and go -- and I apologize.

8    This is marked as Exhibit 1 to this deposition.  I'm going

9    to pull up what I'm going to mark Exhibit 2 to this

10   deposition.  Okay.  And can you see this?

11          (Exhibits 1 and 2 marked.)

12   **A.   Yes.**

13          Q.   Okay.  Do you recognize this letter from

14   Liberty --

15   **A.   Yes.**

16   Q.   -- HealthShare?

17          (Court reporter clarification requested.)

18          MS. HERRERA:  Sorry.  I paused.

19   **A.   Yes, I recognize it.**

20          Q.   (BY MS. HERRERA)  Thank you.  Do you recall when

21   you received this letter?

22          **A.   I don't, but I believe it was toward the beginning**

23   **of the sharing.**

24          Q.   Okay.  I'd like to scroll down here.  I have this

25   paragraph highlighted.  Can you read this paragraph, please?

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 19

1     A.   "Liberty HealthShare has not increased share

2     amounts since 2018.  With the continued rising costs of

3     healthcare and the amount of medical bills submitted for

4     sharing with [sic] our community, we've made the decision to

5     take action to help protect our collective SharePower and

6     help meet the needs of our sharing members."

7         Q.   And what's your understanding of what Liberty

8     HealthShare is saying in this paragraph?

9         A.   Up till that point, they haven't increased the

10    costs, and they were relying on the members to pitch in

11    extra to help cover other people's financial burdens.

12        Q.   And I'm sorry.  I want to make sure I heard you

13    right.  You said they were chipping in extra?  When you say

14    "they," do you mean Liberty HealthShare was?

15        A.   From my understanding, it's -- it's saying that

16    they're not raising their costs that we are contributing, at

17    that point -- or from that point, before that, and relying

18    on other people, also, to contribute.  That's my

19    understanding of it.  I'm not sure what their exact

20    intention was.

21        Q.   And what's your understanding of the word

22    "SharePower"?

23        A.   It would be probably people contributing to other

24    people's financial medical needs.  That's my -- that would

25    be what I thought it was.

Electronically signed by Veronica Byrd (401-065-732-9396)                              da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 20

1    Q.   Okay.  And I -- I know you've said you don't

2    recall the exact minimum monthly share amounts.  Do you have

3    an idea of how much you were paying as a couple, like --

4    just get like a range?  Like was it a couple hundred dollars

5    every month?  A couple thousand dollars every month?  I'm

6    just trying to understand what the expectation is.

7    **A.   I feel like it was under the $300 mark at that**

8    **time.**

9    Q.   Okay.  I'm going to scroll down a little bit more.

10   There's a bolded sentence down here.  Can you read that

11   bolded sentence?

12   **A.   "The increase in monthly share amounts will be**

13   **effective on October 1st, 2020, for all new and existing**

14   **members."**

15   Q.   And then -- I'm sorry I did not highlight this

16   part, but this first sentence, that starts with "Our board

17   of directors," can you just read that sentence?

18   **A.   "Our board of directors has elected to increase**

19   **our monthly share amounts for all programs."**

20   Q.   So it sounds like the purpose of this letter was

21   to inform you that the share amounts would be increasing; is

22   that correct?

23   **A.   Yes.**

24   Q.   Okay.  And do you recall what the difference was

25   between when the share amount was increased -- between what

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 21

1    you were paying and then when it was increased?

2       **A.   I don't know what the difference was, but if you**

3    **wanted a ballpark, it's -- it was not very much.  It was**

4    **definitely under the hundred mark.**

5       Q.   Okay.  And I know you've talked, a little bit,

6    about this before.  Do you recall when you switched,

7    exactly, to being a single program?

8       **A.   I don't remember when I switched to being the**

9    **single program.  It was -- it may have been around the time**

10   **my third child was born, but I -- she was born in 2023, but**

11   **I -- I don't know if that's the day.**

12      Q.   Okay.  And as a member having -- or being a part

13   of that single program, you're still expected to pay that

14   monthly share amount to cover -- or I guess to provide

15   benefits for yourself; is that correct?

16      **A.   Yeah.  I'm supposed to provide my monthly share**

17   **amount to -- to maintain my membership, uh-huh.**

18      Q.   Okay.  Thank you.  I -- I apologize.  It was a bad

19   question.  I was just making sure -- you started at the

20   participation -- couple level, and then changed to single,

21   but that expectation stays the same.  You're still paying

22   that monthly share amount to maintain your membership, is

23   what it sounds like.  Correct?

24      **A.   The -- the monthly share amount changes from**

25   **couple to single.  So I still pay a monthly share amount,**

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 22

1    **but the amount changed.**

2        Q.   And most likely is less; is that right?

3        **A.   Yes.**

4        Q.   And -- and you said you didn't recall what that --

5    that current contribution is; is that right?

6        **A.   Correct.  I would have to look for the exact**

7    **numbers.**

8        Q.   Okay.  And how do you typically pay that amount?

9    Is it -- is it just set up on, like, auto pay, or do you

10    write a check every month?

11        **A.   It's set up on auto pay.**

12        Q.   And when was the last time you contributed to the

13    monthly share amount?

14        **A.   I don't have the exact day, but it is every month.**

15    **So it would have been a few days ago, I believe.**

16        Q.   So you contributed to your monthly share amount in

17    October 2024; is that right?

18        **A.   I can't answer you definitely because I don't have**

19    **it in front of me, but I -- I believe it's at the first of**

20    **the month.**

21        Q.   Okay.  And so -- I know you don't have it in front

22    of you.  So possibly not October, but you definitely did pay

23    it in September of 2024?  Would that be accurate to say?

24        **A.   Correct.**

25        Q.   Thank you.  Okay.  I am going to share my screen

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 23

1     and mark this last exhibit as Exhibit 3 to this deposition.

2     Do you recognize this email?

3              (Exhibit 3 marked.)

4     **A.   Yes.**

5     Q.   And who is it from?

6     **A.   Liberty HealthShare.**

7     Q.   And who is it addressed to?

8     **A.   The Liberty HealthShare member.**

9     Q.   Are you that member this is addressing to --

10    **A.   Yes.**

11    Q.   -- this email is addressing to?  Excuse me.  Thank

12    you.  And what is the date on this email?

13    **A.   March 1st, 2022.**

14    Q.   Okay.  And I have this highlighted portion.  See

15    if I can scroll in a little bit.  Can you read this, please?

16    **A.   "Over the past three to four years, medical**

17    **expenses received from members exceeded SharePower nearly**

18    **every month.  During 2021, more than 384 million [sic] in**

19    **shareable expenses were submitted by members, while members**

20    **contributed only 331 million [sic] to the ministry.  This**

21    **resulted in more than 53 million [sic] being added to our**

22    **backlog."**

23    Q.   And what is your understanding of the paragraph

24    that you just read?

25    **A.   I understood Liberty HealthShare was sharing a**

Electronically signed by Veronica Byrd (401-065-732-9396)                         da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 24

1    little bit on the costs that have been coming through, as

2    far as medical expenses that people needed shared.  And then

3    the actual sharing that was happening was less than that,

4    and so they had a gap that still needed to be shared.

5        Q.   And in these sentences that I have highlighted,

6    right here, where it says "shareable expenses," what is your

7    understanding of what "shareable expenses" mean?

8        A.   I believe it's within their guidelines.  There are

9    some things that they will not share into, according to

10   their guidelines, and -- that's what I understand, from

11   that.

12       Q.   Okay.  I'm going to scroll down a little bit more,

13   and I have a couple places highlighted here.  Can you read

14   this first highlighted portion?

15       A.   "Our Sharing Guidelines have always included

16   provisions related to excessive charges.  These provisions

17   note that charges in excess of fair and reasonable amounts

18   may not be eligible for sharing."

19       Q.   And what is your understanding of what "fair and

20   reasonable amounts" mean?

21       A.   According to Liberty HealthShare -- they have

22   instructed us on how to negotiate or ask for self-pay

23   amounts, different ways to cut the costs down, and so that

24   is not just the up-front unmanageable cost for an individual

25   to pay.  And so I believe that's what they're talking about

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 25

1    there.

2        Q.   Have you had to talk with a healthcare provider

3    about reducing your costs to a fair and reasonable amount?

4        **A.   Yes.**

5        Q.   Have you found that it's easy to do so?

6        **A.   It's intimidating, but it's simple.**

7        Q.   Were you successful when you were able to talk to

8    the healthcare provider about reducing the amount?

9        **A.   Yes.**

10       Q.   And this second paragraph here that's highlighted,

11   can you please read this highlighted portion?

12       **A.   "Our backlog also consists of a very high**

13   **percentage of medical expenses submitted that are not [sic]**

14   **under $200" -- or "that are under 200 [sic]."  Sorry.**

15   **"Healthsharing was founded on faith-based principles that**

16   **provide [sic] the opportunity for a community of like-minded**

17   **people to share in one another's burdens, not their everyday**

18   **loads.  With that sentiment, medical expenses 200 [sic] and**

19   **under will not be eligible for sharing and will not be**

20   **applied to the Annual Unshare [sic] Amount."**

21       Q.   And what is your understanding of what the annual

22   unshared amount is?

23       **A.   There is a -- an amount that's a reasonable**

24   **amount, between whatever program that you're in.  It**

25   **fluctuates.  And that's just the amount that you say, "I'm**

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 26

1     **going to cover this, first and foremost.  It's something**

2     **that I have prepared for, and it's not part of the burden**

3     **for other people to share."  That's what I understand.**

4         Q.   Okay.  And just to make sure I understand too,

5     it's an amount you choose to pay for your own medical

6     expenses, and then after that amount is reached, then your

7     medical expenses are eligible for sharing?  Is that correct?

8         **A.   There is an amount that is stated in the**

9     **membership for unshared costs, that you do cover before you**

10    **submit -- or before things are submitted for sharing from**

11    **the community.**

12        Q.   And so that annual unshared amount is what you

13    would pay as an individual, first, before you submit your

14    documentation to have it shared; is that right?

15        **A.   Correct.**

16        Q.   Okay.  And what is the annual unshared amount that

17    you pay -- or have elected to pay, I guess?

18            (Court reporter clarification requested.)

19        Q.   And I apologize for interrupting you.  I just want

20    to make sure my question is clear.

21        **A.   It's fluctuated between a thousand and around the**

22    **2,000 mark, depending on my program.**

23        Q.   Is there a minimum that you have to choose,

24    depending on your program?

25        **A.   Each program has its own amounts set before you**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 27

1    **enroll in them, so you -- you can select which is best**

2    **suited for you.**

3        Q.   And then back to this paragraph that we just read.

4    It -- it sounds like -- it's saying that medical costs under

5    $200 are not eligible to be shared at all; is that right?

6        **A.   Correct.**

7        Q.   Okay.  I think this is all I had on this exhibit,

8    so I'm going to go ahead and stop sharing the screen.  Okay.

9    So through all of the programs that you have had with

10   Liberty, have you submitted your medical costs in order to

11   have your medical expenses shared?

12       **A.   Yes.**

13       Q.   Okay.  And how many times have you done that?

14       **A.   I'm not sure.  It's been a lot.**

15       Q.   Okay.

16       **A.   I'm a fairly healthy individual and we have a**

17   **fairly healthy family, so it's not something very frequent,**

18   **but we've been a part of this for several years, so there's**

19   **been multiple times.  I don't know how many.**

20       Q.   Okay.  Do you recall the most recent time you've

21   requested your medical costs to be shared?

22       **A.   I believe it was for the birth of my third child.**

23   **That should have been the most recent and the last request.**

24       Q.   And you said that was in 2023; is that right?

25       **A.   Correct.**

Electronically signed by Veronica Byrd (401-065-732-9396)    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 28

1    Q.   And what month was your third child born in 2023?

2    **A.   In January.**

3    Q.   And can you tell me about the process that you

4    have to go through to request that your expenses be shared?

5    **A.   For a typical expense -- there are some that are**

6    **prenotified.  There are some that are just like an office**

7    **visit.  You can submit your medical -- like an itemized**

8    **bill, if you will, to their -- to their member-sharing**

9    **portal, online, or on an app, and then once that goes**

10   **through, they have their people look at it and see -- and**

11   **help you process it.  I've never had a big complication with**

12   **it.  They always walk me through it.**

13   Q.   So once you submit your medical expense either on

14   the member portal or through the app, you said that

15   representatives of Liberty HealthShare have walked you

16   through it.  Do you reach out to them after you've submitted

17   it, or do they contact you, say, "We received this"?

18   **A.   They haven't contacted me, in my experience,**

19   **unless I'm missing a document needed.  Otherwise, I can**

20   **check back, on the portal, to see if things have been**

21   **processed or reviewed, and that's how I've been able to**

22   **tell.  If I have questions, I have been able to call them**

23   **and -- or email them, and they respond quickly.**

24   Q.   And how long does it typically take in between the

25   time of submitting the documentation and then receiving

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 29

1    answer of whether it's going to be shared or not?

2        **A.   Typically, about a month.  Sometimes more,**

3    **sometimes less.  For the maternity, it's been a little bit**

4    **more, because there's more steps.**

5        Q.   And what kind of steps do you have to take with --

6    when it's involving maternity, rather than a different type

7    of medical cost?

