**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BRENNA RENTERIA, and
LAURA SMITH,

   *Plaintiffs,*

   v.           No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE,
and ALICE KANE,
Superintendent of Insurance,
in her official capacity,

   *Defendants.*

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY
DISCOVERY WITH REQUEST FOR EXPEDITED CONSIDERATION**

   Plaintiffs Breanna Renteria and Laura Smith (together, "Plaintiffs"), through their below-signed counsel of record, hereby respond to Defendants' Motion to Stay Discovery with Request for Expedited Consideration., ECF No. 130, filed on January 13, 2025 (the "Motion" for "Def. Mot.") by the New Mexico Office of the Superintendent of Insurance (the "OSI") and Alice T. Kane, Superintendent of Insurance, in her official capacity (together, "Defendants"). Defendants' Motion is simply another attempt to protect its bad actors, hide its violations of health care sharing ministry ("HCSM") members' constitutional rights, obstruct Plaintiffs' discovery rights, and delay a decision on the merits of this case—all part of Defendants' concerted effort to conceal the truth in this case. Justice requires that the Court deny Defendants' Motion. In accordance with D.N.M. LR-Civ. 7.6(a), Plaintiffs request oral argument on the Motion and related briefings.

## FACTUAL BACKGROUND

On March 31, 2023, Plaintiffs, along with now-dismissed former plaintiffs Gospel Light Mennonite Church Medical Aid Plan, d/b/a Liberty HealthShare ("Liberty") and Tammy Waters, filed their complaint in this action against Defendants to vindicate their rights to join in religious ministry "to preserve the Christian tradition of health care sharing and to enable followers of Christ to bear one another's burdens" through the sharing of health care expenses (the "Complaint"). Complaint, ECF No. 1, at ¶ 3. The Complaint brought claims against Defendants for violating Plaintiffs' and Liberty's religious, free speech, due process, and free association rights under the Free Exercise Clause, the Establishment Clause, the Equal Protection Clause, the Free Speech Clause, the Due Process Clause, and the Assembly Clause of the federal Constitution; the religious freedom clause of the New Mexico Constitution; and the New Mexico Religious Freedom Restoration Act ("NM RFRA"). *Id.* at ¶¶ 46-77.

Overall, the Complaint alleges that "Defendants prohibited Plaintiffs from engaging in the sharing of their health care costs according to their religious beliefs and practices." *Id.* at 1. The Complaint frames Defendants' unlawful acts in terms of their targeting of Liberty and its members as part of a broader "effort to drive out all health care sharing ministries from New Mexico under the guise of regulating the transaction of insurance within the state." *Id.* at 2. The Complaint clarifies that Plaintiffs allege harms caused by "Defendants' targeted campaign to push health care sharing ministries out of New Mexico," thereby depriving Liberty and its members, including Plaintiffs, "of their constitutional rights to free exercise of religion and to free association." *Id.* at 3. In this way, "Defendants have engaged in [a] biased and illegal enforcement action" that "flatly contradicts OSI's own enforcement history that allowed HCSMs to operate freely and openly until its March 26, 2020 public warning that HCSMs are 'unauthorized insurance.'" *Id.* at ¶¶ 75, 103.

2

As alleged in the Complaint, Defendants "have repeatedly shown actual hostility toward HCSMs," which was "not neutral toward religion, and demonstrate[d] animus toward the religious nature of HCSMs." *Id.* at ¶¶ 201-04.

Notably, the Complaint attempts to protect the constitutional rights and NM RFRA rights of all HCSM members, as the relief sought requests declaratory judgments stating that Defendants' actions are unenforceable, unconstitutional, and in violation of NM RFRA, and that Liberty's ministry does not constitute insurance. *Id.* at 77-78. It also requests a permanent injunction preventing Defendants from enforcing the New Mexico insurance code against Liberty and other HCSMs. *Id.* at 78.

In response to Plaintiffs' Complaint, Defendants filed a Motion to Dismiss in Lieu of Answer on April 25, 2023, where they argued that Plaintiffs' Complaint should be dismissed due to (1) lack of standing in the absence of a concrete injury, (2) lack of subject matter jurisdiction due to untimely filing, and (3) Eleventh Amendment sovereign immunity. *See* 4/25/23 Motion to Dismiss, ECF No. 8. On May 9, 2023, Plaintiffs filed a Response in Opposition to Motion to Dismiss, asserting that the motion to dismiss should be denied because (1) it was untimely filed, (2) the requirements for abstention had not been met, (3) their Complaint was timely because the deadlines cited by Defendants were inapplicable, (4) Eleventh Amendment immunity was waived for the claims and types of relief asserted by Plaintiffs, and (5) Plaintiffs had stated a concrete injury sufficient to grant them standing. *See* 5/9/23 Response to Motion to Dismiss, ECF No. 15.

