IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA, and
LAURA SMITH,

    *Plaintiffs,*

    v.                                                                         No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE,
and ALICE KANE,
Superintendent of Insurance,
in her official capacity,

    *Defendants.*

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY
RESPONSES TO PLAINTIFFS' FOURTH REQUESTS FOR PRODUCTION**

Individual Plaintiffs, Breanna Renteria and Laura Smith ("Plaintiffs"), by and through their counsel, Harrison & Hart, LLC and Commonwealth Law Offices, P.C., hereby submit the following reply in support of their Motion to Compel Discovery Responses to Plaintiffs' Fourth Requests for Production (Doc. 170) (the "Motion"), which was filed in this matter on June 27, 2025.

**ARGUMENT**

In propounding their fourth requests for production (the "Requests"), Plaintiffs were largely attempting to bring the OSI into compliance with the Court's May 6, 2024 discovery order (*see* Doc. 70 at 2, outlining Court's orders from the May 6, 2024 hearing)—while also slightly expanding on the discovery requested in order to obtain documents relevant to the OSI's

investigation of Healthcare Sharing Ministries ("HCSMs") as part of its campaign against HCSMs, as alleged in the Complaint. *See, e.g.,* Complaint at 3 (alleging "Defendants' targeted campaign to push [HCSMs] out of New Mexico"). For example, Plaintiffs' RFP Nos. 47 and 52 seek OSI communications (from different stored locations) involving HCSMs, secular analogues to HCSMs, Plaintiffs, enforcement actions, and key definitions within the OSI's order against Gospel Light in order to flesh out the nature and reasoning behind the OSI's actions toward HCSMs and their disparate treatment of HCSMs compared to similar secular entities. *See* Motion Ex. 1 at 5, 10. The list of OSI custodians on the search terms list is limited to individuals on relevant emails that the OSI produced to Plaintiffs in discovery, along with the OSI's own list of relevant custodians, which was used to generate the ordered search terms during the May 6, 2024 hearing. *See* Motion Ex. 1 at 12; Motion Ex. 5; Doc. 70. Likewise, the timeline of 2019 onward was suggested by the OSI during this hearing, and it was incorporated into the discovery ordered based on the parties' stipulations of this timeframe as relevant. *See id.* The year 2019 corresponds with the OSI's 2019 press release cautioning the public about HCSMs, and the timeframe extends to the present to cover the OSI's discussions of Gospel Light and other HCSMs in ongoing investigations and enforcement actions, which is relevant to Plaintiffs' claims about the OSI's continuing campaign and bias against HCSMs. *See*, e.g., Complaint at 3 (alleging "Defendants' targeted campaign to push [HCSMs] out of New Mexico"); *id.* at ¶ 197 (alleging that "Defendant Catechis directly, and in concert with other state officials, targeted these ministries for OSI's collective enforcement actions and related public warning campaign"). Plaintiffs are entitled to seek discovery of the OSI's ongoing "disparaging and demeaning" descriptions of HCSMs—which they've done through the Requests—as such discovery directly relates to their Complaint allegations. *See, e.g., id.* at ¶ 204

(alleging that "OSI and Defendant Catechis have applied disparaging and demeaning descriptions to health care sharing ministries and general").

Notably and alarmingly, the OSI's Response reveals that it has made *no* effort to attempt to respond to Plaintiffs' RFP Nos. 47 and 52—merely reading these requests, noting that they concern documents stored on the State Based Systems ("SBS") and GovQA databases, and "calling it quits" from that point onward. For example, the OSI's Response reveals that it made no attempt to download or transfer the documents from SBS and GovQA to another platform so that keyword searches could be run on these documents. Further, the OSI never addressed how long such a task would take and/or why such a task could not be completed. In reality, this sort of transfer of documents for discovery purposes occurs every day (likely hundreds or thousands of times every day across the State of New Mexico)—which is precisely why there is an entire industry built around discovery review platforms. However, in its Response, the OSI is simply asking the Court to permit them to "give up" on, or "opt out" of, the discovery process at the initial stage of reviewing the discovery requests. The OSI has maintained this stance despite multiple attempts from Plaintiffs' counsel to confer. As such, the OSI's position here is clearly sanctionable.

