IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH, and
TAMMY WATERS,

    Plaintiffs,

v.                                                                                          Case No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE and
ALICE KANE, Superintendent of Insurance,
in her official capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Breanna Renteria and Laura Smith, as members of the Gospel Light Mennonite Church Medical Aid Plan ("Gospel Light"),[1] sued the New Mexico Office of the Superintendent of Insurance ("OSI") for issuing an administrative order restraining Gospel Light's operations in New Mexico. *See generally* Doc. 1 ("Complaint"). Defendants now move for summary judgment, arguing that undisputed facts show Renteria and Smith lack standing to bring their claims. *See generally* Doc. 127 ("Motion"). For the reasons explained below, the Court disagrees and denies the Motion.

---

[1] Gospel Light, which does business as Liberty HealthShare, and Tammy Waters were also parties to this action. *See* Doc. 1 at 4-8. Gospel Light was dismissed pursuant to the *Younger* abstention doctrine. *See* Doc. 38 at 23. Waters withdrew of her own volition because "no present dispute" existed between her and OSI. *See* Doc. 75; Doc. 80. Renteria and Smith are the sole remaining plaintiffs in this case.

**BACKGROUND**

Gospel Light operated in New Mexico as a healthcare sharing ministry without oversight from any state administrative body—including OSI. *Id.* at 2 ¶ 1. That changed in November of 2021, when OSI ordered Gospel Light to comply with New Mexico laws overseeing health insurance carriers or cease its operations in the state. *Id.* ¶ 3. Unwilling to obey this directive, Gospel Light challenged that order through administrative means but did not prevail. *Id.* ¶¶ 4-7. On February 22, 2023, OSI issued a final order directing Gospel Light to cease all operations until it complied with the New Mexico Insurance Code. *Id.* ¶¶ 6-7. On March 31, 2023, Gospel Light filed the instant lawsuit with three of its members—Renteria, Waters, and Smith. *Id.* ¶ 8; *see also* Doc. 1.

Renteria and Smith were deposed in late 2024. Doc. 127 at 4 ¶¶ 13, 15. Renteria testified that she continued to pay monthly shares to Gospel Light as recently as September 2024, well after OSI issued its final cessation order. *Id.* at 10, 22:12-24 (Renteria's deposition transcript). Similarly, Smith testified that she made a share payment to Gospel Light on November 1, 2024. *Id.* at 11, 11:22-24 (Smith's deposition transcript). OSI relies on these statements—and little else—to argue that it is entitled to summary judgment. The gist of the argument is that Renteria and Smith lack standing because they still participate in Gospel Light's sharing ministry. *See id.* at 5-8.

Beyond the 2024 share payments, Renteria and Smith's deposition testimony contextualized how OSI's final order to Gospel Light interfered with their religious practices. Renteria testified that she joined Gospel Light because its faith-based sharing model appealed to her Christian beliefs. Doc. 143-1 at 7, 50:23-51:10. Gospel Light accepted her requests for medical expenses and for prayer requests, *id.* at 2-3, 29:13-15, 30:13-25, but the uncertainty surrounding the dispute with OSI led her to switch to a different healthcare sharing ministry. *Id.* at 1, 12:24-

13:9. She further testified that OSI's cease and desist order meant (in her view) that Gospel Light could no longer provide health sharing to New Mexicans, so even if she was still a member, she would be unable to meaningfully participate in the program. *Id.* at 5, 44:24-45:11. She felt "cut off" from the Gospel Light community and its supportive religious network. *Id.* at 5-6, 45:20-46:5.

Smith's deposition testimony was similar. She joined Gospel Light because it was a Christian organization that "invest[ed] in things [she] believed in." Doc. 143-2 at 1, 11:10-14. Her husband had medical expenses paid by the program. *Id.* at 13:19-24. She understood OSI's final order as prohibiting her from participating in Gospel Light's sharing ministry (though the order did not address the corporation's members[2]), which would force her to use conventional health insurance that covered medical expenses she objected to on religious grounds. *Id.* at 2, 18:14-20:1 (testifying to her religious objections to conventional health insurance providing care to transgender people).

## DISCUSSION

Plaintiffs shoulder the burden to establish Article III standing. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). To that end, they must establish (1) a concrete, particularized, and actual or imminent injury in fact; (2) the injury is causally connected to OSI's conduct; and (3) the injury is redressable by a favorable decision. *People for the Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 996-97 (10th Cir. 2017). To survive summary judgment, Plaintiffs "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts regarding the elements of standing." *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007) (citation modified).

---

[2] Gospel Light is a foreign corporation incorporated in Virginia. *See generally* Doc. 1-3.

OSI focuses its argument on Plaintiffs' assertion of an injury in fact; causation and redressability are seemingly not at issue. *See generally* Doc. 127. The Court's standing inquiry is thus confined to the first element: concrete and particularized injury. Against that backdrop, Plaintiffs seek to vindicate their due process and First Amendment rights, with particular emphasis on their religious liberty. *See* Doc. 1 at 46-64. OSI does not address any of Plaintiffs' discrete claims and instead broadly challenges their alleged spiritual harms. *See* Doc. 127 at 5-8; Doc. 1 at 46-77. Accordingly, the Court's standing analysis proceeds across the well-trod (if uneven) ground of Establishment Clause jurisprudence.

