IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE.
BREANNA RENTERIA and
LAURA SMITH

      *Plaintiffs*,

v.                                                                                                  No. 1:23-cv-00276 MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

      *Defendants*.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' AMENDED CROSS-MOTION FOR SUMMARY JUDGMENT**

**COME NOW,** Defendants, New Mexico Office of the Superintendent of Insurance ("OSI") and Alice T. Kane, Superintendent of Insurance, in her official capacity ("Superintendent") (together "OSI"), by and through their counsel of record and state the following for OSI's Reply in Support of their Amended Cross-Motion for Summary Judgment.

**BACKGROUND**

The controversy at issue between the Parties involves New Mexico's regulation of the business of insurance within the state and the Plaintiffs' claims that the State's insurance regulation of the Health Care Sharing Ministry to which they belong, Gospel Light d/b/a Liberty Healthshare, prohibited Plaintiffs from engaging in the sharing of their health care costs according to their religious beliefs and practices. [Pls. Response p. 2]  In order to determine whether to grant OSI's Amended Cross-Motion for Summary Judgment, the Court examines whether the insurance

regulations applied to Gospel Light are neutral and generally applicable and whether New Mexico's regulation of Gospel Light is rationally related to legitimate government interests.

The regulation of the business of insurance by the State of New Mexico is secured by the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U.S.C. § 1011 *et seq.*:

> Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest . .
> * * *
> (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

15 U.S.C. §§ 1011-1012(a).

New Mexico's regulation of the business of insurance is rationally related to its legitimate interests in:

> the protection of residents of this state against acts by insurers not authorized to do an insurance business in this state, by the maintenance of fair and honest insurance markets, by protecting insurers which are subject to regulation from unfair competition by unauthorized insurers, and by protecting against the evasion of the insurance regulatory laws of this state.  In doing so, the state exercises its powers to protect residents of this state and to define what constitutes transacting an insurance business in this state, and also exercises powers and privileges available to this state by virtue of Public Law 79-15, (1945), 79th Congress of the United States, Chapter 20, 1st Sess., S. 340, 59 Stat. 33, 15 U.S.C. Secs. 1011 to 1015, inclusive, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.

NMSA 1978, § 59A-15-1 (1984).

Insurance is essential to virtually all aspects of individual and state-wide economic activity. On the individual level, insurance makes it possible for consumers to own a home, drive a car, run a business, receive health care they need at a cost they can afford whether for common events or due to a serious health condition and, without health care insurance, few consumers would be able to afford the cost of needed healthcare. [OSI Doc. 179-1 p. 2 of 10 ¶ 10].  The State has an interest in regulating the business of insurance and the products they issue to make sure insurers are solvent and following the state's rules and requirements to ensure that their residents are receiving the

benefits of their insurance and protected from abuse or predatory practices. [OSI Doc. 179-1 p 2 of 10, ¶ 10-11, Declaration of Gary M. Cohen]

The first way states regulate the business of insurance is through licensing by requiring that businesses providing insurance obtain a Certificate of Authority to conduct the business of insurance in the State. [OSI Doc. 179-1 p. 2 of 10 ¶ 12] In order to obtain a license, the applicant must demonstrate financial soundness, professional competence, good character, minimum capital and surplus requirements, proper corporate governance and the infrastructure necessary to service the products. [OSI Doc. 179-1 p 2 of 10 ¶ 12] Financial oversight is the cornerstone of insurance regulation in light of the state's interest in protecting consumers from the risk of insolvency. [OSI Doc. 179-1 p 3 of 10 ¶ 13] States regulate health plans to ensure they provide access to providers capable of providing covered services, to ensure rates are not excessive, inadequate or discriminatory and to provide oversight on how consumers are treated including the claims handling and resolution procedures. [OSI Doc. 179-1 p 3 of 10 ¶ 12]

The undisputed material facts in this case establish that New Mexico, through OSI, applied neutral and generally applicable insurance code regulations to the conduct engaged in by Liberty Healthshare, and the State's regulatory enforcement is rationally related to legitimate government interests.

**ARGUMENT**

I.   **The Court may grant OSI's amended cross-motion for summary judgment based upon the undisputed material facts in the record.**

OSI has, within its briefing to the Court, substantially followed procedural requirements, has provided specific citations to competent evidence in the record where facts are set forth in conformance with the applicable Federal Rules of Civil Procedure, and has offered substantive evidence to show that there is no genuine issue as to any material fact and that OSI is entitled to

3

judgment as a matter of law. The briefing before this court has been extensive and OSI has attempted to proceed in an efficient manner. In addition, the Court need not consider only cited materials but may consider other materials in the record when ruling upon OSI's Amended Cross-Motion for Summary Judgment. Fed. R. Civ. P. 56(c)(3). The Court may also give an opportunity to properly support or address a fact. Fed. R. Civ. P. 56(e)(1).