8        **A.   I think, for me, the steps were a little bit more**

9    **detailed because I had a midwife, instead of just a hospital**

10   **visit, and so they required some more codes and different**

11   **things -- medical terminology, that I just didn't provide in**

12   **the initial submitting.**

13       Q.   Okay.  And have your requests for your medical

14   expenses been accepted by Liberty HealthShare to be shared?

15       **A.   Yes.  Beyond our unshare amount, they have been**

16   **accepted to be shared.  Not guaranteed all of it will be**

17   **shared, but thrown into the -- into the share pile.**

18       Q.   Got it.  So it was accepted because it was a -- a

19   shareable expense, and then -- have there been times where

20   you have requested that your medical expenses be shared and

21   they were not shared?

22       **A.   I don't remember anyone denying our expenses,**

23   **because I believe we've submitted exp- -- expenses that are**

24   **within their shared guidelines.  I -- I don't think we've**

25   **been denied.**

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 30

1    Q.   Okay.  Do you know what the process is once it's

2    been accepted, like, I guess, how other Liberty share

3    members -- or healthshare members know that you have an

4    expense that needs to be shared and paid for?

5    **A.   One of the ways, I believe, is the -- the monthly**

6    **amount gets distributed, and then on top of that, you could**

7    **submit a prayer request, or they've got like a community**

8    **communication prayer section, and you can submit your need**

9    **there.  There is -- I -- I don't think there's really a way**

10   **you can say, "Hey, this is my name; and this is how much I**

11   **need shared."  I don't think that that's -- that's possible**

12   **on there, but it gets distributed throughout the members.**

13   Q.   What type of information do you see in the prayer

14   requests?

15   **A.   More information as far as personally, if they are**

16   **struggling with something medically and they want to tell**

17   **you.  It's -- usually, it's anonymous.  People go through**

18   **and ask for prayer on various things, whether it's -- I**

19   **mean, just whatever they -- whatever they need.  There's a**

20   **lot of different requests.**

21   Q.   And within those requests, are they asking for

22   their expenses to be shared, or is it more just, "Pray for

23   me, because I'm going through this."

24   **A.   It's just, "Pray for me, because this is what's**

25   **going on."  It's not, "Here's my expense.  Please cover it."**

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 31

1      Q.   Gotcha.  Okay.  And then you also said there was,

2    I think, a community needs.  Is that separate from the

3    prayer requests and the sharing?

4      **A.   No.  The community needs, I was trying to refer to**

5    **the prayer requests section.**

6      Q.   Okay.  Just making sure.  Okay.  And then -- so

7    you have had your medical expenses accepted and then put

8    into the share -- the share pile, and they have been shared

9    before; is that right?

10     **A.   Yes.**

11     Q.   How did you find out that your medical needs -- or

12   your medical expenses were shared?

13     **A.   Referring back to the portal.  I would get**

14   **notification through the portal, and also, they would send**

15   **me a reimbursement, if I did self-pay, things like that.**

16   **They would send the money back to me, and then I would know**

17   **it was shared.**

18     Q.   Have you typically had to do self-pay -- and --

19   and when you say that, you mean paying, yourself, up front;

20   is that right?

21     **A.   Correct.**

22     Q.   And is it typically how you have to pay for your

23   medical expenses, and then go through a reimbursement

24   process?

25     **A.   It's not always like that.  Sometimes you can just**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 32

1    work out the self-pay plan with a provider.  It just depends

2    on who you're working with.  From my experience, if I go

3    with more of a private provider, usually just paying up

4    front is much more simple.

5        Q.   And aside from self-pay, what are the other

6    options for submitting the medical expenses for sharing?

7        A.  I've had times where I've actually asked Liberty

8    to help me find out how to negotiate.  That is one of my

9    options, I would say, to get costs at a lower or more

10   reasonable amount, and then I have, at times, given the

11   providers the Liberty HealthShare number to communicate with

12   them, if I don't have the right terminology.  And payment

13   plans are another option, like I mentioned.

14       Q.   Okay.  And do you have health insurance separated

15   from Liberty at this time?

16       A.  I'm also a member of Altrua HealthShare, but I

17   don't have health insurance.

18       Q.   What is the benefit to you being an Altrua member

19   if it's not providing health insurance or -- I guess what

20   kind of benefits do you have there?

21       A.  It has a similar background as Liberty.  It's

22   different, but -- where we can share into other people's

23   medical expenses.

24       Q.   For the times -- I know you said you've never been

25   denied, so I guess let me ask this.  Have you had to pay

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 33

1    out-of-pocket expenses for your medical costs that have not

2    been reimbursed by Liberty or Altrua?

3         A.   Yes, there have been times.  Uh-huh; yes.

4         Q.   And how many times do you think you've also paid

5    out of pocket since joining Liberty?

6         A.   There's been separate occasions that I've paid

7    cash, but I have been reimbursed through sharing.  My

8    children's doctor visits or -- I'm trying to think.  With

9    like, say, the birth of my third child.  That was -- that

10   was cash.  And that's most recent in my head, so that's why

11   it's easier for me to remember.  I'm trying to recall all of

12   them.  There -- there has not been all [sic] of them -- not

13   all of them have been out of pocket.  Some of them have been

14   planned or direct negotiation with Liberty to help me out.

15        Q.   And it sounds like -- when you just said you were

16   paying out of pocket, you were still reimbursed for those

17   times that you paid; is that right?

18        A.   Correct.  Beyond our unshare amount, yes.

19        Q.   Okay.  Have there been any times that you've --

20   you have had to pay out of pocket and have not been either

21   reimbursed for those costs or they have not been shared, so

22   you just didn't get refunded for those times?

23        A.   With Liberty HealthShare, I'm not certain if I've

24   had that happen.  With Altrua, I have.

25        Q.   Okay.  And with Altrua, was it just because of the

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 34

1    shareable expenses differ from what Liberty covers?

2    **A.   I think it was just based on timing of events and**

3    **how long I was a member.**

4    Q.   Gotcha.  Do you have to wait a certain period of

5    time until your medical costs can be shared, when you first

6    join?

7    **A.   According to their guidelines, there are some**

8    **things that you need to wait and some things that it's**

9    **immediate.  So it just depends on what -- what is happening.**

10    Q.   And is that for Altrua or for Liberty?

11    **A.   For both.**

12    Q.   Okay.  And at the time that you had the couple

13    plan and the family plan, for Liberty, has your husband had

14    to request his medical costs be shared?

15    **A.   I don't know if he had any medical costs during**

16    **that time.  I can't recall submitting anything for him.**

17    Q.   You're the one having the babies, so that makes

18    sense.  Yeah.  Have you requested for medical expenses to be

19    shared on behalf of your children, with Liberty?

20    **A.   Yes.**

21    Q.   Okay.  And when did you make those requests?

22    **A.   Few years ago, just for doctor visits, simple**

23    **things.**

24    Q.   And were those expenses able to be shared?

25    **A.   Yes.**

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 35

1    Q.   Did you have to pay anything out of pocket that

2    you -- that were not shared for those visits?

3        **A.   I don't believe so, unless it was within our**

4    **unshare amount during that time.**

5    Q.   Okay.  And I know you've -- you've talked about

6    this a little bit.  So you pay into a monthly share amount,

7    and that is what allows for other members' medical expenses

8    to be shared; is that right?

9        **A.   Correct.**

10    Q.   Are you given any information about, like, which

11    members' medical costs are being shared or anything related

12    to a different member's medical sharing, that your monthly

13    share amount is going towards?

14        **A.   No.**

15    Q.   Okay.  And I know you said your experience has

16    been that you've submitted your medical expenses and you

17    haven't been denied.  Do you know, aside from kind of what's

18    listed in the guidelines, how Liberty decides on whether or

19    not to -- to share that mem- -- that member's medical

20    expenses?

21        **A.   As far as I know, everything that's within the**

22    **guidelines can be shared.  According to their letter about**

23    **the expenses being too high or not reasonable, from my**

24    **experience, they have talked to me about how to negotiate**

25    **things down.  And in the medical world, you can usually take**

Electronically signed by Veronica Byrd (401-065-732-9396)                          da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 36

1    **a bill and revisit it and discuss it with the doctors or the**

2    **providers to create a more reasonable outcome; however, I'm**

3    **not sure what happens, exactly, and how they decide what**

4    **gets denied outside of the guidelines.**

5         Q.   Okay.  I think now might be a good time for a

6    quick break, if that's okay with everybody.  How are you

7    feeling?

8         THE VIDEOGRAPHER:  We are going off the record.

9    The time is 10:01.

10        (Brief recess taken - 10:01 to 10:13 a.m.)

11        THE VIDEOGRAPHER:  We are going back on the

12   record.  The time is 10:13.

13        Q.   (BY MS. HERRERA)  All right.  Mrs. Renteria, do

14   you currently have a religious affiliation?

15        **A.   Are you referring to a denomination or a**

16   **congregation?**

17        Q.   However you identify, I guess, a religious

18   affiliation.

19        **A.   I affiliate myself with Christians,**

20   **nondenominational.**

21        Q.   And how long have you identified yourself as a

22   Christian?

23        **A.   About 25 years.**

24        Q.   Do you regularly participate in religious worship?

25        **A.   Yes.**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 37

1    Q.   And where do you typically participate in that

2    religious worship?

3    **A.   My current church is Revolution Emanuel**

4    **Ministries.**

5    Q.   Is that located in Santa Teresa, where you live?

6    **A.   It's in [sic] the outskirts of El Paso, Texas.**

7    Q.   And do you typically go worship in person?

8    **A.   The most I can, with the -- with all the kids.**

9    **Yes.**

10   Q.   How often do you typically go?

11   **A.   I typically go once a week.  Sometimes, three**

12   **times a week.  It just depends on the kids, again.**

13   Q.   Gotcha.  And are there any other religious

14   activities that you regularly engage in?

15   **A.   I wouldn't say organized activities, just -- just**

16   **my typical fellowship with other Christians.**

17   Q.   And when you say "fellowship with other

18   Christians," what do you mean by that?

19   **A.   Friendships, hanging out at someone's house, going**

20   **to a park, you know, eating a meal together, something like**

21   **that.**

22   Q.   And is prayer an important part of the religious

23   worship that you take part in?

24   **A.   Yes, ma'am.**

25   Q.   How often would you say that you pray?

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 38

1      **A.   Not often enough.  I would say throughout the day,**

2   **off and on.  Corporately, once a week, for me.  Sometimes**

3   **twice a week with other believers, but for myself would be**

4   **throughout the day, off and on, not a particular amount of**

5   **times.**

6      Q.   Okay.  And will you typically pray regardless of

7   where you are, say you're at home or in the car, or do you

8   typically have a designated spot?

9      **A.   No.  I pray anywhere I am.**

10     Q.   And aside from what you've already testified about

11  regarding the medical cost sharing that you participated

12  with Liberty HealthShare, do you participate in any other

13  religious activities that are organized or sponsored by

14  Liberty HealthShare?

15     **A.   No.**

16     Q.   Okay.  Can you tell me what the biblical

17  principles are that guide the way that you live your life?

18     **A.   Ooh, there is a lot of biblical principles.  Could**

19  **you be a little bit more specific on what you're trying to**

20  **understand?**

21     Q.   Yeah.  Just -- I mean, you've kind of talked about

22  prayers.  At the beginning of the testimony, you sort of

23  talked about your draw towards Liberty, because of your

24  beliefs.  Can you just kind of talk about your beliefs in

25  relation to what the Bible kind of tells you or -- or how it

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 39

1    guides you in -- in how to live?

2         A.   That is a very broad -- I could be here all day

3    talking about that.  I'm trying to see where you would want

4    me to narrow in.  First and foremost -- I believe the Bible

5    is very clear.  There's one God.  I'm -- I'm going down to

6    the very basics.  I'm not sure if you want me to do that.

7         Q.   Whatever is important to you.  I guess maybe

8    another way to phrase it is, how would you explain -- like

9    being a Christian, what that means and what that means in

10   relation to -- to how you live your life, by following the

11   Bible?

12        A.   Okay.  So Christian, Christ follower.  Following

13   Jesus's example, from the Bible, he was a servant leader.

14   He would serve other people in need, literally washing the

15   feet of his followers, his disciples, so putting himself at

16   the bottom to lift other people up.  So that's one of the

17   ways I believe that I live -- or try my best to live,

18   according to the Bible and my Christian faith.

19        The other ways, I guess, being faithful to the

20   Lord, asking for forgiveness, praying for others.  But I

21   feel like whatever [sic] it comes down to others, it comes

22   down to loving other people, loving God, like if -- if you

23   just summarize it.  Trying to love other people the way God

24   loves them or sees them, and if you do that, I think you can

25   walk out what the Bible tells you to do, because then

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 40

1      everything else falls into place.  So that's kind of a very

2      tight summary of how I would try to answer your question.

3          Q.   Thank you.  I'll -- I'll try to ask a -- a few

4      more narrow ones, but I -- I kind of just wanted an overview

5      of -- of what you thought regarding those biblical

6      principles, so -- it's my understanding that Liberty

7      HealthShare specifically requests their members to maintain

8      a specific lifestyle, a Christian lifestyle.  Can you

9      describe what those beliefs are, in terms of what Liberty

10     HealthShare expects out of maintaining a Christian

11     lifestyle?