On July 14, 2023, the Court dismissed Liberty as a plaintiff in accordance with the abstention doctrine, finding that Liberty had already raised the issues in the Complaint in a state proceeding, which was an adequate forum, and permitting Liberty to move forward with this lawsuit would cause undue interference with the state proceeding. *See* 7/14/23 Memo Opinion and

Order, ECF No. 38, at 10-21, 23. It further dismissed claims brought by the Plaintiffs under the New Mexico Civil Rights Act and Religious Freedom Restoration Act, because Eleventh Amendment immunity was only waived for these claims in state court, not in federal court. *See id.* at 7-9.[1] However, the Court rejected Defendants' contention that Plaintiffs lacked standing to sue, emphasizing that their "claimed restrictions are sufficient to confer standing," because they alleged that "sharing healthcare costs through an HCSM is a means through which they practice their faith," and that "the inability to share healthcare costs would prevent them from engaging in their sincerely held religious beliefs." *See id.* at 6.

Since the onset of litigation, Defendants have continually attempted to hide the truth of their constitutional violations by unlawfully obstructing Plaintiffs' discovery process. First, Defendants objected to each of Plaintiffs' discovery requests and provided essentially no substantive information, later admitting that they had no basis to assert most of their objections. *See* 3/25/24 Motion, ECF No. 62, at 2; *see, e.g.*, 4/8/23 Response, ECF No. 63, at 2 (Defendants admitting that "the objections were not applicable to the current March 4 production"). Then, Defendants moved to quash Plaintiffs' scheduled depositions of former OSI Superintendent Jennifer Catechis and former OSI hearing officer R. Alfred Walker, despite the fact that these individuals were willing and available to be deposed. *See* 11/13/24 Motions to Quash, ECF Nos. 102 and 103. Further, Defendants produced very little in response to Plaintiffs' fourth requests for production, instead objecting to the requests, entirely refusing to respond, and/or claiming that the relevant documents had been destroyed—while alarmingly refusing to provide any detail as to their efforts to prevent spoliation or recover the destroyed evidence. *See* 1/8/25 Motion, ECF No.

---

[1] On July 8, 2024, plaintiff Tammy Waters was also dismissed from the matter pursuant to the parties' joint motion, as she is no longer a member of Liberty. *See* 7/8/24 Order of Dismissal, ECF No. 80.

128. Significantly, Defendants also wholly ignored their obligations to prepare their designees for Plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition—despite negotiating and stipulating to the notice topics—so that Plaintiffs could not depose Defendants at all on notice topics two through seven and could only depose the designees about their personal knowledge concerning notice topics one and eight through ten. *See* 1/15/25 Motion, ECF No. 131, at 14-15. Presently, each of these important issues concerning Plaintiffs' discovery rights is actively being litigated.

Now, through their Motion, Defendants attempt to stay discovery so that the Court will not learn of their obstructions of the truth and of Plaintiffs' discovery rights as the Court prepares to resolve Plaintiffs' aforementioned discovery motions. Such an unjust result cannot be permitted by this Court.

## LEGAL STANDARD

"[T]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (internal cite and quotes omitted). Moreover, "[t]he Court generally hesitates to stay discovery unless both parties agree to the stay, and the Court will not stay discovery where such a stay will prejudice the plaintiff." *De Baca v. U.S.*, 403 F. Supp. 3d 1098, 1128 (D.N.M. 2019) (Browning, J.) (internal cites and quotes omitted) (denying defendant's motion to stay discovery pending decision on defendant's summary judgment motion and reasoning that doing so would prejudice plaintiffs). "[W]here a movant seeks relief that would delay court proceedings by other litigants[,] he must make a strong showing of necessity[,] because the relief would severely affect the rights of others." *Fed. Deposit Ins. Corp. v. Dee*, 222 F. Supp. 3d 972, 1025 (D.N.M. 2016) (internal cites and quotes omitted).

Notably, only *after* the movant satisfies his initial burden of making a strong showing of necessity will courts weigh the following factors in evaluating whether a discovery stay is warranted: "(1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *J.D. Heiskell Holdings, LLC v. Willard Dairy, LLC*, No. CV 23-CV-00854, 2024 WL 3829970, at *2, *4 (D.N.M. Aug. 15, 2024) (internal cites omitted) (weighing the above factors in denying motion to stay while emphasizing that there is still a requirement that the "the proponent of a stay bears the burden of establishing its need" (internal cites and quotes omitted)).