**I.   The Court should grant Plaintiffs' Motion concerning RFP Nos. 47 and 52, as the OSI has not come close to meeting its burden of establishing that full or partial production of these RFPs would be unduly burdensome.**

In its Response, the OSI has patently failed to make the required showing of undue burden regarding RFP Nos. 47 and 52. *See* Response at 2-8. Here, the OSI baldly alleges that the only way to review the SBS documents would be to manually read them all. *See* Response at 3 (asserting without support that "[t]o comply with Request for Production 47, each individual grievance, complaint, inquiry, and enforcement action would need to be accessed manually"). However, as

Plaintiffs previously explained above, it is common in these situations for the data to be transferred to another platform enabling keyword searches of documents selected as potentially responsive. *See, e.g., Black Love Resists In the Rust by & through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23, 29, 31 (W.D.N.Y. 2019) ((1) ordering city agency to conduct Boolean searches of its emails and databases for at least 20 custodians, (2) refusing to shift costs to plaintiffs for city agency to pay e-discovery vendor it hired to enable Boolean searches, and (3) rejecting agency's claims of undue burden because "[a]lthough [d]efendants assert that it would be unduly burdensome for them to produce ESI because [p]laintiffs' proposed search terms are incompatible with [d]efendants' email systems, they have not quantified that burden in terms of the number of documents subject to collection and review or the amount of time and manpower that would be reasonably required to comply with the requests" in civil rights case alleging unconstitutional discrimination); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 302 (S.D.N.Y. 2012) ("Reasonable accessible sources generally include, but are not limited to, files available on or from a computer user's desktop, or on a company's network, in the ordinary course of operation." (internal cites and quotes omitted)); *see also Allen v. Yertle Operations LLC*, 70 Misc. 3d 934, 936, 139 N.Y.S.3d 758, 760 (N.Y. Sup. Ct. 2020) (noting that, in producing discovery, "defendants retained Empire Discovery ("Empire") an e-discovery vendor to assist in the process of collecting, processing, hosting, and producing the discovery" and that "[d]efendants also retained Fronteo an agency that supplied attorney document reviewers who reviewed the documents concerning issues of responsiveness and privilege"); *Semsroth v. City of Wichita*, 239 F.R.D. 630, 632 (D. Kan. 2006) (ordering City of Wichita to produce, and pay discovery costs associated with, emails from "117 different supervising officers" in civil rights case, noting that the costs to the city of $3,374.95 for e-mail

search capabilities using e-discovery vendor Discovery Attender did not merit cost-shifting to plaintiffs). Like the City of Wichita and City of Buffalo, the OSI should retain an e-discovery vendor to produce the withheld documents.

Additionally, in its Response, the OSI contradicts itself in declaring that "an accurate time for reviewing each [file] cannot be reasonably calculated," and then claiming that "the total time to review all 10,546 files would total approximately 42,184 hours." Response at 3-4. Clearly, the OSI has not undertaken sufficient due diligence to determine its actual potential burden. Moreover, it never undertook to determine its actual burden if it chose to pay an e-discovery vendor to transfer and search the documents. *See, supra.* Rather, in *ipse dixit* fashion, the OSI claims that "the time and effort required to respond to RFP No.s [sic] 47 and 52 would be significant while at the same time likely resulting in little relevant data." Response at 5. Parties commonly make calculations or reasoned-out estimates of their anticipated discovery burdens, but they must be generated by more than just the guess of counsel. *See, e.g., Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) (explaining that "[i]t is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing huge volumes of documents and information a sufficient factual basis for sustaining the objection" (internal cites and quotes omitted)). The OSI is no different from any other party involved in litigation, and it should be held to the same legal standards as required by all parties to litigation.

In its Response, the OSI wrongly accuses Plaintiffs of "demanding that the OSI expend approximately 48,600 hours to respond to RFP Nos. 47 and 52." Response at 7. On the contrary,

Plaintiffs are merely requesting that the OSI make a reasonable effort to search these documents—which the OSI admitted in its Response that it has taken no action toward effectuating. *See, supra.*