Establishment Clause standing arises when plaintiffs can show harm to their non-economic religious values. *See COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1220 (10th Cir. 2016). While plaintiffs cannot rest on the detrimental psychological impact of merely observing disagreeable conduct, *see id.*, relatively minor or prospective religious harm can provide a legal foundation to sue. In *O'Connor v. Washburn University*, for instance, students and faculty had standing to challenge a university's choice to display a religiously offensive statue in a prominent common area. 416 F.3d 1216, 1223 (10th Cir. 2005) ("Appellants' allegations that they were frequently brought into direct and unwelcome contact with the statue are sufficient to give them standing for an Establishment Clause challenge."). In *American Atheists, Inc. v. Davenport*, plaintiffs could seek to remove twelve-foot-tall memorial crosses placed on state highways by showing that they changed travel routes or bypassed particular rest stops to avoid viewing the crosses. 637 F.3d 1095, 1113-14 (10th Cir. 2010). Noting "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases," the Tenth Circuit also determined that a Muslim man in Oklahoma had standing to bring a pre-ratification challenge to a state constitutional amendment that explicitly banned Sharia law. *Awad v. Ziriax*, 670 F.3d 1111, 1120-24 (10th Cir. 2012) (quoting

4

*Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 504-05 (5th Cir. 2007)). The common principle linking these cases is this: the requisite injury arises from state conduct that is religiously offensive or detrimental, even where the impediment is not particularly severe or quantifiable.

Applying that principle here, the Court finds that OSI's final order creates religious harm conferring standing on Plaintiffs. OSI acknowledges that Plaintiffs believe "they have a biblical obligation to help their fellow man when in need which is accomplished by sharing each other's medical expenses." Doc. 127 at 5. Further, Plaintiffs present evidence—unrebutted by OSI—showing that OSI's final order directing Gospel Light's to cease operations tangibly interfered with their religious beliefs and practices. While Smith and Renteria admitted that they continue to pay into Gospel Light's sharing ministry, they also testified that OSI's final order prevented them from participating in other aspects of the program, including the ability to share in organized prayer networks which connected them to other Gospel Light members. *See* Doc. 143-1 at 5-6, 44:16-47:11; Doc. 143-2 at 3, 23:2-9. Importantly, Renteria stated that OSI's actions caused her to switch her family to a different healthcare sharing ministry. Doc. 143-1 at 1, 13:2-9.

Taken in full, the deposition testimony tends to show that OSI's final order impacted Plaintiffs' ability to fully participate in Gospel Light's sharing ministry. That participation is a distinct part of Plaintiffs' religious belief structure. *See id.* at 1, 10:12-24 (Renteria testifying that she chose a healthcare sharing ministry because it fit with her beliefs); Doc. 143-2 at 1, 11:10-14 (Smith testifying that she joined the healthcare sharing ministry because of her Christian beliefs). By interfering with their ability to participate in Gospel Light's program, OSI harmed Plaintiffs'

religious values.³ On that basis alone, summary judgment is improper. *See COPE*, 821 F.3d at 1220.

Moreover, the scope and nature of the harm resulting from OSI's final order is unclear based on the current record. The deposition testimony offered by the parties, which substantially comprises the material evidence presented, does not establish undisputed facts showing that Renteria and Smith lack standing to bring their claims. Rather, Plaintiffs' statements raise a plausible inference that they share a concrete and particularized injury: the inability to utilize Gospel Light's health sharing ministry to its full extent due to OSI's final order. Because the scope of those injuries remains in dispute, summary judgment is inappropriate at this stage.⁴ *See Day*, 500 F.3d at 1132.

## CONCLUSION

Having failed to meet their burden to establish undisputed facts negating Smith and Renteria's standing, Defendants' Motion for Summary Judgment, Doc. 127, is denied.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

³ A recent case in this District provides a useful distinction. In *Samaritan Ministries International v. Kane*, a religious healthcare sharing ministry and several of its members sought preemptive relief prohibiting the New Mexico Superintendent of Insurance from enforcing state insurance regulations against them. 760 F. Supp. 3d 1267, 1271-72 (D.N.M. 2024). The court rejected their claims for lack of standing, reasoning that because no enforcement actions had been taken against the sharing ministry, no concrete injury had accrued or was reasonably foreseeable. *Id.* at 1274-78. Here, by contrast, it is undisputed that OSI took enforcement action against Gospel Light by prohibiting it from operating in New Mexico. Doc. 127 at 3 ¶ 6. That action prevented Plaintiffs from participating in their chosen healthcare sharing ministry.

⁴ Plaintiffs raise three distinct theories of law supporting their assertions of standing. *See* Doc. 143 at 18-24 (discussing objective fearfulness, credible threat of prosecution, and third-party standing under the First Amendment). The Court does not reach the merits of those arguments because the factual record contains material disputes sufficient to preclude summary judgment.