> II. **OSI appropriately incorporated the undisputed material facts into its legal analysis to promote efficiency in the briefing process.**

Given the length of Plaintiffs' asserted statement of facts totaling four hundred and eighty-four enumerated (484) assertions and encompassing pages six (6) to one hundred and two (102) in Plaintiff's Motion for Summary Judgment [Doc. 160], OSI sought to provide an efficient legal analysis incorporating by citation to supporting documents and evidence the undisputed material facts that establish OSI is entitled to Judgment as a matter of law. The undisputed material facts, as set forth within the record, establish the state of New Mexico, through OSI, was regulating the business of insurance and applying neutral and generally applicable insurance regulations to the conduct engaged in by Liberty Healthshare and that regulatory enforcement was rationally related to legitimate government interests.

> III. **The Court may grant OSI's Cross Motion for summary Judgment on Plaintiffs Claims 1, 2, and 3 because the State's insurance regulations applied to Liberty Healthshare are neutral and generally applicable and the State's interests in regulating the HCSM to which Plaintiffs are members are rationally related to legitimate government interests.**

The undisputed material facts establish that New Mexico's regulation of the business of insurance consists of neutral and generally applicable insurance regulations that require any person engaging in the business of insurance to obtain a certificate of authority and comply with New

Mexico law. The undisputed material facts also establish that the State's regulation of the business of insurance is rationally related to legitimate government interests.

### A. New Mexico's Insurance Code is Neutral and Generally Applicable.

Plaintiffs assert the Court should deny OSI's Cross-Motion as to Plaintiffs' Claims 1, 2 and 3 on the basis that the New Mexico Insurance Code exempts secular organizations from regulation when they provide insurance or insurance like products free from OSI regulation. [Pls' Response Doc. 203 p 9-11; Complaint Doc 1 pgs 50-52 of 78] This assertion does not involve similarly situated persons, is not supported by the applicable law or evidence in the record, and those organizations are regulated under their applicable regulatory provision regardless of religious belief or affiliation. A labor organization is not similarly situated and is subject to ERISA federal preemption. Chapter 59A, Article 44, Section 27 of the New Mexico Insurance Code concerning Fraternal Benefit Societies expressly subjects a society to the same statutory provision applied to Gospel Light. In particular, NMSA Section 59A-16-21.2(A), requires a society obtain a Certificate of Authority to provide insurance products in New Mexico. The requirement to obtain a certificate of authority applies to any person engaging in the business of insurance and it applies regardless of religious or non-religious beliefs or religious or non-religious purpose. The evidence provided to the Court by OSI established that Fraternal Benefit Societies that have New Mexico certificates of authority include both religious and non-religious entities. [OSI Doc. 179-6 p 2 of 22, ¶¶ 6-8].

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021). The undisputed material facts establish that the insurance code provisions enforced in this case are neutral.

The New Mexico legislature defined "insurance" as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies, or to act as surety." NMSA 1978, § 59A-1-5 (1984). The New Mexico legislature enacted statutory provisions prohibiting unlicensed or unapproved health benefits plans:

> A. No person or entity shall sell or issue, or cause to be sold or issued, a health benefits plan that is unlicensed or unapproved for sale or delivery in the state.
>
> B. No person or entity shall sell or issue, or cause to be sold or issued, health insurance coverage that is not permitted health insurance coverage.
>
> C. As used in this section:
>
> (1) "health benefits plan" means a policy or agreement entered into, offered or issued by a health insurance carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services; and
>
> (2) "health insurance carrier" means an entity subject to the insurance laws and regulations of this state, including a health insurance company, a health maintenance organization, a hospital and health services corporation, a provider service network, a nonprofit health care plan or any other entity that contracts or offers to contract, or enters into agreements to provide, deliver, arrange for, pay for or reimburse any costs of health care services, or that provides, offers or administers health benefits plans or managed health care plans in this state.

NMSA 1978, § 59A-16-21.2 (2019).

The regulatory provisions enforced in this case do not attempt to regulate religion but rather require any person transacting the business of insurance in New Mexico to hold a valid certificate of authority to offer, market or sell health benefits plans.