12         A.   Yeah.  Their -- their guidelines have the exact

13     wording.  They expect you to live a life that's free of sin,

14     if you will, being -- drugs, those types of things, that

15     they're not -- they don't consider that and I don't consider

16     that a Christian lifestyle.  Being in community with

17     others -- generally, your faith.  I'm trying to narrow it

18     down again.

19             They have a list of specific things that you can

20     see when you sign up, and I haven't memorized the list,

21     because when I signed up, I knew that was how I lived and

22     chose to live my life, as it was.  So I don't have it

23     memorized as a motto in my life.  I just go back to living

24     the principles in the Bible, and as long as I feel confident

25     that I have been doing that, I feel confident being a member

Electronically signed by Veronica Byrd (401-065-732-9396)                da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 41

1    of Liberty HealthShare.

2        **(Attorney J. Michael Sharman joins Zoom depo.)**

3    Q.  Do you use any tobacco products?

4    **A.  No.**

5    Q.  Do you drink alcohol?

6    **A.  No.**

7    Q.  Do you try to exercise regularly?

8    **A.  Yes, I -- I do.**

9    Q.  Say with a five-week-old, that might be --

10   **A.  Right.**

11   Q.  -- other kiddos, might -- might be difficult.  Do

12   you have what you consider to be a healthy diet?

13   **A.  Yes.**

14   Q.  Do you believe that you have a spiritual duty to

15   maintain a healthy lifestyle?

16   **A.  I do.**

17   Q.  And can you explain a little bit more about what

18   that spiritual duty is?

19   **A.  So the Bible explains that our body is his**

20   **temple -- God's temple, that he can reside in us and through**

21   **us, and so if we decide to destroy the temple, that is an**

22   **unholy act.  And so according to the Bible, I believe it is**

23   **my duty to maintain my health and to be a witness to others.**

24   **If I'm trying to talk to other people, for example, about**

25   **gluttony, in the Bible, and I'm indulging on whatever I feel**

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 42

1    like -- I can't, very well, go and talk to them about gossip

2    either.  It's -- there's just -- there's a lot of stances

3    against hypocrisy in the Bible, and so you want to try your

4    best.  Obviously, we're all people.  And we're all human,

5    and we all fall and make mistakes.  But you want to try to

6    live your best, according to what the Bible says, and it

7    actually will allow you to live a healthier, happier life,

8    if you do it.

9        Q.   And do you also believe you have an ethical duty

10   to maintain a healthy lifestyle?

11       A.   Yes.  I mean, believe it goes with ethics and

12   morals.  I believe it's along the same lines as what I was

13   just talking about, so --

14       Q.   And where do you believe that your personal rights

15   and liberties come from?

16       A.   I believe, innately, they come from God, because

17   I'm a Christian, and I believe, also, our amazing country

18   has given us a foundation of pretty good liberties that we

19   are extremely blessed with here.

20       Q.   And do you believe that you have a biblical and

21   ethical obligation to assist your fellow man when in need?

22       A.   Yes.

23       Q.   And can you describe to me how you fulfill that

24   belief?

25       A.   Ooh, as an example or as a rule?

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 43

1    Q.   Whatever you think might -- might help answer that

2    question.  I would say maybe start with, like, the rule,

3    like you said, and then maybe if you do have an example, you

4    can provide that as well.

5    **A.   Okay.  So the rule, for me, goes back to how Jesus**

6    **lived and how he served and how he healed the blind and --**

7    **you know, people who couldn't walk and -- the -- the**

8    **lowliest and neediest, he was there with, and helping.  So I**

9    **think that's the general rule for Christians.  And then as**

10   **an example, I try to think of, like, what is going on in our**

11   **nation right now, with all of the natural disasters and -- I**

12   **don't want to cry on here.**

13   **Being able to either donate financially or**

14   **physically go to help dig somebody out of the rubble,**

15   **whether they are a Christian or not.  You said -- I think**

16   **you referred to the Christian community specifically, but**

17   **Jesus didn't just serve the Christians.  He hung out -- his**

18   **closest friends were his disciples and other believers, but**

19   **he was everywhere.  And so I think -- I think that, as an**

20   **example, it's -- it's worshiping with other believers,**

21   **eating with other believers, hanging out, building each**

22   **other up, but going out and doing what you're learning to --**

23   **with the people around you.**

24   **But if there are believers -- for instance, in my**

25   **very own little family, if -- if my son has a -- a scrape on**

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 44

1    his leg, I'm going to go get everything I can to help him

2    recover quickly and be at peace and -- you know, not freaked

3    out about whatever happened, and so -- I think that's just a

4    very small example of -- of what you were trying to ask.

5        Q.   Do you need to take a short break?

6        A.   I think I'll be okay.  I think --

7        Q.   Okay.

8        A.   -- I'm composed now.

9            (Court reporter clarification requested.)

10       Q.   Okay.  Are you familiar with the January 20th,

11   2023, OSI hearing officer's recommended decision to the

12   Superintendent of Insurance in relation to Gospel Light?

13       A.   Was it the -- I mean, that was in -- the start of

14   all of what's going on here, so I'm generally familiar with

15   it.

16       Q.   Okay.  And just to present to you, there's --

17   there's a recommended decision from the hearing officer

18   that -- that was recommended to the Superintendent, and then

19   there's the Superintendent's final order.  And you're

20   correct that it stems from the appeal of that final order.

21   So what I want to know is if -- if you can provide your

22   understanding of the recommended decision and the final

23   order, and -- and kind of what that did.

24       A.   My understanding of it was cease and desist, like

25   don't operate anymore in New Mexico.  That was the general

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 45

1    understanding of what -- I knew, what was happening.

2         Q.   And what is your understanding of how those

3    decisions have interfered with your religious activity?

4         A.   To not be able to be involved -- I mean,

5    currently, I still am a member of Liberty HealthShare, but

6    to take that choice away, of being able to help out my

7    community of other believers, financially, even taking away

8    some of that prayer network that's on there, and the

9    connection that's more global.  I mean, I think that's one

10   of the impacts.  There's a lot of -- a lot of different

11   things, but religiously, that would be more the angle.  I'm

12   sorry if I went off track.

13        Q.   No.  That's okay.  But you're still paying a

14   monthly share amount; is that correct?

15        A.   That's correct.

16        Q.   And so your contribution is still allowing other

17   members to have their medical costs shared; isn't that

18   correct?

19        A.   That's correct.

20        Q.   Okay.  And when you say that it's affecting being

21   able to help -- or -- or that prayer element, how have these

22   decisions affected that?

23        A.   Currently, because everything is in limbo --

24   things are still operating, but it's -- for me, personally,

25   it would cut off that particular network, if we're talking

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 46

1    about on the religious end, the prayer, and being able to

2    share with the others in that community that is the Liberty

3    HealthShare community, that we've already established a

4    commitment, if you will, to each other and -- within Liberty

5    HealthShare.  So that would cut me out of that.

6        Q.   And do you believe that the decisions have

7    attempted to influence or modify your personal religious

8    beliefs?

9        A.   My personal religious beliefs will not change,

10   despite whatever happens.  The way that I walk them out will

11   be impacted based on things around me, but my beliefs will

12   not be impacted.

13       Q.   And do you believe that you're being treated

14   differently than others by the OSI because of your

15   membership in Gospel Light?

16       A.   It feels a little bit personal because I'm a

17   member in New Mexico.  It does feel a little bit personal to

18   me, but I -- I don't see -- I guess I'm trying to -- I'm

19   trying to word this for you.  I do feel like I am treated

20   differently, in a negative way.  I don't know why I, being a

21   member -- so Liberty HealthShare would be singled out and

22   told to stop doing what their doing.  It does feel personal

23   to me, and I know it's not just me.  I know there's many

24   other members in New Mexico, so -- but for me, yeah, it

25   feels like I'm treated differently.

Electronically signed by Veronica Byrd (401-065-732-9396)                                   da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 47

1     Q.   And I know you've touched on this a little bit,

2   but do you believe because of these decisions by the

3   Superintendent, you have been restricted from interacting

4   with others who share your same religious beliefs?

5     **A.   No.  I don't think that there is a -- a -- a**

6   **restriction on interactions.  I think, like I said, the way**

7   **that we walk out our faith and different elements of what we**

8   **can do, our -- our reach -- our spectrum of -- of being able**

9   **to walk out our faith within the networks of Liberty**

10  **HealthShare, which is much broader than my neighborhood.  I**

11  **think that's what's mostly impacted.  I don't think that**

12  **they can -- I don't think that it will change on a personal**

13  **level, because everybody can -- at least in this country, we**

14  **can still walk out our beliefs.**

15    Q.   And so regardless of these decisions, you're going

16  to continue to go to your local church that's on the

17  outskirts of El Paso, continue prayer, and whatever else are

18  with -- aligned with your beliefs; is that correct?

19    **A.   Yes.**

20    Q.   From what you know about the -- the decisions and

21  the OSI's actions, do you believe that there has been

22  hostility from OSI towards members of Gospel Light?

23    **A.   I don't believe there was hostility.  Just because**

24  **I've been on the stand, I felt a little bit more involved, I**

25  **think, than other members, possibly, but I don't think it's**

Electronically signed by Veronica Byrd (401-065-732-9396)                     da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 48

1    been hostile.  Maybe just the -- the type of determining

2    they're trying to do -- the type of decision they're making

3    feels a little bit hostile, because it feels like something

4    is being taken, and that is an invasion, in my sense, you

5    know, so I think in that sense -- but on a personal level,

6    to people, I don't think it's hostile.

7        Q.   And based on that, kind of, same line that you --

8    that you just spoke about, do you believe that these

9    decisions made by OSI and the Superintendent have violated

10   your religious beliefs?

11       A.   Yes.

12       Q.   And why do you think that?

13       A.   Because I believe -- religious belief or religious

14   rights, I guess?  Which one?

15       Q.   Well, religious beliefs is what I was asking.

16       A.   Okay.  Their decision -- I've said it before.

17   Their decision does not impact my religious beliefs, my

18   internal beliefs.  There, I believe, is a difference between

19   some rights that we have and the beliefs that are internal,

20   and so their decision has not impacted -- or will not impact

21   my beliefs.

22       Q.   And do you think those decisions made by the

23   Superintendent and OSI have restricted your speech in any

24   way?

25       A.   I don't think they've restricted my speech.

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 49

1    Q.   Have you personally seen or heard about any press

2    releases from OSI regarding Gospel Light?

3    **A.   I have not personally seen them.**

4    Q.   Nor heard about them?

5    **A.   Nor heard.**

6    Q.   Okay.  From what you do know about this case, do

7    you think that the actions of OSI and the Superintendent are

8    a public campaign against Gospel Light and other

9    healthcare-sharing ministries?

10    **A.   Can you phrase that a little bit differently?**

11    Q.   Yeah.  So what I'm trying to ask is kind of --

12    based on your knowledge -- you know, I -- I kind of asked

13    with the hostility question too -- I mean, is it your

14    opinion that OSI are targeting healthcare-sharing

15    ministries, or Gospel Light, specifically?

16    **A.   In my opinion, yes.**

17    Q.   Okay.  And why do you think that?

18    **A.   Because of the policies, I've understood, that**

19    **New Mexico has with health insurance and the way that I've**

20    **heard of their disagreement and cancellation of another**

21    **healthshare, which I don't know the name, and Liberty**

22    **HealthShare.**

23         **(Court reporter clarification requested.)**

24         THE WITNESS:  Yes.

25    Q.   (BY MS. HERRERA)  Do you think that OSI shows a

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 50

1    preference towards any religious denomination?

2        A.  No.

3        Q.  Okay.  So -- lastly, I just want to go back to a

4    couple things that you testified to before.  I think at the

5    very beginning, when you were talking about joining Liberty,

6    you had stated that they were kind of aligned with your

7    beliefs regarding, like, family, maternity, and just your

8    beliefs in general.  Can you give me a little bit more

9    information about those particular things that drew you to

10   joining a healthcare-sharing ministry?

11       **A.  Yeah.  So I was having a lot of difficulty finding**

12   **insurance, if you will, when I was on the search, that would**

13   **cover and go through the whole maternity, labor and**

14   **delivery, and so as far as family and maternity, those were**

15   **big elements that my husband and I were juggling.  It's been**

16   **more and more challenging to find providers that will work**

17   **outside of the borders of New Mexico, since we do not**

18   **only -- we're not in New Mexico very often.**

19       **We live here and we do everything in El Paso, or**

20   **we visit in Michigan or we -- and so finding providers and**

21   **finding insurance or somebody who would work with us outside**

22   **of the New Mexico borders became more difficult, with the**

23   **things and policies happening in New Mexico.  So**

24   **healthshare, one, was one of the things that were definitely**

25   **going to be able to help us, no matter where we were, and**

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 51

1     then religious beliefwise, there's a lot of things going on

2     that we just don't -- and I personally do not believe in.

3          I don't believe in abortion.  I don't believe in

4     different surgeries that they're performing on children, and

5     I don't want to support that.  It's -- it's against my

6     religious belief, and so if -- I feel like contributing to

7     other insurance agencies or programs that are doing those

8     things, I feel like part of my money is going to support

9     that, and it -- it does not feel right to me.  And so that's

10    another element that drew us into Liberty HealthShare.