## ARGUMENT

### I.    Defendants have entirely failed to meet their burden of making a strong showing of necessity for their requested stay of discovery.

In their Motion, Defendants omit from their discussion of the balancing test the fact that they are required to satisfy "a heavy burden to demonstrate the necessity of [their] request" for a stay, and Defendants are obligated to meet this burden regardless of any other balancing that occurs. *See, e.g., J.D. Heiskell Holdings, LLC*, 2024 WL 3829970, at *4-5. Defendants' Motion does not even attempt to make a showing of any need for a discovery stay. *See* Def. Motion, ECF No. 130. Rather, Defendants merely allege that, "[u]nless otherwise limited, [the OSI] will require a significant expenditure of time in order to respond." *Id.* at 4. Notably, Defendants made no attempt to explain or show how it concluded that responding to Plaintiffs' outstanding discovery requests would "require a significant expenditure of time." *Id*. Neither did Defendants attempt to quantify what it considers to be a "significant expenditure of time." *Id.*

This Court must reject Defendants' bald and baseless assertions of excessive burden here. *Cf. JL v. N.M. Dep't of Health*, No. 12-CV-01145, 2014 U.S. Dist. LEXIS 205981, at *14 (D.N.M.

Jan. 7, 2014) (cautioning that the use of "boilerplate, blanket objections" is improper and explaining that "[t]he objecting party has the burden to substantiate its objections and must specifically show how each discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden" (internal cites and quotes omitted)); *Murray v. Burt*, No. 09-CV-01150, 2010 WL 11552893, at *1 *(* (D.N.M. Nov. 19, 2010) (nothing that an "objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome" and that such objections are overruled based "on lack of affidavit or other proof" (internal cites omitted)); *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997) (rejecting defendant's objection that plaintiff's requests were overly burdensome and oppressive because defendant failed to submit affidavit or other evidence specifically showing how each discovery request was burdensome or oppressive).

In any event, showing a significant time expenditure in responding to discovery does not meet Defendants' heavy burden of demonstrating that a discovery stay is necessary, particularly in light of the fact that Defendants' have already tried and failed to dismiss Plaintiffs' case by arguing that Plaintiffs lack standing, and they rely again on the same flawed arguments and essentially the same evidence. *See* 7/14/23 Memo Opinion and Order, ECF No. 38, at 6; *compare* 4/25/23 Motion, ECF No. 8, at 13-15, *with* 1/3/25 Motion, ECF No. 127, at 5-8; *J.D. Heiskell Holdings, LLC*, 2024 WL 3829970, at *4 (denying defendant's motion for stay pending dispositive motion because defendant had not demonstrated a need to stay discovery, as the court "can't predict whether the presiding judge will grant or deny [defendant's dispositive] motion" and it "does not appear to the [c]ourt that [p]laintiff's discovery requests are overly broad or burdensome"); *PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 7 (D.D.C. 2004) ("A summary judgment motion may not be made on

the same grounds and with the same showing that led to the denial of a previous motion to dismiss." (internal cites and quotes omitted)).

The cases cited in Defendants' Motion which granted discovery stays are inapposite here. For example, *Wetzel v. Diestel Turkey Ranch* concerned an entirely different factual situation, as: (1) the dispositive issue raised by defendant had not yet been litigated and (2) defendant made a very detailed showing of the anticipated costs of discovery, which totaled approximately $2 MILL. No. 20-CV-01213, 2023 WL 3230556, at *4 (D.N.M. May 3, 2023). In contrast, Defendants here have made absolutely no showing of their anticipated discovery costs, and they have lost standing issues previously. *See* Def. Mot. Similarly, in *Mestas v. CHW Grp. Inc.*, the court found it "particularly compelling" in granting the stay that "four other lawsuits ha[d] been filed involving [p]laintiff's attorney with nearly identical allegations and each lawsuit was dismissed in the early stages of litigation." No. 19-CV-00792, 2019 WL 5549913, at *2 (D.N.M. Oct. 28, 2019). Here, on the contrary, Plaintiffs' Complaint survived dismissal motions based on standing. Also, in *M.G. through Garcia v. Scrase*: the case did not involve a motion to stay discovery, and plaintiffs briefed a different legal standard; the defendants had raised a dispositive issue not yet litigated; the court expected a "reasonably prompt resolution of the dispositive motion;" and no scheduling order had yet been entered in the case. No. 22-CV-00325, 2022 WL 5242610, at *5 (D.N.M. Oct. 6, 2022). As such, this case presents an entirely different set of facts than those of the present case.