The OSI's Response also baldly claims that the search terms in RFP No. 52 are so unrelated to this litigation that Plaintiffs are merely attempting to "discover some hidden documents." Response at 5. Similarly, the OSI's Response makes a notable error in concluding that "Plaintiffs' proposed terms will likely to [sic] result in the production of documents that are not relevant and that exceed the scope of permissible discovery." *Id.* at 7. The OSI's response further implies that Plaintiffs' key words are "not sufficiently narrowed." *Id.* However, the OSI never gives a single example of the specific search terms or date ranges that are allegedly insufficiently tailored. *See* Response at 7-8. In fact, the OSI makes no attempt to explain why it believes the search terms or ranges are overbroad—limiting its argument to an unsupported general allegation of "overbroad." As Plaintiffs have already explained in their Motion, this lack of any showing is patently insufficient. Moreover, as Plaintiffs previously explained, the search terms consist of: Plaintiffs' names, names of HCSMs, synonyms for HCSMs, names and terms associated with comparable secular entities, key legal terms implicated in the OSI's order against Gospel Light, and terms linked to OSI's enforcement actions. *See* Ex. 1 at 12. These terms all closely relate to the Plaintiffs' Complaint allegations, as described *supra*. Again, the timeline was also stipulated to by the OSI as relevant and proper, and it includes the time in which the OSI began issuing warnings against HCSMs through its present enforcement actions against HCSMs. *See, e.g.,* Doc. 70.

Finally, the OSI makes much of the thousands of pages of documents that it has already produced, but thousands of those pages are merely duplicates, public filings and other public documents, and emails on which Plaintiffs' counsel was initially cc'ed or actually wrote and sent

6

to the OSI. *See* Response at 5. This Court should not indulge this type of gaming and posturing concerning the OSI's attempt to avoid its discovery burdens. Merely producing duplicates of public documents and Plaintiffs' counsel's own emails back to them—and calling that sufficient because such productions involve thousands of pages—violates the spirit and law of federal discovery. *See, e.g., Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 561-62 (D. Colo. 2014) (noting that "evasive" discovery responses are improper and that "[c]allous disregard of discovery responsibilities cannot be condoned" (internal cites and quotes omitted)).

## II. The OSI's Response misrepresents that "Plaintiffs made no effort to work with OSI to develop an agreed upon set of key words." Response at 7.

Notably, the OSI grossly mischaracterizes Plaintiffs' actions regarding the Requests in claiming that "Plaintiffs made no effort to work with OSI to develop an agreed upon set of key words.". Response at 7. This could not be further from the truth. First, the list of key words in Plaintiffs' Requests largely tracks the terms, custodians, and timeframes agreed upon during the May 6, 2024 discovery hearing as a result of Plaintiffs' successful efforts to work with the OSI to develop an agreed upon set of key words. *Compare* Motion Ex. 1 at 12 *with* Motion Ex. 5. Plaintiffs made this point in their Motion, and the OSI never contested as much in its Response, so it is legally proper to presume that the OSI admits this fact. *See, e.g., Butchard v. Cnty. of Dona Ana*, 287 F.R.D. 666, 671 (D.N.M. 2012) (denying plaintiffs' motion where they did not respond to opposing counsel's argument in their reply brief, and "consider[ing] the complete failure to address this issue an 'acquiescence'" by plaintiffs, because "[f]ailure to respond to an argument is generally deemed an acquiescence" (internal cites and quote omitted)); *Davis v. Simon Prop. Grp.*, 9 F. App'x 876, 881 (10th Cir. 2001) (affirming lower court's ruling that party who failed to respond to facts in a motion thereby admitted to those facts); *Hagelin for President Comm. of Kansas v.*

7

*Graves*, 25 F.3d 956, 959 (10th Cir. 1994) (holding that, "[b]ecause the state failed to submit any materials contradicting plaintiffs' statement of facts in support of their motion for summary judgment, these facts are deemed admitted"); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that party who fails to file a written objection to a motion "waives the right to controvert the facts asserted by the moving party in the motion," and the "court will accept as true all material facts set forth by the moving party with appropriate record support"). Accordingly, the OSI cannot now claim that the terms, custodians, and timeframes are overly broad, as the OSI participated in creating these same discovery confines, and at least one of its lawyers determined that, based on her knowledge of the evidence, the confines were proper. *See* Doc. 70. Second, Plaintiffs attempted to address their discovery concerns regarding the Requests through their December 13, 2024 good faith letter. *See* Motion Ex. 2. Finally, Plaintiffs continued to confer with the OSI's counsel in their December 27, 2024 correspondence. *See* Motion Ex. 3.