**B.     The regulation of the business of insurance is generally applicable.**

Plaintiffs assert the New Mexico Insurance Code is not generally applicable because New Mexico has grievance procedures that licensed health insurers holding a certificate of authority must follow. [Pls' Response pages 11-12]. Plaintiffs are referring to the mandatory grievance

6

process that licensed health care insurers holding a certificate of authority must comply with as part of the state's regulatory oversight of the licensed insurer. [OSI Doc. 179-3 p. 3 of 50 ¶16] Grievances filed by consumers against their licensed insurers invokes the work of the OSI in assisting the consumers with their grievances against their New Mexico licensed insurers whereas when a consumer submits a complaint and OSI finds that the entity complained about does not have a certificate of authority the matter is escalated to investigations. [OSI Doc. 179-3 p. 3 of 50 ¶¶ 16-17] The existence of a mandatory consumer grievance procedure that all licensed insurers must follow does not support Plaintiffs' argument that the New Mexico Insurance Code is not generally applicable.

The applicable rule on this issue has been articulated as follows: a law is generally applicable if it applies to a person who offers products regardless of the person's religious belief of affiliation. *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F. 3d 194, 210-211 (2nd Cir. 2012)("The Kosher Act is a law of general applicability [because i]t applies to any seller who offers products for sale as 'kosher' regardless of the seller's religious belief or affiliation.") The undisputed material facts establish that the insurance code regulations enforced in this case are generally applicable because they apply to any person transacting the business of insurance in New Mexico regardless of the person's religious belief or affiliation.

**C. In requiring any person engaged in the business of insurance to obtain a certificate of authority and comply with New Mexico insurance law, OSI has not acted in a discriminatory way or non-neutral manner.**

Plaintiffs argue that OSI acted with animus (Claims 1, 2, and 3 Free Exercise and Establishment Clause) and discriminatory intent (Claims 6 and 7 Equal Protection) toward religion. [Pls' Response ps. 13-14] As a general rule, when evaluating the Free Exercise and Establishment Clause claims, a law that is neutral and generally applicable is constitutional if it is

rationally related to legitimate government interests unless the Plaintiffs present evidence that the acting governmental body has discriminated against particular religions. *Ashaheed v. Currington*, 7 F. 4th 1236, 1243-1244 (10th Cir. 2021).

In *Ashaheed*, the state actor allowed non-Muslim inmates to benefit from a religious exemption that allowed them to keep religiously significant personal items in the corrections facility but refused to follow the correction center's religious exemption from its beard-shaving policy. *Id.* at 1244. A jury could infer that the corrections official required the plaintiff to shave his beard and did not allow application of a religious exemption that would allow the plaintiff to keep his beard because of the official's animus toward the Muslim religion. *Id.* This is because the official's refusal to follow the center's beard-shaving religious exemption policy when the official accommodated the religious needs of non-Muslims shows the official burdened the Plaintiff's religion in a discriminatory way and non-neutral manner. *Id.*

Here, the undisputed material facts establish that OSI enforced against other non-religious entities the same requirement applicable to Liberty; that *any* persons engaging in the business of insurance must hold a valid certificate of authority and this requirement was applied regardless of religious belief or affiliation. [OSI Doc. 179-3 at ps. 5-7 of 50, ¶¶ 23-25] This included a group of self-storage facilities selling a Customer Storage Protection Agreement without having a certificate of authority to engage in the business of insurance. [OSI Doc. 179-3 at ps. 5-6 of 50, ¶ 23] It also included a secular Health Care Sharing membership that did not operate under a certificate of authority to engage in the business of insurance. [OSI Doc. 179-3 at ps. 6 of 50, ¶ 24] And, it applied to a medical air services association soliciting for the joinder in a membership for medical transportation coverage when it did not have a certificate of authority to engage in the business of insurance. [OSI Doc. 179-3 at ps. 6-7 of 50, ¶ 25] Similarly the evidence provided to

8

the Court by OSI established that Fraternal Benefit Societies that have New Mexico certificates of authority include both religious and non-religious entities. [OSI Doc. 179-6 p 2 of 22, ¶¶ 6-8]. The evidence establishes that New Mexico, through the OSI, did not act in a discriminatory way or non-neutral manner in enforcing the requirement that any person engaging in the business of insurance, including Liberty Healthshare, must obtain a certificate of authority to engage in the business of insurance in the State.