11         Q.   Okay.  And I know you just touched on this a

12    little bit, but I just want to clarify.  Is it your opinion

13    that your contribution to paying, like, a regular health

14    insurance -- or let me not phrase it "regular health

15    insurance" -- but a plan that was outside of a

16    healthcare-sharing ministry, then that money would be going

17    towards particular -- I guess medical procedures that you

18    don't agree with?

19         A.   My understanding is that some of it is allocated

20    for things like that, or even advertising.  I had [sic]

21    gotten pamphlets in the mail, in my past, from different

22    medical insurance -- I don't know what you want to call

23    it -- insurance or providing services for people,

24    advertising for things I just did not believe in, whether it

25    was abortion options or -- actually, at the time, that would

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 52

1    **probably have been the main advertisements that I had gotten**

2    **that really checked at me, and I did not like it.**

3        **(Court reporter clarification requested.)**

4        THE WITNESS:  They -- they kind of checked my

5    internal being.  Yeah, they checked me.

6        Q.  (BY MS. HERRERA)  Are there healthcare providers

7    or clinics located in Santa Teresa?

8        **A.  There are.**

9        Q.  And is there a reason that you wouldn't be able to

10   seek care from those providers, as opposed to going out of

11   state to receive care?

12       **A.  I believe, like anybody trying to choose what's**

13   **best for their family, you could go anywhere.  You could**

14   **pick the nearest emergency room or hospital, but if you know**

15   **history or other people who have been there, you choose**

16   **what's best according to your best knowledge.  And so from**

17   **what I have seen and heard and talked to other people about,**

18   **the best options were in El Paso, aside from my midwife.**

19   **She lives in Santa Teresa.**

20       Q.  I think that's going to be all the questions I

21   have right now.

22       MS. HERRERA:  Carter, did you have any follow-up

23   questions?

24       MR. HARRISON:  I do not.

25       MS. HERRERA:  Okay.  If you-all don't mind, I'd

Electronically signed by Veronica Byrd (401-065-732-9396)                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 53

1    just like to take a five-minute break to review my notes,

2    and then we can come back on if I have a couple questions.

3    Otherwise, we should be done.

4         MR. HARRISON:  Okay.  Sounds good.

5         THE VIDEOGRAPHER:  We're going off the record.

6    The time is 10:42.

7         (Brief recess taken - 10:42 a.m. to 10:47 a.m.)

8         THE VIDEOGRAPHER:  Okay.  We are going back on the

9    record.  The time is 10:47.

10        Q.   (BY MS. HERRERA)  Okay.  Ms. Renteria, I just have

11   a -- a couple more follow-up questions.  I think, earlier,

12   you had testified to -- saying that the last time you

13   submitted medical paperwork for sharing, you believed, was

14   January 2023, when your third child was born; is that right?

15   **A.   Correct.**

16        Q.   Okay.  And I believe you said your husband

17   probably hasn't shared any -- or asked for his medical

18   expenses to be shared.  Have you sought medical-expense

19   sharing for your children since January 2023?

20   **A.   Not through Liberty HealthShare.**

21        Q.   Okay.  Have you been instructed by Liberty

22   HealthShare to not submit any medical expenses to be shared?

23   **A.   No.**

24        Q.   Okay.  So if you did have a medical expense now,

25   through your single plan, you could submit that expense to

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 54

1    be shared through Liberty HealthShare?  Is that your

2    understanding?

3        **A.  Yes.**

4        Q.   Okay.  That are -- those are all the questions

5    that I have, so -- not too long.  I -- unless Carter has any

6    follow up, then I think we should be through for today.

7            MR. HARRISON:  No.  I think we're good to go.

8            (Court reporter inquires as to read and sign.)

9            MS. HERRERA:  Yes.

10           MR. HARRISON:  Yes, please.

11           (Court reporter inquires as to transcript order.)

12           MR. HARRISON:  E-Tran for us.

13           MS. HERRERA:  That works for OSI as well.

14           THE VIDEOGRAPHER:  And video orders, please.

15           MS. HERRERA:  I'm sorry.  Typically -- what --

16    what's typical practice?

17           THE VIDEOGRAPHER:  It depends on your firm.  Most

18    people do an MPEG-4.

19           MS. HERRERA:  Okay.  We'll take that.

20           THE VIDEOGRAPHER:  Okay.

21           (Court reporter clarification requested.)

22           THE VIDEOGRAPHER:  A MPEG-4.

23           Mr. Harrison, did you want a copy of the video?

24           MR. HARRISON:  Yes, please, and the same format

25    works.

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 55

1          THE VIDEOGRAPHER:  Okay.

2          This concludes the deposition of Breanna Renteria.

3     We're going off the record.  The time is 10:50.

4          (The proceeding concluded at 10:50 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Veronica Byrd (401-065-732-9396)                                    da8b34ec-e7fc-44ea-a922-1415dad2a6bf

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 56

1    GOSPEL LIGHT MENNONITE, et al. vs. NEW MEXICO OSI, et al.

2          DEPONENT SIGNATURE/CORRECTION PAGE

3       If there are any typographical errors to your
       deposition, indicate them below:

4

5    PAGE  LINE

6    _____    Change to _____

7    _____    Change to _____

8    _____    Change to _____

9    _____    Change to _____

10      Any other changes to your deposition are to be listed
       below with a statement as to the reason for such change.

11

12    PAGE  LINE  CORRECTION          REASON FOR CHANGE

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19

20       I, BREANNA RENTERIA, do hereby certify that I have read
       the foregoing pages of my testimony as transcribed and that

21    the same is a true and correct transcript of the testimony
       given by me in this deposition on October 9, 2024, except

22    for the changes made.

23

24    _____    _____

      Date signed              BREANNA RENTERIA

25

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 57

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

     Plaintiffs,

vs.          No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

     Defendants.


          REPORTER'S CERTIFICATE

     I, VERONICA E. BYRD, CCR, RPR, DO HEREBY CERTIFY that

on October 9, 2024, the Deposition of BREANNA RENTERIA was

taken before me at the request of, and sealed original

thereof retained by:

     Alyssa Nicole Herrera, Esq.
     OFFICE OF THE SUPERINTENDENT OF INSURANCE
     6200 Uptown Boulevard NE, Suite 400
     Albuquerque, New Mexico 87110-4161
     (505) 383-0800
     alyssa.herrera@osi.nm.gov

     I FURTHER CERTIFY that copies of this Certificate have

been mailed or delivered to all Counsel, and parties to the

proceedings not represented by counsel, appearing at the

taking of the deposition.

Gospel Light Mennonite Church, et al. v. New Mexico Office of the Superintendent, et al.
Breanna Renteria

October 9, 2024
No. 1:23-cv-00276 MLG-KK

Page 58

1       I FURTHER CERTIFY that examination of this transcript

2    and signature of the witness was REQUESTED by the witness

3    and all parties present.  On _____, a letter was

4    mailed or delivered to CARTER B. HARRISON, IV, ESQ.,

5    regarding obtaining signature of the witness, and any

6    corrections, if any, were appended to the original and each

7    copy of the Deposition.

8       I FURTHER CERTIFY that the recoverable cost of the

9    original and one copy of the Deposition, including exhibits,

10   to ALYSSA NICOLE HERRERA, ESQ., is $_____.

11       I FURTHER CERTIFY that I did administer the oath to the

12   witness herein prior to the taking of this Deposition; that

13   I did thereafter report in stenographic shorthand the

14   questions and answers set forth herein, and the foregoing is

15   a true and correct transcript of the proceeding had upon the

16   taking of this Deposition to the best of my ability.

17       I FURTHER CERTIFY that I am neither employed by nor

18   related to nor contracted with (unless excepted by the

19   rules) any of the parties or attorneys in this case, and

20   that I have no interest whatsoever in the final disposition

21   of this case in any court.

22

23   _____

       VERONICA E. BYRD, CCR, RPR

24   New Mexico CCR #36

       License Expires: 12/31/24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID
PLAN, d/b/a LIBERTY HEALTHSHARE, BREANNA
RENTERIA, LAURA SMITH, and TAMMY WATERS,

    Plaintiffs,

    vs.        No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE SUPERINTENDENT OF
INSURANCE, and ALICE T. KANE, Superintendent
of Insurance in her official capacity,

    Defendants.

VTC DEPOSITION OF LAURA SMITH
November 12, 2024
9:28 a.m.

PURSUANT TO NOTICE AND AGREEMENT, the
Video Teleconference Deposition of Laura Smith was
taken virtually per stipulation of all parties.

TAKEN BY:    MR. STEPHEN P. THIES
        Attorney for Defendants

REPORTED BY:  Susan M. Hilton, CRR, NM CCR 108
        Bean & Associates, Inc.
        Professional Court Reporting Service
        201 Third Street, NW, Suite 1630
        Albuquerque, New Mexico 87102

## Exhibit B

(9994N) SMH

2

1         A P P E A R A N C E S
2  For the Plaintiffs:
3      HARRISON & HART, LLC
       924 Park Avenue, Southwest, Suite E
4      Albuquerque, New Mexico 87102
       BY: MR. NICHOLAS T. HART (VIA ZOOM)
5          MR. CARTER B. HARRISON, IV (VIA ZOOM)
       nick@harrisonhartlaw.com
6      carter@harrisonhartlaw.com
7  For the Defendants:
8      OFFICE OF SUPERINTENDENT OF INSURANCE
       1120 Paseo de Peralta
9      Santa Fe, New Mexico 87501-2747
       BY: MR. STEPHEN P. THIES (VIA ZOOM)
10     stephen.thies@osi.nm.gov
11         I N D E X
12  EXAMINATION OF LAURA SMITH
13  By Mr. Thies                          3
14  REPORTER'S CERTIFICATE                25
15  WITNESS SIGNATURE/CORRECTION PAGE     27
16         (No exhibits were marked.)
17
18
19
20
21
22
23
24
25

3

1              LAURA SMITH,
2      after having been first duly sworn under oath,
3      was questioned, and testified as follows:
4                 EXAMINATION
5  BY MR. THIES:
6      Q.  Okay.  Good morning, Ms. Smith.  My name is
7  Stephen Thies.  I'm an attorney with the Office of
8  Superintendent of Insurance, and I represent both the
9  Office of Superintendent of Insurance and the
10 Superintendent of Insurance, Alice T. Kane, in this
11 matter.  I'm going to be asking you some questions
12 today.
13         To start out, I'd ask that you please state
14 your name and spell it for the court reporter.
15     A.  Laura Smith, L-a-u-r-a, S-m-i-t-h.
16     Q.  Have you ever had your deposition taken
17 before?
18     A.  Yes.
19     Q.  And when?
20     A.  I think it was probably two years ago, and
21 it was similar to this for the Liberty HealthShare
22 attorneys.
23     Q.  And that was a different lawsuit?
24     A.  Yes.
25     Q.  Was that a state or a federal court case,

4

1  do you know?
2      A.  I believe it was state.
3      Q.  Okay.  Were you a Plaintiff or a Defendant
4  in that proceeding?
5      A.  Defendant, I believe.  I'm not sure.
6      Q.  Okay.  That wasn't the Administrative
7  Proceeding before the Superintendent of Insurance,
8  was it?
9      A.  I don't think so.
10     Q.  Okay.  I would like to describe some ground
11 rules that are going to apply in this morning's
12 deposition.  And as you're aware, you were put under
13 oath, and so all your questions are answered under
14 oath.  And the court reporter will be transcribing
15 and recording everything you say.  So that's -- it's
16 hard when you don't answer with a verbal answer or
17 just say "uh-huh" or something like that, nod your
18 head or anything -- any physical movements, she can't
19 record that.  So make sure all your answers are very
20 clear and precise.
21         Also, let's try and avoid talking over one
22 another.  It's extremely difficult for the court
23 reporter to transcribe what is being said when two
24 people are talking at one time.  And so let me finish
25 my questions before you start answering, and I'll

5

1  give you the same courtesy and allow you to finish
2  your answer before I have a follow-up question.
3         Now, if I ask you any question that you
4  don't quite understand, feel free to ask me to
5  rephrase my question.  I'll just rephrase it so you
6  can understand what I'm asking you.  I don't think
7  it's going to take very long this morning, maybe a
8  couple hours, if that.  If you need a break at any
9  time, feel free to say I need a few minutes just to
10 go to the bathroom, get something to drink, catch
11 your breath, whatever.  But I will do or commit to
12 stopping every hour, if you want, just so everyone
13 involved can get a break.  Court reporters are
14 feverishly typing away, and she may need to give her
15 hands a little break.
16         Now is there anything today that would
17 impair your ability to answer the questions that I'm
18 going to be asking you honestly and truthfully?
19     A.  No.
20     Q.  Have you taken any over-the-counter
21 medications in the last 24 hours?
22     A.  No.
23     Q.  Have you taken any prescription medication
24 in the last 24 hours?
25     A.  Yes.