Likewise, *Moore v. Busby*, 92 F. App'x 699 (10th Cir. 2004), concerned a stay pending the resolution of a judicial immunity defense, which involves a much more lenient standard for permitting stays and does not apply to the present case. *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (noting that, "if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery"). Finally, the court in *String*

*Cheese Incident, LLC v. Stylus Shows, Inc.* only stayed discovery for 30 days to address a dispositive issue not yet litigated, and the court emphasized: "more factors weigh in favor of proceeding with discovery rather than imposing either an indefinite stay of all discovery or a stay in favor of [defendant]." No. 02-CV-01934, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

Accordingly, Defendants' Motion is more appropriately addressed by looking to the Court's reasoning in cases like *J.D. Heiskell Holdings, LLC,* which involved a situation in which Defendants had not shown the necessity of the stay pending a dispositive motion, so the stay was not granted. 2024 WL 3829970, *5 (reasoning that stays pending dispositive "motions are generally disfavored in this district because they may prolong litigation or incentivize the filing of dismissal motions as a strategy for pausing lawsuits"); *see also Commodity Futures Trading Comm'n*, 713 F.2d at 1487 (reversing stay of litigation as abuse of discretion and finding "lack of sufficient justification for the stay"); *Cruz v. City of Deming*, 687 F. Supp. 3d 1155 (D.N.M. 2023) (denying stay of all discovery pending a qualified immunity motion and noting the "weightier countervailing interests that often militate against a stay of all discovery for all defendants"); *De Baca*, 403 F. Supp. 3d at 1128 (denying defendant's motion to stay discovery pending decision on defendant's summary judgment motion and reasoning that doing so would prejudice plaintiffs and was not supported by necessity); *Fabara v. GoFit, LLC*, No. 14-CV-01146, 2015 WL 3544296, at *11 (D.N.M. May 13, 2015) (Browning, J.) (refusing to stay discovery pending dispositive motion resolution because "the plaintiff's discovery requests are not particularly burdensome, and the defendant has not shown how it will suffer prejudice from them . . . [or] how the discovery here is burdensome, is unnecessary in this case, or will be unhelpful in a future case"); *Walker v. THI of New Mexico at Hobbs Ctr.*, No. 09-CV-00060, 2011 WL 2728326, at *2 (D.N.M. June 28, 2011) (denying motion to stay pending decision on motion to dismiss and noting that a stay would serve

no benefit and :would further delay the case"); *Wolf v. U.S.*, 157 F.R.D. 494, 495 (D. Kan. 1994) (denying motion to stay discovery pending decision on motion to dismiss and noting that the "general policy in this district is not to stay discovery even though dispositive motions are pending").

Just like the court in *J.D. Heiskell Holdings, LLC* cautioned against, Defendants here are attempting to use their Motion to stay and accompanying dismissal motion "as a strategy for pausing [this] lawsuit" and avoiding accountability for their discovery abuses. 2024 WL 3829970, *5. This Court should not permit such gaming here.

## II.    Staying discovery would prejudice Plaintiffs, inconvenience the Court, and adversely affect the public interest, which weigh in favor of permitting discovery to continue, particularly considering the constitutional rights at issue.

In their Motion, Defendants falsely and baldly claim that "Plaintiffs will not be prejudiced by the requested stay;" "the Court would not be inconvenienced by a stay;" and the "OSI is unaware of any public interest that would be impacted by a stay." Def. Mot. at 4-5. However, each of these assertions is demonstrably untrue. Plaintiffs would be prejudiced by a discovery stay, because "automatically staying all discovery for all defendants would result in habitual and significant delay in the resolution of meritorious claims[;] . . . [and] [o]ften, delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Cruz*, 687 F. Supp. 3d at 1169-70 (internal cites and quotes omitted). "Additionally, "[s]uch a delay may hinder the timely gathering of evidence to support the plaintiff's claims." *Id.* (internal cites and quotes omitted). As such, further delay in this case would harm Plaintiffs' "strong interest in having [their] claims resolved expeditiously." *J.D. Heiskell Holdings, LLC*, 2024 WL 3829970, at *3. "Furthermore, Section 1983 cases often involve individuals who assert their rights have been gravely violated,"

[and] [j]ustice delayed may be justice denied for victims of civil rights abuses." *Cruz*, 687 F. Supp. 3d at 1169-70. These concerns are especially prevalent in Plaintiffs' situation, where Defendants' discovery obstruction and stall tactics have caused discovery to drag on for approximately one year now. *See* 3/25/24 Motion, ECF No. 62, at 2.