Rather, it was *Defendants*—and not Plaintiffs—who made no effort to work with Plaintiffs to respond to Plaintiffs' Requests. As described in detail in Plaintiffs' Motion, Defendants failed to timely respond at all to Plaintiffs' Requests. *See* Motion at 2-3. Plaintiffs permitted Defendants some leeway and then sent correspondence. *See id.* When Defendants finally responded, they failed to even address certain RFPs at all—and even after Plaintiffs alerted Defendants to this error, Defendants still never responded to certain RFPs. *See id.* at 3-4. Moreover, when Plaintiffs argued as much in their brief, Defendants *still* refused to acknowledge their wholesale failure to address certain RFPs. *See* Motion and Response. It is Defendants, and not Plaintiffs, who are flagrantly violating the discovery rules here.

**III.     Likewise, the Court should grant Plaintiffs' Motion regarding RFP Nos. 48, 49, 53, 54, and 55, as the documents are relevant and discoverable here.**

8

In its Response, the OSI wrongly claims that its "obligation to preserve evidence [] arose on March 31, 2023," because it "did not anticipate the federal matter." Response at 9. However, the date that the OSI *actually* anticipated (or *claims* to have *actually* anticipated) resulting litigation is irrelevant to the legal standard. Instead, the appropriate inquiry is when litigation on these issues became *reasonably foreseeable*. *See, e.g., U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-CV-00279, 2012 WL 12294413, at *6 (D.N.M. Aug. 31, 2012) (finding that, when litigation becomes reasonably foreseeable, "[t]he duty arose at that time to preserve documents, identify key players and other individuals who were likely to have documents and ESI relevant to this litigation, and to request that [party] suspend its routine document retention/destruction policies"). In its Response, the OSI essentially admits that it should have reasonably anticipated litigation at the time of its final order against Gospel Light, as the OSI affirmed: "OSI fully expected that Gospel Light would file an administrative appeal." Response at 9. This expectation of litigation through the appeals process is more than sufficient to trigger the OSI's obligation to preserve documents.

Also, the OSI's Response improperly claims that "requesting ESI that may have been created after the Plaintiffs commenced their suit is not relevant and OSI should not be required to produce those documents." Response at 9. However, the OSI provided no explanation or legal support for this claim, and it misstates the scope of discoverable information, which encompasses "the full disclosure of all potentially relevant information." *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004).

Accordingly, the OSI's objections to RFP Nos. 48, 49, 53, 54, and 55 are unavailing. The OSI's objection to RFP No. 48 is unfounded, because the OSI should have reasonably anticipated litigation and made efforts to preserve related Microsoft Teams messages when it anticipated

9

appellate litigation of its final order against Gospel Light at the time the order was issued. *See* Response at 10. The OSI's objections to RFP No. 49 are also unavailing, as the OSI failed to explain why only OSI employees on March 31, 2023 are relevant custodians. *See id*. On the contrary, OSI employees during prior OSI press releases against HCSMs, and subsequent enforcement actions against HCSMs, are also relevant. In its Response, the OSI claims that it is "currently exploring means to conduct a search of that data," but it made precisely the same bald claim on February 19, 2025—over five months ago—in the OSI's initial response (Doc. 152) to Plaintiffs' initial filing of their motion to compel the Requests (Doc. 128). Plaintiffs have received nothing related from the OSI since that time, and the OSI has made no representation that it is actually "currently exploring means to conduct a search of that data," as it claimed over five months ago and now asserts again. Response at 10. Notably, discovery has now closed, and the OSI never produced anything that arose from these alleged "explorations" to conduct searches of the data.

      Regarding its objections to RFP No. 53, the OSI did not provide an affidavit or any support in claiming that "any DropBox in existence on September 24, 2023 when OSI experienced a cyber attack was lost." Response at 10. Based on deposition testimony, Plaintiffs understand that document recovery efforts were largely successful and that the OSI does have access to these documents. The OSI's objections to RFP No. 54 must be disregarded, because the OSI merely claims, without providing support, that the request is not relevant because it concerns events occurring after March 31, 2023. However, Plaintiffs have already explained the relevance of the 2019-to-present timeline, *supra*. Although the OSI's Response does not reference RFP No. 55, it can be presumed that it intended to refer to RFP No. 55, rather than No. 54, in its second paragraph

on page 11 of its Response. These objections are similarly unavailing, as they also presume, without explanation, that the request is not relevant because it occurred after March 31, 2023.