**D. Rationally related to legitimate government interests.**

The undisputed material facts establish that OSI's regulatory enforcement of the business of insurance in this case was rationally related to legitimate government interests. "A neutral, generally applicable law is subject only to rational-basis review, which requires merely that the action be rationally related to a legitimate government interest." *E. End Eruv Ass'n, Inc. v. Vill. Of Westhampton Beach*, 828 F. Supp 2d 526, 539, (E.D.N.Y.2011)(citing *Brown v. City of Pittsburgh*, 586 F. 3d 263, 284 (3rd Cir. 2009)(quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F. 3d 144, 165 n. 24 (3rd Cir. 2002)). OSI's enforcement of the insurance code regulations was rationally related to New Mexico's interest in the protection of its residents against acts by insurers not authorized to do insurance business in this state, the maintenance of fair and honest insurance markets, the protection of insurers which are subject to regulation from unfair competition by unauthorized insurers, and the protection against the evasion of the insurance regulatory laws of this state. *See* 15 U.S.C. §§ 1011-1012; NMSA 1978, § 59A-15-1 (1984); and OSI Doc. 179-1 Declaration of Gary M. Cohen.

**IV.    In requiring Liberty Healthshare to obtain a certificate of authority and comply with New Mexico insurance law, OSI has not violated Plaintiffs' Equal Protection rights (Claims 6 and 7).**

With respect to Plaintiffs' Equal Protection Claims 6 and 7, discriminatory intent, the applicable rule for these claims require a plaintiff to show that they were treated differently from similarly situated persons who are alike in similar respects. *Ashaheed* 7 F. 4th at 1249-1250. The Plaintiffs have the burden on their Equal Protection claims of demonstrating a discriminatory purpose. *Watson v. City of Kansas City, Kan.* 857 F. 2d 690, 694 (10th Cir. 1988).

In *Ashaheed,* the plaintiff's Equal Protection Claim allegations were that the corrections center official treated him differently from similarly situated non-Muslim prisoners who were allowed to benefit from prison policy exemptions allowing them to keep their religious items. *Id.* at 1250-1251. In *Watson*, the plaintiff presented evidence that the defendant police department responded differently to victims of domestic assault than to non-domestic assault victims, discrimination was a motivating factor, and she was injured by that conduct. *Watson*, 857 F. 2d at 694. The plaintiff's assertions were that she was injured as a result of the police department's unconstitutional discrimination against domestic violence victims. *Id.* at 694-695. The plaintiff in *Watson* presented evidence showing a thirty-one percent (31%) arrest rate for non-domestic violence assaults and a sixteen percent (16%) arrest rate for domestic assaults. *Watson* at 695. The plaintiff in *Watson* also presented evidence of police officer training in handling domestic violence situations that encourages the officers to defuse the situation and use arrest as last resort. *Id.* In addition, the plaintiff in *Watson* presented evidence of requesting assistance from police officers many times over an eight-month period because of threats upon her life and she made several attempts to file complaints against her estranged

husband which were ignored such that a jury could conclude the police department followed a policy or custom of affording less protection to victims of domestic violence than to victims of non-domestic attacks. *Watson* at 696.

The evidence before this Court establishes that entities engaging in the business of insurance were required to obtain a certificate of authority irrespective of the entities' religious or secular purposes. [OSI Doc. 179-3 at ps. 5-7 of 50, ¶¶ 23-25]  This included the self-storage facilities selling a Customer Storage Protection Agreements.  [OSI Doc. 179-3 at ps. 5-6 of 50, ¶ 23]  It included a secular Health Care Sharing membership. [OSI Doc. 179-3 at ps. 6 of 50, ¶ 24]  And, it included a secular medical air services association. [OSI Doc. 179-3 at ps. 6-7 of 50, ¶ 25]  Similarly OSI has cited to the evidence in the record showing that religious and non-religious Fraternal Benefit Societies also have obtained the requisite certificates of authority.  [OSI Doc. 179-6 p 2 of 22, ¶¶ 6-8].  Liberty Healthshare was required to obtain a certificate of authority to engage in the business of insurance in New Mexico which was the same requirement applied to other religious and non-religious entities engaged in the business of insurance in the State.

**V.     There is no conflict preemption present in this case (Plaintiffs' Claim 9).**

Plaintiffs assert that New Mexico violated federal preemption laws in applying the New Mexico insurance code to Gospel Light and its members because state law, as interpreted by the Superintendent of Insurance, makes Liberty Healthshare's compliance with both federal and state regulations impossible. [Ps' Response at 18-20]  Plaintiffs rely upon the Affordable Care Act for support but have not provided any explicit language in the ACA to establish that Congress' intent to preempt states from regulating an HCSM when an HCSM is engaging in conduct that falls within the state's definition of engaging in the business of insurance.  Plaintiffs' witness admits

11

the ACA does not exempt Health Care Sharing Ministries from state regulation and "states are free to regulate these entities as they choose." [OSI Doc. 179-9 p. 5 lines 12-15]. The ACA provision providing members of Liberty Healthshare with an exemption to the individual shared responsibility payment or individual mandate, does not shield Liberty Healthshare from compliance with the New Mexico Insurance Code if Liberty Healthshare is engaging in the business of insurance in the State. *See e.g. Wyeth v. Levine*, 555 U.S. 555, 572-573 (2009)(FDA approval of Phenergan's label does not preempt the state law duty to provide a stronger warning of the dangers posed by IV-push administration). Plaintiffs have not demonstrated that it is impossible for Liberty Healthshare to comply with federal and state statutes.