6

1    Q.  Is it any type of prescription that would
2  affect your ability to testify today?
3    A.  No.
4    Q.  Have you consumed any nonprescription drugs
5  in the last 24 hours?
6    A.  No.
7    Q.  And have you consumed any alcohol in the
8  last 24 hours?
9    A.  No.
10    Q.  How did you prepare for the deposition
11  today?
12    A.  I didn't prepare.  I didn't do anything.
13    Q.  You didn't review any of the documents?
14    A.  No.
15    Q.  Did you meet with your attorney?
16    A.  No.
17    Q.  Did you speak with anyone else other than
18  maybe your husband about the deposition?
19    A.  No.  Well, Trish, who's the one that sent
20  me the e-mail, I called her this morning and talked
21  to her about it.
22    Q.  Did you say anything --
23    A.  Just to tell her that my computer was
24  acting up, and I thought I might be late.  And I
25  asked her if -- I had understood that I was supposed

7

1  to have two one-hour meetings with the attorneys to
2  prepare, but we didn't ever do that.
3    Q.  Okay.  What's your date of birth?
4    A.  3-12-62.
5    Q.  And where were you born?
6    A.  In Safford, Arizona.
7    Q.  And you currently reside where?
8    A.  In Farmington, New Mexico.
9    Q.  And how long have you lived in Farmington?
10    A.  Let me see.  I guess 50 years.  I moved to
11  Farmington, married, raised the family, and then we
12  moved away for about 10 years.  And then in 2016, we
13  moved back.
14    Q.  When you moved away, you're saying you
15  moved out of the state of New Mexico?
16    A.  Yes.
17    Q.  And where did you move to?
18    A.  We moved to Conway, Arkansas, for seven
19  years, and then to Tunkhannock, Pennsylvania, for two
20  years, and then back to Conway, Arkansas, for another
21  year.
22    Q.  Okay.  And then you returned to New Mexico?
23    A.  Yes.
24    Q.  And that was approximately when?
25    A.  In 2016.

8

1    Q.  Okay.  Thank you.
2      What originally brought you to New Mexico?
3    A.  My aunt lived here, and my dad was
4  unemployed.  I was 12 years old when we moved here
5  looking for employment and being closer to family.
6    Q.  And there was someone you were talking with
7  earlier.  I assume that was your husband?
8    A.  Yes.
9    Q.  And how long have you been married?
10    A.  We've been married 46 years.
11    Q.  And do you have any children?
12    A.  Yes, I have three children.
13    Q.  And how old are your children?
14    A.  The oldest is 41, and then another son is
15  39, and the daughter's 36.
16    Q.  And did you graduate from Farmington High
17  School?
18    A.  I dropped out in my sophomore year and
19  pursued -- got my GED.
20    Q.  Okay.  Did you attend any college courses?
21    A.  I took some real estate courses and got my
22  realtors license, but I never worked.  I was raising
23  children, and I eventually let it go back.
24    Q.  Are you currently working?
25    A.  No.

9

1    Q.  When was the last time you did work?
2    A.  I guess it was 2006 before we moved away.
3    Q.  And where were you working then?
4    A.  I worked at CJ Banks.  My best friend was
5  the manager there, and I worked with her some, not a
6  lot.
7    Q.  When you were in Arkansas and Pennsylvania,
8  you weren't working?
9    A.  No.
10    Q.  When did you first join Liberty HealthShare
11  program?
12    A.  In February of 2017.
13    Q.  How did you hear about the program?
14    A.  My daughter came across it, and signed up
15  for it and was -- she was really liking it.  And when
16  we moved back in 2016, my husband was unemployed, so
17  we were on COBRA for a year.  And then they sent us
18  notices saying COBRA was -- our insurance was going
19  to be -- go up quite a bit.  And so at that time, we
20  started checking into Liberty and signed up.
21    Q.  Is your daughter still a member?
22    A.  No, she's not because her husband went to
23  work for Chevron, and their company insurance was
24  less expensive.  I do have a son that's on Liberty,
25  though.

10

1    Q. How long has he been a member of Liberty?
2    A. I would say probably three years.
3    Q. You mentioned or you offered that your
4 husband was on COBRA for a while. He was getting
5 health insurance through a prior employer?
6    A. Yes.
7    Q. And do you know who the company was that
8 was providing the insurance, not his employer but
9 like Presbyterian?
10    A. I think it was United Healthcare.
11    Q. And you were covered under his policy as
12 well?
13    A. Yes.
14    Q. And over all, how would you describe your
15 experience?
16    A. With United?
17    Q. Yes.
18    A. It was a good insurance, but it was very
19 expensive.
20    Q. Your husband's prior employer, did they pay
21 a portion of the premium, or did your husband have to
22 pay the entire premium with them?
23    A. When he was employed with them, they paid
24 part of it, but when they laid him off, we had to pay
25 all of it.

11

1    Q. What did you dislike about United Health
2 coverage?
3    A. The cost and a high deductible.
4    Q. How much was your deductible?
5    A. I think it was around 5,000.
6    Q. So you had to pay the first five grand out
7 of your pocket before they would start paying?
8    A. I believe so.
9    Q. And other than the cost of continuing
10 coverage under COBRA, what made you join the Liberty
11 program?
12    A. I liked the idea of it being a Christian
13 ministry, and I liked the idea of them investing in
14 things I believed in.
15    Q. And ever since you became a member, you
16 make a monthly share on that, a payment?
17    A. I do.
18    Q. Do you know what the purpose of that
19 monthly share payment is?
20    A. Well, it goes into the pot to help share
21 with other people's bills.
22    Q. And when was the last time you made a
23 monthly share payment?
24    A. The 1st of November.
25    Q. Since becoming a member, let's say, in

12

1 2017, have you ever submitted any medical bills to
2 the program to have shared?
3    A. Yes.
4    Q. Do you know how many times you've submitted
5 medical expenses to have paid?
6    A. A lot.
7    Q. When was the last time you submitted some
8 medical expenses to be paid?
9    A. I had rotator cuff repair August 20.
10    Q. And has that -- those expenses been paid?
11    A. No, but they will be. I'm just waiting.
12 It takes a little while.
13    Q. What's the process for you once you request
14 medical expenses to be paid or reimbursed? What's
15 the process that you go through?
16    A. Well, they're different. Some of them will
17 submit them for you, and some of them don't. And so
18 they run you through as a cash patient, and they gave
19 us a discount for the cash payment, and then I submit
20 it myself into the share box.
21    Q. When you say "they," you're talking about
22 like the doctor's office or --
23    A. Yes.
24    Q. -- some medical facility?
25    A. Yes. But I've been doing physical therapy,

13

1 and they submit it for me so it just depends on the
2 provider.
3    Q. Okay. Do you know how a decision is made
4 at the Liberty level, the higher up level, whether or
5 not to pay a member's medical expenses?
6    A. Well, I think they pay it unless it has to
7 be fair and reasonable. Some of them overprice, and
8 so they adjust the amount. And if you have met your
9 unshared amount, then they pay it.
10    Q. What's your current unshared amount?
11    A. 1750.
12    Q. That's just for you or for you and your
13 husband combined?
14    A. Me and my husband combined per year.
15    Q. Have you ever participated in a decision
16 whether or not to pay another member's medical
17 expenses?
18    A. No.
19    Q. Has your husband ever had any of his
20 medical expenses paid by the program?
21    A. Yes.
22    Q. Do you know how many times?
23    A. No, I can't tell you how many times, but
24 quite a few. Not as many as I have had.
25    Q. When other members submit medical bills to

14

1  be shared, do you get notice of that?
2      A.  No, I don't.
3      Q.  Do you ever -- are you ever notified about
4  what type of medical -- or what type of medical
5  issues this person is having, and that's why they are
6  requesting expenses to be shared?
7      A.  No, I don't know anything about the other
8  members.
9      Q.  Now, do you currently have any religious
10  affiliations?
11     A.  We attend Hills Church here in Farmington.
12  It's a non-denominational.
13     Q.  How long have you been attending that
14  church?
15     A.  Probably, I'd say, seven or eight years.
16     Q.  Since you moved back in 2016 or 2017?
17     A.  We went to a different one.  We used to
18  attend Sagebrush for just a short time, and then we
19  moved over to Hills Church.
20     Q.  Is Sagebrush a non-denominational church?
21     A.  Yes.
22     Q.  Before you moved to Arkansas and then
23  Pennsylvania, were you a member of a church in New
24  Mexico at that time?
25     A.  Yes, we attended First Baptist Church of

15

1  Farmington.
2      Q.  Is that the faith that you were raised in,
3  First Baptist?
4      A.  No, I was raised in the Mormon Church.  My
5  husband was raised in the Catholic Church, and so we
6  ended up in a Baptist Church.
7      Q.  Okay.  When you moved to Arkansas, did you
8  attend any church services?
9      A.  We did.  It was called New Life.  It was
10  non-denominational.
11     Q.  Okay.  What about in Pennsylvania?
12     A.  We did.  It was just a short time that we
13  lived there.  We hopped around trying to find a
14  church home and never really fit in anywhere, so
15  never really joined any church there.
16     Q.  Do you regularly attend services at Hills?
17     A.  Yes.
18     Q.  Weekly, twice a week?
19     A.  No, weekly.
20     Q.  Okay.  And what other religious activities
21  do you regularly participate at through your Hills
22  membership?
23     A.  We attend some of the special things they
24  put on.  They'll have big fall festivals and just
25  different things.  Sometimes women's conferences or

16

1  concerts.
2      Q.  Do you participate in any Bible study
3  group?
4      A.  We have in the past.  We're not currently
5  in any Bible study classes right at the moment, but
6  we have before.
7      Q.  How long ago did you participate?
8      A.  Maybe three, four years ago.
9      Q.  What about prayer groups, do you
10  participate in any prayer groups?
11     A.  No, not -- no.
12     Q.  What would you describe is the Biblical
13  principles that guide your way of life?
14     A.  We follow the Bible inside and out.
15     Q.  Do you use tobacco?
16     A.  No.
17     Q.  Do you drink?
18     A.  Some.
19     Q.  Casual drinker?
20     A.  Yes.
21     Q.  Do you try to exercise on a regular basis?
22     A.  Yes.  I have a stationary bike that I like
23  to ride.
24     Q.  Do you consume what you would consider to
25  be a healthy diet?

17

1      A.  Yes.
2      Q.  Do you think that you have a spiritual duty
3  to maintain a healthy lifestyle?
4      A.  Yes.
5      Q.  Can you describe that spiritual duty for
6  me?
7      A.  I feel like -- well, it says in the Bible
8  that this is our temple and to take care of it,
9  and --
10     Q.  Do you believe you have an ethical duty to
11  maintain a healthy lifestyle?
12     A.  Yes.
13     Q.  Can you describe that ethical duty for me?
14     A.  Well, just to avoid alcohol and tobacco and
15  becoming obese, and --
16     Q.  Gospel Light requires their members to
17  endorse five Christian beliefs.  Can you describe
18  those five beliefs for me?
19     A.  No, I don't.
20     Q.  Where do you believe your personal rights
21  and liberties originate from?
22     A.  From our founding fathers.
23     Q.  Do you believe you have a Biblical or
24  ethical obligation to assist your fellow man when
25  that person's in need?

18

1  A.  Yes.
2  Q.  And why?
3  A.  It's just the right thing to do.
4  Q.  And can you describe how you fulfill that
5  belief?
6  A.  When we see someone in need, we help as
7  much as we can.
8  Q.  Were you familiar with the January 2023
9  Hearing Officer's Recommended Decision?
10  A.  No.
11  Q.  Do you have an understanding what was in
12  that Recommended Decision?
13  A.  No.
14  Q.  Are you familiar with the February 22,
15  2023, Interim Superintendent's Final Decision?
16  A.  Is that the one where they wanted to get
17  rid of our health share?
18  Q.  Well, can you describe what you mean by
19  that?
20  A.  Well, the way I understand it, they don't
21  want us to be able to -- us as New Mexicans to be
22  able to participate in the healthshare.  They want to
23  force us to go to conventional insurance.
24  Q.  And why do you believe they want you -- the
25  OSI, Office of Superintendent of Insurance, wants you

19

1  to go to conventional health insurance?
2  A.  Well, I think they -- I think it's probably
3  about money.
4  Q.  And what do you mean it's about money?
5  A.  Well, if all of the members of Liberty go
6  to conventional insurance, then they'll make more
7  money.
8  Q.  When you say "they," are you referencing
9  the conventional insurance companies?
10  A.  Yes.  I believe we should have the right to
11  use whatever company we want.
12  Q.  Can you describe for me how those
13  decisions, the Recommended Decision and the Final
14  Decision of the Interim Superintendent interfered
15  with your religious beliefs?
16  A.  Yeah.  I believe that we should have the
17  right to use whoever we want.  And I like that
18  Liberty is a religious institution, and they won't be
19  investing in things that we don't believe in.
20  Q.  What do you mean by investing in things you
21  don't believe in?
22  A.  Well, like paying for transgender
23  operations.
24  Q.  Any other examples?
25  A.  There's a lot of them out there, but they

20

1  just stick to what the Bible says.
2  Q.  Are you aware of anyone that you know of
3  that has health insurance through the normal
4  commercial market that has been required to pay for
5  transgender care or treatment?
6  A.  No, I don't believe that they advertise it
7  and tell us.  We just don't know what they're
8  investing in.
9  Q.  Have you ever explored in the last couple
10  of years any other type of health insurance coverage?
11  A.  No.  I'm happy with Liberty.
12  Q.  Are you familiar with the Complaint, the
13  legal Complaint that was filed with Federal Court in
14  this matter?
15  A.  No.
16  Q.  Do you have an understanding of what's
17  alleged in that Complaint?
18  A.  No.
19  Q.  Now, do you believe that you are being
20  treated differently by the Office of the
21  Superintendent because of your membership in Gospel
22  Light?
23  A.  Well, by them trying to take it away from
24  us, I feel like that's different treatment, and I
25  don't think it's right.