Additionally, a stay of discovery would inconvenience the Court, as "the Court has an interest in the orderly and expeditious disposition of cases." *Id.* at 1170 (internal cites and quotes omitted). A discovery stay would "disrupt the Court's docket" in relation to the scheduling order in place and would not "promote[] judicial efficiency"—both factors that "weigh[] against granting a stay of discovery." *J.D. Heiskell Holdings, LLC*, 2024 WL 3829970, at *5. Also, the "stay of discovery does not further the efficient management of this litigation," yet another inconvenience to the Court and reason to deny the requested stay. *Id.*

Given the nature of the proceedings and Plaintiffs' underlying constitutional claims that seek relief for all HCSM members in New Mexico, the public interest very much favors a denial of the stay. Notably, "the public's interest is not to see a lawsuit stalled but one where lawsuits efficiently move toward resolution." *Id.* (internal cite omitted). Moreover, "it is essential to recognize that Section 1983 cases frequently involve matters of significant public interest, such as accusations of severe misconduct by government officials against vulnerable members of society," as is the case here. *Cruz*, 687 F. Supp. at 1169. "The public writ large has a vested interest in promptly and justly addressing such allegations; delaying the resolution of these cases may negatively impact the public trust and confidence in the legal system." *Id.*

Given the gravity of Plaintiffs' constitutional concerns, Plaintiffs' efforts to protect the constitutional rights of all HCSM members in New Mexico, and the extent of Defendants' dilatory

tactics that have already prolonged discovery for over a year, the balancing of interests undeniably favors a rejection of the discovery stay requested by Defendants.

**III.      The discovery stay should not be granted in light of the evidence of Defendants' obstructive discovery tactics.**

Finally, Defendants' Motion should be denied, because Defendants should not be rewarded for their persistent evasion of their discovery obligations in this case. Among other things, Defendants have admitted to making knowingly inapplicable discovery objections (*see* 4/8/23 Response, ECF No. 63, at 2); moved to quash depositions of willing deponents (s*ee* 11/13/24 Motions to Quash, ECF Nos. 102 and 103); admitted to destroying evidence while refusing Plaintiffs' request that Defendants specify their attempts to prevent spoliation and recover the destroyed evidence (*see* 1/8/25 Motion, ECF No. 128); and completely failed to prepare their Fed. R. Civ. P. 30(b)(6) deposition designees so that the designees could only speak as to their personal experience, and they could not speak at all concerning six of the ten deposition topics (*see* 1/15/25 Motion, ECF No. 131, at 14-15). Now, Defendants bring this Motion in an attempt to prevent the Court from holding them accountable for these discovery abuses.

This obstructive behavior should be sanctioned by the Court, not rewarded through Defendants' requested discovery stay. *See, e.g., Philips Elecs. N. Am. Corp. v. BC Tech*., 773 F. Supp. 2d 1149, 1216 (D. Utah 2011) (explaining that "[c]ivil litigation and discovery demand a level of integrity from the parties in order to properly function," and that "[w]hen parties disregard that responsibility and/or ignore the court's mandates, there must be strong consequences," and concluding that "extreme sanctions [were] warranted in this case where discovery abuses of a serious magnitude involving bad faith and willful disregard of two direct court orders occurred"); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 647 (D. Kan. 1999) (noting that sanctions for discovery violations "are intended to ensure that a party does not benefit from its failure to comply,

and to deter those who might be tempted to such conduct in the absence of such a deterrent"); *State of Ohio v. Crofters, Inc.*, 75 F.R.D. 12, 20 (D. Colo. 1977), *aff'd sub nom. State of Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir. 1978) (sanctioning party for discovery violations and noting that sanctions rules help "to ensure that the spirit and object of discovery under the rules are maintained," while emphasizing that, "[w]ithout adequate sanctions[,] the procedure for discovery would be ineffectual").

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion and permit Plaintiffs to continue to uncover evidence of Defendants' constitutional violations through engagement in the discovery process here.

Respectfully submitted,

*/s/ Elise C. Funke*
Elise C. Funke
Nicholas T. Hart
Carter B. Harrison, IV
**Harrison & Hart, LLC**
924 Park Avenue, SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
elise@harrisonhartlaw.com
nick@harrisonhartlaw.com
carter@harrisonhartlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of January, 2025, I electronically filed the foregoing with the United States District Court for the District of New Mexico's CM/ECF system, causing a copy of it to be served on all counsel of record.

HARRISON & HART, LLC

By: _/s/ Elise C. Funke_
     Elise C. Funke