**IV.     Significantly, the OSI's Response never addresses many of Plaintiffs' arguments, indicating that it concedes to the truth and validity of these arguments, so the Court should accept them as true and uncontested.**

In its Response, the OSI never addressed any of the following arguments and factual assertions in Plaintiffs' Motion, and, consequently, the OSI must be deemed as having admitted to the truth of these arguments and facts. *See, e.g., Butchard*, 287 F.R.D. at 671 (denying plaintiffs' motion where they did not respond to opposing counsel's argument in their reply brief, and "consider[ing] the complete failure to address this issue an 'acquiescence'" by plaintiffs, because "[f]ailure to respond to an argument is generally deemed an acquiescence" (internal cites and quote omitted)); *Davis*, 9 F. App'x at 881 (affirming lower court's ruling that party who failed to respond to facts in a motion thereby admitted to those facts); *Hagelin*, 25 F.3d at 959 (10th Cir. 1994) (holding that, "[b]ecause the state failed to submit any materials contradicting plaintiffs' statement of facts in support of their motion for summary judgment, these facts are deemed admitted").

As such, the Court should accept each of the following as true: (1) the fact that the OSI failed to timely respond to Plaintiffs' discovery requests and thus waived all of its objections to Plaintiffs' requests (*see* Motion at 6-7); (2) the fact that the OSI never responded to RFP No. 50 at all, despite being notified by Plaintiffs that they had failed, yet had an obligation, to do so (*see* Motion at 7); and (3) Plaintiffs' arguments to compel RFP Nos. 51, 56, and 57 (*see* Motion at 7-8, 11-13).[1] The OSI also failed to address Plaintiffs' argument that it was required, and failed, to (1)

---

[1] Nowhere in the OSI's Response are these RFPs addressed, and nowhere in its Response did it address the arguments made in Plaintiffs' Motion concerning these RFPs. *See* Response. "To the extent that Defendants claim they have already produced the requested information, they bear the burden of demonstrating the accuracy

11

explain the extent that it found the search terms to be overly broad and (2) attempt to limit the search terms to a scope it found reasonable. *Compare* Motion at 10 *with* Response at 7. So, the OSI admits to these failures. Additionally, the OSI did not address Plaintiffs' argument that "the OSI was already ordered by this Court to conduct searches of largely the same terms during the May 6, 2024 discovery hearing" and that "Plaintiffs' fourth discovery Requests are largely an attempt to bring the OSI into compliance with that order." Motion at 10. Accordingly, the OSI admits this to be true, as its Response never addresses this argument or Exhibit 5 to Plaintiffs' Motion. Likewise, the OSI never responded to Plaintiffs' argument regarding the OSI's unsupported claims of privilege and confidentiality. *See* Motion at 11, 13. Accordingly, the implication in the OSI's silence on the matter is that it made improper and insincere privilege and confidentiality assertions, which is sanctionable conduct in and of itself. *See, e.g., Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.,* 136 F.R.D. 179, 186 (E.D. Cal. 1991) (ordering sanctions for party's "blanket claim of privilege" while offering "absolutely no authority for its position in its initial objections, in the joint stipulation or at the hearing").

Finally, the OSI never addressed Plaintiffs' Motion argument concerning its diligence requirements regarding its "ongoing" efforts to recover from the cyberattack. *See* Motion at 12. As discovery has now closed, and the OSI has made no production or explanation of its alleged ongoing efforts, the OSI clearly violated its diligence requirements here. The fact that the OSI refused to address Plaintiffs' arguments concerning its diligence is even more telling. *See* Response. Sanctions are warranted here.

---

of that claim." *Black Love Resists In the Rust by & through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23, 31 (W.D.N.Y. 2019).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant their Motion and order the specific relief requested therein, including sanctions.

Respectfully submitted,

*/s/ Elise C. Funke*
Elise C. Funke
Carter B. Harrison IV
Nicholas T. Hart
**Harrison & Hart, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
elise@harrisonhartlaw.com
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

-and-

J. Michael Sharman
Commonwealth Law Offices, P.C.
246 E. Davis Street, Suite 200
Culpeper, VA 22701
(540) 727-1007
mikesharman@verizon.net
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 25, 2025, I electronically filed the foregoing with the United States District Court for the District of New Mexico's CM/ECF system, causing a copy of it to be served on all counsel of record.

>HARRISON & HART, LLC
>
>By: /s/ *Elise C. Funke*
>   Elise C. Funke