**VI.    OSI has not violated Plaintiffs' Constitutional Right to Free Speech and Assembly (Claims 4 and 5) in requiring Liberty Healthshare to obtain a certificate of authority and comply with New Mexico insurance law.**

The NMIC provisions applied to Gospel Light are neutral and generally applicable and were not enforced in a discriminatory way. The requirement that was applied to Liberty Healthshare was applied to other entities engaged in the business of insurance irrespective of religious or non-religious beliefs or purposes. The reason for enforcement was the conduct of engaging in the business of insurance and not religion. [OSI Ex. 2 at 79:9-13 and 80:17-20] OSI took enforcement action against other secular entities that were engaging in the business or insurance without a certificate of authority. [OSI Doc. 179-3 at ps. 5-7 of 50,] Similarly OSI has cited to the evidence in the record showing that religious and non-religious Fraternal Benefit Societies also have the requisite New Mexico certificates of authority. [OSI Doc. 179-6 p 2 of 22, ¶¶ 6-8]. Liberty Healthshare was required to obtain a certificate of authority to engage in the business of insurance in New Mexico which was the same requirement applied to other religious and non-religious entities engaged in the business of insurance in the State.

### VII. Due Process was provided (Claim 8).

Plaintiffs' assert OSI violated their constitutional rights under the Due Process Clause through denial of a fair hearing process to Gospel Light and its members. [Pls' Resp. at p. 21-22] In evaluating the due process claims, the inquiry concerns: (1) whether the individual Plaintiffs possess a protected interest to which due process protection was applicable; and, (2) was the individual afforded an appropriate level of process. *Brassell v. City of Santa Rosa*, 693 F. 3d 1200, 1210 (D.N.M. 2023)(quoting *Clark v. City of Draper*, 168 F. 3d 1185 (10 Cir. 1999)). It is undisputed that Plaintiffs did not seek to intervene in the hearing provided to Gospel Light and, the district court concluded there was no due process violation when it considered the due process assertions in its review of the Final Order. [OSI Doc. 179-8 at p. 3 ¶¶ 7-8; and p. 4 ¶¶ 9-11]

### VIII. Declaratory Judgment (Claim 10)

States are free to regulate Health Care Sharing Ministries. [OSI Doc. 179-9 at p. 198 lines 12-17] The individual mandate exemption as memorialized in the CMS letter to Liberty Healthshare does not excuse a Health Care Sharing Ministry from complying with state law. [OSI Doc. 179-9 at 222: 9-13]. The purpose of the exemption was to provide individual members of HCSMs from being penalized for not purchasing bona fide coverage from the exchange. [OSI Doc. 179-9 at 173 3-10] The state court has already affirmed the conclusion that Liberty Healthshare's program constitutes insurance under state law. [OSI Doc. 179-8 at p. 4 paragraph 11] As a matter of law, OSI is entitled to summary judgment on Plaintiffs' Claim 10.

## CONCLUSION

Defendants respectfully request the Court grant their Amended Cross-Motion for Summary Judgment because the undisputed material facts establish that New Mexico has constitutionally exercised powers and privileges available by virtue of the McCarran-Ferguson Act to regulate the business of insurance within the State.

Respectfully submitted,

_____
Stephen P. Thies
General Counsel
Susan H. Widner
Staff Counsel
Office of General Counsel
NM Office of Superintendent of Insurance
PO Box 1689, Santa Fe, NM 87504-1689
505-470-7366
Stephen.Thies@osi.nm.gov

Attorney for Defendants Office of the Superintendent of Insurance, and Alice T. Kane, Superintendent of Insurance, in her official capacity

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 6, 2025, I filed the foregoing through the Court's CM/ECF filing system, causing a true and correct copy of the same to be served electronically upon all counsel of record reflected on the Notice of Electronic Filing to be served by electronic means.

                                     NM Office of Superintendent of Insurance
                                     Office of General Counsel

                                     _____
                                     Stephen R. Thies
                                     General Counsel