21

1  Q.  So it's an attempt by the Office of
2  Superintendent of Insurance to take -- strike that.
3  So do you have any specific example of how
4  you're being treated differently?
5  A.  No.
6  Q.  Has anyone from the Office of
7  Superintendent ever reached out to you and told you
8  that you can't become -- be a member of this
9  organization, this program?
10  A.  No.
11  Q.  Do you believe that any of the decisions or
12  the Hearing Officer's Recommended Decision and the
13  Interim Superintendent's Final Decision restricted
14  you from interacting with others who share your same
15  religious beliefs?
16  A.  No, not -- no.
17  Q.  And how do you think these decisions
18  violated your religious belief?
19  A.  Well, I think we should be able to use
20  whatever healthshare or insurance we choose, and I
21  don't they should be able to tell us who we can
22  and can't use.
23  Q.  Do you believe that the decisions, the
24  Hearing Officer's Recommended Decision and the
25  Superintendent -- Interim Superintendent's Final

22

1  Decision, restrict your speech in any manner?
2      **A.   No.**
3      Q.   Do you believe that the actions of the
4  Office of Superintendent Insurance exhibit hostility
5  towards the members of Gospel Light?
6      **A.   Well, if they make a law that we can't be a**
7  **part of Liberty, yes, but I'm hoping that won't**
8  **happen.**
9      Q.   Are you aware of any effort to pass any of
10  those type of laws?
11      **A.   No, but I feel like a lot of times we don't**
12  **even know what's in the works until it's done, and**
13  **then it's too late to reverse it.**
14      Q.   Have you personally seen or heard any press
15  releases issued by the Office of Superintendent of
16  Insurance regarding Gospel Light?
17      **A.   No.  Like I said, usually we find out after**
18  **the fact and after it's done and put in place.**
19      Q.   And do you believe the actions of the
20  Superintendent -- Office of the Superintendent of
21  Insurance amount to a public campaign against Gospel
22  Light and other healthcare sharing ministries?
23      **A.   Yes, I guess so.**
24      Q.   Why?
25      **A.   Because they're trying to restrict us, and**

23

1  **I don't think it's right.**
2      Q.   And how are they trying to restrict you?
3      **A.   Not letting us be members of Liberty in**
4  **this state.**
5      Q.   Do you believe that the Office of
6  Superintendent of Insurance exhibits any preference
7  towards any particular religious denomination?
8      **A.   Well, I guess they just don't want to be to**
9  **affiliated with any of the Christian ministries.**
10      Q.   What about other religious organizations?
11      **A.   I'm not sure about that.**
12      MR. THIES:  All right.  That's all the
13  questions I have unless you have anything.
14      MR. HART:  I don't have any questions.  We
15  will read and sign, which means when the transcript
16  is ready, you have an opportunity to review it and
17  make any corrections, if there are any mistakes in
18  the transcript itself.
19      THE WITNESS:  I can't hear you very good.
20  I'm not sure if you're talking to me.
21      MR. THIES:  He's talking to us all.
22      THE WITNESS:  Okay.  Sorry.
23      MR. HART:  I'm sorry.  Can you guys hear
24  me?
25      MR. THIES:  Yeah, that's better.

24

1      MR. HART:  Sorry about that.  I don't have
2  any questions.  We will read and sign.
3      Ms. Smith, we'll be in contact with you
4  about what it means to do that; okay?
5      THE WITNESS:  Okay.
6      MR. THIES:  All right.  Well, thank you
7  very much, Ms. Smith.  Have a nice day.  Hopefully,
8  you're getting a lot of snow up there.
9      THE WITNESS:  No, we have beautiful, sunny
10  days today.  Thank you.
11      MR. THIES:  Thank you.
12      (The deposition concluded at 10:04 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

25

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW MEXICO
2
3  GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID
  PLAN, d/b/a LIBERTY HEALTHSHARE, BREANNA
4  RENTERIA, LAURA SMITH, and TAMMY WATERS,
5      Plaintiffs,
6      vs.       No. 1:23-cv-00276 MLG-KK
7  NEW MEXICO OFFICE OF THE SUPERINTENDENT OF
  INSURANCE, and ALICE T. KANE, Superintendent
8  of Insurance in her official capacity,
9      Defendants.
10      REPORTER'S CERTIFICATE
11      I, SUSAN M. HILTON, New Mexico CCR #108, DO
  HEREBY CERTIFY that on November 12, 2024, the VTC
12  Deposition of LAURA SMITH was taken before me at the
  request of, and sealed original thereof retained by:
13
14      Attorney for the Defendants
      Mr. Stephen P. Thies
15      Office of the Superintendent of Insurance
      1120 Paseo de Peralta
16      Santa Fe, New Mexico 87501-2747
17      I FURTHER CERTIFY that copies of this
  Certificate have been mailed or delivered to all
18  Counsel, and parties to the proceedings not
  represented by counsel, appearing at the taking of
19  the VTC Deposition.
20      I FURTHER CERTIFY that examination of this
  transcript and signature of the witness was required
21  by the witness and all parties present.  On _____
  a letter was mailed or delivered to Mr. Nicholas T.
22  Hart regarding obtaining signature of the witness,
  and corrections, if any, were appended to the
23  original and each copy of the VTC Deposition.
24
25

26

1       I FURTHER CERTIFY that the recoverable cost
of the original and one copy of the VTC Deposition,
2 including exhibits, to Mr. Stephen P. Thies is
$_____.
3
4       I FURTHER CERTIFY that I did administer the
oath to the witness herein prior to the taking of
5 this VTC Deposition; that I did thereafter report in
stenographic shorthand the questions and answers set
6 forth herein, and the foregoing is a true and correct
transcript of the proceeding had upon the taking of
7 this VTC Deposition to the best of my ability.
8       I FURTHER CERTIFY that I am neither
employed by nor related to nor contracted with
9 (unless excepted by the rules) any of the parties or
attorneys in this case, and that I have no interest
10 whatsoever in the final disposition of this case in
any court.
11
12
13          _____
         Susan M. Hilton
         BEAN & ASSOCIATES, INC.
14          NM Certified Court Reporter #108
         License Expires: 12/31/24
15
16
17
18
19
20
21
22
23
24 (9994N) SMH
   Date taken:  November 12, 2024
25 Proofread by:  PD

DATE DELIVERED:_____

Mr. Nicholas T. Hart
Harrison & Hart, LLC
924 Park Avenue, Southwest, Suite E
Albuquerque, New Mexico 87102
RE:  Gospel Light v. NM OSI, et al.
DEPOSITION OF:  LAURA SMITH
DATE TAKEN:  November 12, 2024
Dear Mr. Hart:
At the time of the above deposition, it was requested
that the witness read and sign her transcript.

_xxx_ Enclosed is your copy of the transcript with the
     original signature page.  Please ask the witness
     to read the transcript, make any corrections on
     the signature page, and return the original
     signature page to our Albuquerque office.

_____ Enclosed is your copy of the transcript.  Please
     read it, note any corrections on the signature
     page, and return the original signature page to
     our Albuquerque office.  You may keep the
     transcript for your files.

_____ The transcript is now ready to review.  Please
     contact our Albuquerque office, 505-843-9494, to
     make arrangements to have the transcript read
     and signed.  If you are outside the Albuquerque
     area, please call 800-669-9492.

_____ The transcript is now ready for review.  Please
     remit payment in the amount of $_____ to our
     Albuquerque office.  As soon as payment is
     received, your transcript will be delivered.  If
     you choose not to pay, please contact our
     Albuquerque office, 505-843-9494, to make
     arrangements for signature.

_____ Trial in this matter is set for _____.  If
     the transcript has not been read and signed
     before that date, the original will be filed
     without a signature.

---

27

1 Gospel Light v. NM OSI, et al.
2      WITNESS SIGNATURE/CORRECTION PAGE
3      If there are any typographical errors to
     your deposition, indicate them below:
4
5 PAGE  LINE
6 _____ Change to _____
7 _____ Change to _____
8 _____ Change to _____
9 _____ Change to _____
10      Any other changes to your deposition are to
     be listed below with a statement as to the
11      reason for such change.
12 PAGE  LINE  CORRECTION      REASON FOR CHANGE
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19      I, LAURA SMITH, do hereby certify that I
     have read the foregoing pages of my testimony as
20 transcribed and that the same is a true and correct
     transcript of the testimony given by me in this
21 deposition on November 12, 2024, except for the
     changes made.
22
23         _____
24          LAURA SMITH
25 9994N SMH PD

_xxx_ Other:  The transcript of this deposition is
     attached to the email.  Please also find
     attached the signature-correction page for
     your convenience.  Note any corrections on
     the signature-correction page and return the
     original page to our Albuquerque Office.

The New Mexico Rules of Civil Procedure provide the
witness 30 days in most instances from the receipt of
this letter to read and sign her transcript.  If she
has not read and signed the transcript in that time,
we will file the original transcript without the
signature page.

Sincerely,

BEAN & ASSOCIATES, INC.

JOB NO.:  9994N (SMH)

RECEIPT

JOB NUMBER:  9994N SMH November 12, 2024

WITNESS NAME:  LAURA SMITH

CASE CAPTION:  Gospel Light v. NM OSI, et al.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ATTORNEY:  MR. STEPHEN P. THIES

DOCUMENT:  Transcript / Exhibits / Disks / Other ____

DATE DELIVERED:  _____ DEL'D BY:  _____

REC'D BY:  _____  TIME:  _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ATTORNEY:  Mr. Nicholas T. Hart

DOCUMENT:  Transcript / Exhibits / Disks / Other ____

DATE DELIVERED:  _____ DEL'D BY:  _____

REC'D BY:  _____  TIME:  _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ATTORNEY:  ATTY3

DOCUMENT:  Transcript / Exhibits / Disks / Other ____

DATE DELIVERED:  _____ DEL'D BY:  _____

REC'D BY:  _____  TIME:  _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ATTORNEY:  ATTY4

DOCUMENT:  Transcript / Exhibits / Disks / Other ____

DATE DELIVERED:  _____ DEL'D BY:  _____

REC'D BY:  _____  TIME:  _____

25

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW MEXICO
2

3    GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID
     PLAN, d/b/a LIBERTY HEALTHSHARE, BREANNA
4    RENTERIA, LAURA SMITH, and TAMMY WATERS,

5              Plaintiffs,

6        vs.                    No. 1:23-cv-00276 MLG-KK

7    NEW MEXICO OFFICE OF THE SUPERINTENDENT OF
     INSURANCE, and ALICE T. KANE, Superintendent
8    of Insurance in her official capacity,

9              Defendants.

10                  REPORTER'S CERTIFICATE

11             I, SUSAN M. HILTON, New Mexico CCR #108, DO
     HEREBY CERTIFY that on November 12, 2024, the VTC
12   Deposition of LAURA SMITH was taken before me at the
     request of, and sealed original thereof retained by:
13

14             Attorney for the Defendants
               Mr. Stephen P. Thies
15             Office of the Superintendent of Insurance
               1120 Paseo de Peralta
16             Santa Fe, New Mexico 87501-2747

17             I FURTHER CERTIFY that copies of this
     Certificate have been mailed or delivered to all
18   Counsel, and parties to the proceedings not
     represented by counsel, appearing at the taking of
19   the VTC Deposition.

20             I FURTHER CERTIFY that examination of this
     transcript and signature of the witness was required
21   by the witness and all parties present.  On Dec. 16, 2024
     a letter was mailed or delivered to Mr. Nicholas T.
22   Hart regarding obtaining signature of the witness,
     and corrections, if any, were appended to the
23   original and each copy of the VTC Deposition.

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        I FURTHER CERTIFY that the recoverable cost of the original and one copy of the VTC Deposition,

2 including exhibits, to Mr. Stephen P. Thies is $_____.

3

4        I FURTHER CERTIFY that I did administer the oath to the witness herein prior to the taking of

5 this VTC Deposition; that I did thereafter report in stenographic shorthand the questions and answers set

6 forth herein, and the foregoing is a true and correct transcript of the proceeding had upon the taking of

7 this VTC Deposition to the best of my ability.

8        I FURTHER CERTIFY that I am neither employed by nor related to nor contracted with

9 (unless excepted by the rules) any of the parties or attorneys in this case, and that I have no interest

10 whatsoever in the final disposition of this case in any court.

11

12        *Susan M. Hilton*

13         Susan M. Hilton
        BEAN & ASSOCIATES, INC.

14         NM Certified Court Reporter #108
        License Expires: 12/31/24

15

16

17

18

19

20

21

22

23

24 (9994N) SMH
    Date taken: November 12, 2024

25 Proofread by: PD

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

**A**

**a.m** 1:13 24:12
**ability** 5:17 6:2 26:7
**able** 18:21,22 21:19,21
**acting** 6:24
**actions** 22:3,19
**activities** 15:20
**adjust** 13:8
**administer** 26:4
**Administrative** 4:6
**advertise** 20:6
**affect** 6:2
**affiliated** 23:9
**affiliations** 14:10
**ago** 3:20 16:7,8
**AGREEMENT** 1:15
**AID** 1:3 25:3
**al** 27:1 28:5 30:4
**Albuquerque** 1:22 2:4 28:4,11
    28:14,16,17,19,21 29:3
**alcohol** 6:7 17:14
**Alice** 1:7 3:10 25:7
**alleged** 20:17
**allow** 5:1
**amount** 13:8,9,10 22:21 28:19
**answer** 4:16,16 5:2,17
**answered** 4:13
**answering** 4:25
**answers** 4:19 26:5
**appearing** 25:18
**appended** 25:22
**apply** 4:11
**approximately** 7:24
**area** 28:17
**Arizona** 7:6
**Arkansas** 7:18,20 9:7 14:22 15:7
**arrangements** 28:16,21
**asked** 6:25
**asking** 3:11 5:6,18
**assist** 17:24
**Associates** 1:20 26:13 29:10
**assume** 8:7
**attached** 29:1,2
**attempt** 21:1
**attend** 8:20 14:11,18 15:8,16,23
**attended** 14:25
**attending** 14:13
**attorney** 1:18 3:7 6:15 25:14
    30:6,11,16,21

**attorneys** 3:22 7:1 26:9
**ATTY3** 30:16
**ATTY4** 30:21
**August** 12:9
**aunt** 8:3
**Avenue** 2:3 28:3
**avoid** 4:21 17:14
**aware** 4:12 20:2 22:9

**B**

**B** 2:5
**back** 7:13,20 8:23 9:16 14:16
**Banks** 9:4
**Baptist** 14:25 15:3,6
**basis** 16:21
**bathroom** 5:10
**Bean** 1:20 26:13 29:10
**beautiful** 24:9
**becoming** 11:25 17:15
**belief** 18:5 21:18
**beliefs** 17:17,18 19:15 21:15
**believe** 4:2,5 11:8 17:10,20,23
    18:24 19:10,16,19,21 20:6,19
    21:11,23 22:3,19 23:5
**believed** 11:14
**best** 9:4 26:7
**better** 23:25
**Bible** 16:2,5,14 17:7 20:1
**Biblical** 16:12 17:23
**big** 15:24
**bike** 16:22
**bills** 11:21 12:1 13:25
**birth** 7:3
**bit** 9:19
**born** 7:5
**box** 12:20
**break** 5:8,13,15
**BREANNA** 1:3 25:3
**breath** 5:11
**brought** 8:2

**C**

**C** 2:1
**call** 28:17
**called** 6:20 15:9
**campaign** 22:21
**capacity** 1:8 25:8
**CAPTION** 30:4
**care** 17:8 20:5

**CARTER** 2:5
**carter@harrisonhartlaw.com**
    2:6
**case** 3:25 26:9,10 30:4
**cash** 12:18,19
**Casual** 16:19
**catch** 5:10
**Catholic** 15:5
**CCR** 1:20 25:11
**Certificate** 2:14 25:10,17
**Certified** 26:14
**certify** 25:11,17,20 26:1,4,8
    27:19
**change** 27:6,7,8,9,11,12
**changes** 27:10,21
**checking** 9:20
**Chevron** 9:23
**children** 8:11,12,13,23
**choose** 21:20 28:20
**Christian** 11:12 17:17 23:9
**church** 1:3 14:11,14,19,20,23,25
    15:4,5,6,8,14,15 25:3
**Civil** 29:5
**CJ** 9:4
**classes** 16:5
**clear** 4:20
**closer** 8:5
**COBRA** 9:17,18 10:4 11:10
**college** 8:20
**combined** 13:13,14
**commercial** 20:4
**commit** 5:11
**companies** 19:9
**company** 9:23 10:7 19:11
**Complaint** 20:12,13,17
**computer** 6:23
**concerts** 16:1
**concluded** 24:12
**conferences** 15:25
**consider** 16:24
**consume** 16:24
**consumed** 6:4,7
**contact** 24:3 28:16,20
**continuing** 11:9
**contracted** 26:8
**convenience** 29:2
**conventional** 18:23 19:1,6,9
**Conway** 7:18,20
**copies** 25:17

**copy** 25:23 26:1 28:9,12
**correct** 26:6 27:20
**CORRECTION** 27:12
**corrections** 23:17 25:22 28:10,13
   29:2
**cost** 11:3,9 26:1
**counsel** 25:18,18
**couple** 5:8 20:9
**courses** 8:20,21
**court** 1:1,21 3:14,25 4:14,22 5:13
   20:13 25:1 26:10,14
**courtesy** 5:1
**coverage** 11:2,10 20:10
**covered** 10:11
**CRR** 1:20
**cuff** 12:9
**current** 13:10
**currently** 7:7 8:24 14:9 16:4

D

**D** 2:11
**d/b/a** 1:3 25:3
**dad** 8:3
**date** 7:3 26:24 28:1,6,23 30:8,13
   30:18,23
**daughter** 9:14,21
**daughter's** 8:15
**day** 24:7
**days** 24:10 29:5
**de** 2:8 25:15
**Dear** 28:7
**decision** 13:3,15 18:9,12,15
   19:13,14 21:12,13,24 22:1
**decisions** 19:13 21:11,17,23
**deductible** 11:3,4
**Defendant** 4:3,5
**Defendants** 1:9,18 2:7 25:9,14
**DEL'D** 30:8,13,18,23
**delivered** 25:17,21 28:1,20 30:8
   30:13,18,23
**denomination** 23:7
**depends** 13:1
**deposition** 1:12,15 3:16 4:12
   6:10,18 24:12 25:12,19,23 26:1
   26:5,7 27:3,10,21 28:5,8 29:1
**describe** 4:10 10:14 16:12 17:5
   17:13,17 18:4,18 19:12
**diet** 16:25
**different** 3:23 12:16 14:17 15:25

   20:24
**differently** 20:20 21:4
**difficult** 4:22
**discount** 12:19
**Disks** 30:7,12,17,22
**dislike** 11:1
**disposition** 26:10
**DISTRICT** 1:1,1 25:1,1
**doctor's** 12:22
**DOCUMENT** 30:7,12,17,22
**documents** 6:13
**doing** 12:25
**drink** 5:10 16:17
**drinker** 16:19
**dropped** 8:18
**drugs** 6:4
**duly** 3:2
**duty** 17:2,5,10,13

E

**E** 2:1,1,3,11 28:3
**e-mail** 6:20
**earlier** 8:7
**effort** 22:9
**eight** 14:15
**email** 29:1
**employed** 10:23 26:8
**employer** 10:5,8,20
**employment** 8:5
**Enclosed** 28:12
**ended** 15:6
**endorse** 17:17
**entire** 10:22
**errors** 27:3
**estate** 8:21
**et** 27:1 28:5 30:4
**ethical** 17:10,13,24
**eventually** 8:23
**examination** 2:12 3:4 25:20
**example** 21:3
**examples** 19:24
**excepted** 26:9
**exercise** 16:21
**exhibit** 22:4
**exhibits** 2:16 23:6 26:2 30:7,12
   30:17,22
**expenses** 12:5,8,10,14 13:5,17,20
   14:6
**expensive** 9:24 10:19

**experience** 10:15
**Expires** 26:14
**explored** 20:9
**extremely** 4:22

F

**facility** 12:24
**fact** 22:18
**fair** 13:7
**faith** 15:2
**fall** 15:24
**familiar** 18:8,14 20:12
**family** 7:11 8:5
**Farmington** 7:8,9,11 8:16 14:11
   15:1
**fathers** 17:22
**Fe** 2:9 25:16
**February** 9:12 18:14
**federal** 3:25 20:13
**feel** 5:4,9 17:7 20:24 22:11
**fellow** 17:24
**festivals** 15:24
**feverishly** 5:14
**file** 29:7
**filed** 20:13 28:23
**files** 28:14
**final** 18:15 19:13 21:13,25 26:10
**find** 15:13 22:17 29:1
**finish** 4:24 5:1
**first** 3:2 9:10 11:6 14:25 15:3
   15:14
**fit** 15:14
**five** 11:6 17:17,18
**follow** 16:14
**follow-up** 5:2
**follows** 3:3
**force** 18:23
**foregoing** 26:6 27:19
**forth** 26:6
**founding** 17:22
**four** 16:8
**free** 5:4,9
**friend** 9:4
**fulfill** 18:4
**FURTHER** 25:17,20 26:1,4,8

G

**GED** 8:19
**getting** 10:4 24:8
**give** 5:1,14

given 27:20
go 5:10 8:23 9:19 12:15 18:23
   19:1,5
goes 11:20
going 3:11 4:11 5:7,18 9:18
good 3:6 10:18 23:19
Gospel 1:3 17:16 20:21 22:5,16
   22:21 25:3 27:1 28:5 30:4
graduate 8:16
grand 11:6
ground 4:10
group 16:3
groups 16:9,10
guess 7:10 9:2 22:23 23:8
guide 16:13
guys 23:23

**H**

hands 5:15
happen 22:8
happy 20:11
hard 4:16
Harrison 2:3,5 28:3
Hart 2:3,4 23:14,23 24:1 25:22
   28:2,3,7 30:11
head 4:18
health 10:5 11:1 18:17 19:1 20:3
   20:10
healthcare 10:10 22:22
healthshare 1:3 3:21 9:10 18:22
   21:20 25:3
healthy 16:25 17:3,11
hear 9:13 23:19,23
heard 22:14
Hearing 18:9 21:12,24
help 11:20 18:6
high 8:16 11:3
higher 13:4
Hills 14:11,19 15:16,21
Hilton 1:20 25:11 26:13
home 15:14
honestly 5:18
Hopefully 24:7
hoping 22:7
hopped 15:13
hostility 22:4
hour 5:12
hours 5:8,21,24 6:5,8
husband 6:18 8:7 9:16,22 10:4

10:21 13:13,14,19 15:5
husband's 10:20

**I**

idea 11:12,13
impair 5:17
including 26:2
indicate 27:3
inside 16:14
instances 29:5
institution 19:18
insurance 1:7,8 2:8 3:8,9,10 4:7
   9:18,23 10:5,8,18 18:23,25 19:1
   19:6,9 20:3,10 21:2,20 22:4,16
   22:21 23:6 25:7,8,15
interacting 21:14
interest 26:9
interfered 19:14
Interim 18:15 19:14 21:13,25
investing 11:13 19:19,20 20:8
involved 5:13
issued 22:15
issues 14:5
IV 2:5

**J**

January 18:8
JOB 29:25 30:2
join 9:10 11:10
joined 15:15

**K**

Kane 1:7 3:10 25:7
keep 28:14
know 4:1 10:7 11:18 12:4 13:3
   13:22 14:7 20:2,7 22:12

**L**

L-a-u-r-a 3:15
laid 10:24
late 6:24 22:13
Laura 1:4,12,15 2:12 3:1,15 25:4
   25:12 27:19,24 28:5 30:3
law 22:6
laws 22:10
lawsuit 3:23
legal 20:13
let's 4:21 11:25
letter 25:21 29:6

letting 23:3
level 13:4,4
liberties 17:21
Liberty 1:3 3:21 9:10,20,24 10:1
   11:10 13:4 19:5,18 20:11 22:7
   23:3 25:3
license 8:22 26:14
life 15:9 16:13
lifestyle 17:3,11
Light 1:3 17:16 20:22 22:5,16,22
   25:3 27:1 28:5 30:4
liked 11:12,13
liking 9:15
LINE 27:5,12
listed 27:10
little 5:15 12:12
lived 7:9 8:3 15:13
LLC 2:3 28:3
long 5:7 7:9 8:9 10:1 14:13 16:7
looking 8:5
lot 9:6 12:6 19:25 22:11 24:8

**M**

M 1:20 25:11 26:13
mailed 25:17,21
maintain 17:3,11
man 17:24
manager 9:5
manner 22:1
marked 2:16
market 20:4
married 7:11 8:9,10
matter 3:11 20:14 28:22
mean 18:18 19:4,20
means 23:15 24:4
medical 1:3 12:1,5,8,14,24 13:5
   13:16,20,25 14:4,4 25:3
medication 5:23
medications 5:21
meet 6:15
meetings 7:1
member 9:21 10:1 11:15,25
   14:23 21:8
member's 13:5,16
members 13:25 14:8 17:16 19:5
   22:5 23:3
membership 15:22 20:21
MENNONITE 1:3 25:3
mentioned 10:3

**met** 13:8
**Mexicans** 18:21
**Mexico** 1:1,7,22 2:4,9 7:8,15,22
    8:2 14:24 25:1,7,11,16 28:4
    29:5
**ministries** 22:22 23:9
**ministry** 11:13
**minutes** 5:9
**mistakes** 23:17
**MLG-KK** 1:6 25:6
**moment** 16:5
**money** 19:3,4,7
**monthly** 11:16,19,23
**Mormon** 15:4
**morning** 3:6 5:7 6:20
**morning's** 4:11
**move** 7:17
**moved** 7:10,12,13,14,15,18 8:4
    9:2,16 14:16,19,22 15:7
**movements** 4:18

——————————

            **N**

**N** 2:1,11
**name** 3:6,14 30:3
**need** 5:8,9,14 17:25 18:6
**neither** 26:8
**never** 8:22 15:14,15
**New** 1:1,7,22 2:4,9 7:8,15,22 8:2
    14:23 15:9 18:21 25:1,7,11,16
    28:4 29:5
**nice** 24:7
**Nicholas** 2:4 25:21 28:2 30:11
**nick@harrisonhartlaw.com** 2:5
**NM** 1:20 26:14 27:1 28:5 30:4
**nod** 4:17
**non-denominational** 14:12,20
    15:10
**nonprescription** 6:4
**normal** 20:3
**note** 28:13 29:2
**notice** 1:15 14:1
**notices** 9:18
**notified** 14:3
**November** 1:12 11:24 25:11
    26:24 27:21 28:6 30:2
**NUMBER** 30:2
**NW** 1:21

——————————

            **O**

**oath** 3:2 4:13,14 26:4
**obese** 17:15
**obligation** 17:24
**obtaining** 25:22
**offered** 10:3
**office** 1:7 2:8 3:7,9 12:22 18:25
    20:20 21:1,6 22:4,15,20 23:5
    25:7,15 28:11,14,16,19,21 29:3
**Officer's** 18:9 21:12,24
**official** 1:8 25:8
**okay** 3:6 4:3,6,10 7:3,22 8:1,20
    13:3 15:7,11,20 23:22 24:4,5
**old** 8:4,13
**oldest** 8:14
**once** 12:13
**one-hour** 7:1
**operations** 19:23
**opportunity** 23:16
**organization** 21:9
**organizations** 23:10
**original** 25:12,23 26:1 28:10,11
    28:13,23 29:3,7
**originally** 8:2
**originate** 17:21
**OSI** 18:25 27:1 28:5 30:4
**outside** 28:17
**over-the-counter** 5:20
**overprice** 13:7

——————————

            **P**

**P** 1:18 2:1,1,9 25:14 26:2 30:6
**page** 2:15 27:2,5,12 28:10,11,11
    28:13,13 29:2,3,3,7
**pages** 27:19
**paid** 10:23 12:5,8,10,14 13:20
**Park** 2:3 28:3
**part** 10:24 22:7
**participate** 15:21 16:2,7,10
    18:22
**participated** 13:15
**particular** 23:7
**parties** 1:16 25:18,21 26:9
**Paseo** 2:8 25:15
**pass** 22:9
**patient** 12:18
**pay** 10:20,22,24 11:6 13:5,6,9,16
    20:4 28:20
**paying** 11:7 19:22
**payment** 11:16,19,23 12:19

    28:19,19
**PD** 26:25 27:25
**Pennsylvania** 7:19 9:7 14:23
    15:11
**people** 4:24
**people's** 11:21
**Peralta** 2:8 25:15
**person** 14:5
**person's** 17:25
**personal** 17:20
**personally** 22:14
**physical** 4:18 12:25
**place** 22:18
**Plaintiff** 4:3
**Plaintiffs** 1:5 2:2 25:5
**PLAN** 1:3 25:3
**please** 3:13 28:10,12,15,17,18,20
    29:1
**pocket** 11:7
**policy** 10:11
**portion** 10:21
**pot** 11:20
**prayer** 16:9,10
**precise** 4:20
**preference** 23:6
**premium** 10:21,22
**prepare** 6:10,12 7:2
**Presbyterian** 10:9
**prescription** 5:23 6:1
**present** 25:21
**press** 22:14
**principles** 16:13
**prior** 10:5,20 26:4
**probably** 3:20 10:2 14:15 19:2
**Procedure** 29:5
**proceeding** 4:4,7 26:6
**proceedings** 25:18
**process** 12:13,15
**Professional** 1:21
**program** 9:11,13 11:11 12:2
    13:20 21:9
**Proofread** 26:25
**provide** 29:5
**provider** 13:2
**providing** 10:8
**public** 22:21
**purpose** 11:18
**PURSUANT** 1:15
**pursued** 8:19

**put** 4:12 15:24 22:18

**Q**

**question** 5:2,3,5
**questioned** 3:3
**questions** 3:11 4:13,25 5:17
  23:13,14 24:2 26:5
**quite** 5:4 9:19 13:24

**R**

**R** 2:1
**raised** 7:11 15:2,4,5
**raising** 8:22
**reached** 21:7
**read** 23:15 24:2 27:19 28:8,10,13
  28:16,23 29:6,6
**ready** 23:16 28:15,18
**real** 8:21
**really** 9:15 15:14,15
**realtors** 8:22
**reason** 27:11,12
**reasonable** 13:7
**REC'D** 30:9,14,19,25
**receipt** 29:5 30:1
**received** 28:20
**Recommended** 18:9,12 19:13
  21:12,24
**record** 4:19
**recording** 4:15
**recoverable** 26:1
**referencing** 19:8
**regarding** 22:16 25:22
**regular** 16:21
**regularly** 15:16,21
**reimbursed** 12:14
**related** 26:8
**releases** 22:15
**religious** 14:9 15:20 19:15,18
  21:15,18 23:7,10
**remit** 28:19
**RENTERIA** 1:4 25:4
**repair** 12:9
**rephrase** 5:5,5
**report** 26:5
**REPORTED** 1:20
**reporter** 3:14 4:14,23 26:14
**REPORTER'S** 2:14 25:10
**reporters** 5:13
**Reporting** 1:21

**represent** 3:8
**represented** 25:18
**request** 12:13 25:12
**requested** 28:8
**requesting** 14:6
**required** 20:4 25:20
**requires** 17:16
**reside** 7:7
**restrict** 22:1,25 23:2
**restricted** 21:13
**retained** 25:12
**return** 28:11,13 29:3
**returned** 7:22
**reverse** 22:13
**review** 6:13 23:16 28:15,18
**rid** 18:17
**ride** 16:23
**right** 16:5 18:3 19:10,17 20:25
  23:1,12 24:6
**rights** 17:20
**rotator** 12:9
**rules** 4:11 26:9 29:5
**run** 12:18

**S**

**S** 2:1
**S-m-i-t-h** 3:15
**Safford** 7:6
**Sagebrush** 14:18,20
**Santa** 2:9 25:16
**saying** 7:14 9:18
**says** 17:7 20:1
**School** 8:17
**sealed** 25:12
**see** 7:10 18:6
**seen** 22:14
**sent** 6:19 9:17
**Service** 1:21
**services** 15:8,16
**set** 26:5 28:22
**seven** 7:18 14:15
**share** 11:16,19,20,23 12:20 18:17
  21:14
**shared** 12:2 14:1,6
**sharing** 22:22
**short** 14:18 15:12
**shorthand** 26:5
**sign** 23:15 24:2 28:8 29:6
**signature** 25:20,22 28:10,11,11

  28:13,13,21,24 29:7
**signature-correction** 29:2,3
**SIGNATURE/CORRECTION**
  2:15 27:2
**signed** 9:14,20 28:17,23 29:6
**similar** 3:21
**Sincerely** 29:8
**SMH** 1:25 26:24 27:25 29:25
  30:2
**Smith** 1:4,12,15 2:12 3:1,6,15
  24:3,7 25:4,12 27:19,24 28:5
  30:3
**snow** 24:8
**son** 8:14 9:24
**soon** 28:19
**sophomore** 8:18
**sorry** 23:22,23 24:1
**Southwest** 2:3 28:3
**speak** 6:17
**special** 15:23
**specific** 21:3
**speech** 22:1
**spell** 3:14
**spiritual** 17:2,5
**start** 3:13 4:25 11:7
**started** 9:20
**state** 3:13,25 4:2 7:15 23:4
**statement** 27:10
**STATES** 1:1 25:1
**stationary** 16:22
**stenographic** 26:5
**Stephen** 1:18 2:9 3:7 25:14 26:2
  30:6
**stephen.thies@osi.nm.gov** 2:10
**stick** 20:1
**stipulation** 1:16
**stopping** 5:12
**Street** 1:21
**strike** 21:2
**study** 16:2,5
**submit** 12:17,19 13:1,25
**submitted** 12:1,4,7
**Suite** 1:21 2:3 28:3
**sunny** 24:9
**Superintendent** 1:7,7 2:8 3:8,9
  3:10 4:7 18:25 19:14 20:21
  21:2,7,25 22:4,15,20,20 23:6
  25:7,7,15
**Superintendent's** 18:15 21:13,25

**supposed** 6:25
**sure** 4:5,19 23:11,20
**Susan** 1:20 25:11 26:13
**sworn** 3:2

**T**

**T** 1:7 2:4 3:10 25:7,21 28:2 30:11
**take** 5:7 17:8 20:23 21:2
**taken** 1:16,18 3:16 5:20,23 25:12
    26:24 28:6
**takes** 12:12
**talked** 6:20
**talking** 4:21,24 8:6 12:21 23:20
    23:21
**TAMMY** 1:4 25:4
**Teleconference** 1:15
**tell** 6:23 13:23 20:7 21:21
**temple** 17:8
**testified** 3:3
**testify** 6:2
**testimony** 27:19,20
**thank** 8:1 24:6,10,11
**therapy** 12:25
**thereof** 25:12
**Thies** 1:18 2:9,13 3:5,7 23:12,21
    23:25 24:6,11 25:14 26:2 30:6
**thing** 18:3
**things** 11:14 15:23,25 19:19,20
**think** 3:20 4:9 5:6 10:10 11:5
    13:6 17:2 19:2,2 20:25 21:17,19
    21:21 23:1
**Third** 1:21
**thought** 6:24
**three** 8:12 10:2 16:8
**time** 4:24 5:9 9:1,19 11:22 12:7
    14:18,24 15:12 28:8 29:6 30:9
    30:14,19,25
**times** 12:4 13:22,23 22:11
**tobacco** 16:15 17:14
**today** 3:12 5:16 6:2,11 24:10
**told** 21:7
**transcribe** 4:23
**transcribed** 27:20
**transcribing** 4:14
**transcript** 23:15,18 25:20 26:6
    27:20 28:8,9,10,12,14,15,16,18
    28:20,23 29:1,6,6,7 30:7,12,17
    30:22
**transgender** 19:22 20:5

**treated** 20:20 21:4
**treatment** 20:5,24
**Trial** 28:22
**Trish** 6:19
**true** 26:6 27:20
**truthfully** 5:18
**try** 4:21 16:21
**trying** 15:13 20:23 22:25 23:2
**Tunkhannock** 7:19
**twice** 15:18
**two** 3:20 4:23 7:1,19
**type** 6:1 14:4,4 20:10 22:10
**typing** 5:14
**typographical** 27:3

**U**

**uh-huh** 4:17
**understand** 5:4,6 18:20
**understanding** 18:11 20:16
**understood** 6:25
**unemployed** 8:4 9:16
**United** 1:1 10:10,16 11:1 25:1
**unshared** 13:9,10
**use** 16:15 19:11,17 21:19,22
**usually** 22:17

**V**

**v** 27:1 28:5 30:4
**verbal** 4:16
**Video** 1:15
**violated** 21:18
**virtually** 1:16
**vs** 1:6 25:6
**VTC** 1:12 25:11,19,23 26:1,5,7

**W**

**waiting** 12:11
**want** 5:12 18:21,22,24 19:11,17
    23:8
**wanted** 18:16
**wants** 18:25
**wasn't** 4:6
**WATERS** 1:4 25:4
**way** 16:13 18:20
**we'll** 24:3
**We're** 16:4
**We've** 8:10
**week** 15:18
**weekly** 15:18,19

**went** 9:22 14:17
**weren't** 9:8
**whatsoever** 26:10
**witness** 2:15 23:19,22 24:5,9
    25:20,21,22 26:4 27:2 28:8,10
    29:5 30:3
**women's** 15:25
**work** 9:1,23
**worked** 8:22 9:4,5
**working** 8:24 9:3,8
**works** 22:12

**X**

**X** 2:11
**xxx_Enclosed** 28:9
**xxx_Other** 29:1

**Y**

**Yeah** 19:16 23:25
**year** 7:21 8:18 9:17 13:14
**years** 3:20 7:10,12,19,20 8:4,10
    10:2 14:15 16:8 20:10

**Z**

**ZOOM** 2:4,5,9

**0**

**1**

**1:23-cv-00276** 1:6 25:6
**10** 7:12
**10:04** 24:12
**108** 1:20 25:11 26:14
**1120** 2:8 25:15
**12** 1:12 8:4 25:11 26:24 27:21
    28:6 30:2
**12/31/24** 26:14
**1630** 1:21
**1750** 13:11
**1st** 11:24

**2**

**20** 12:9
**2006** 9:2
**201** 1:21
**2016** 7:12,25 9:16 14:16
**2017** 9:12 12:1 14:16
**2023** 18:8,15
**2024** 1:12 25:11 26:24 27:21 28:6
    30:2

**22** 18:14
**24** 5:21,24 6:5,8
**25** 2:14
**27** 2:15

---
### 3
---

**3** 2:13
**3-12-62** 7:4
**30** 29:5
**36** 8:15
**39** 8:15

---
### 4
---

**41** 8:14
**46** 8:10

---
### 5
---

**5,000** 11:5
**50** 7:10
**505-843-9494** 28:16,21

---
### 6
---

---
### 7
---

---
### 8
---

**800-669-9492** 28:17
**87102** 1:22 2:4 28:4
**87501-2747** 2:9 25:16

---
### 9
---

**9:28** 1:13
**924** 2:3 28:3
**9994N** 1:25 26:24 27:25 29:25
  30:2