IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL LIGHT MENNONITE
CHURCH MEDICAL AID PLAN,
d/b/a LIBERTY HEALTHSHARE,
BREANNA RENTERIA,
LAURA SMITH,
TAMMY WATERS,

    Plaintiffs,

v.                                        No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE, and
ALICE T. KANE,
Superintendent of Insurance,
in her official capacity,

    Defendants.

**ORDER DENYING PLAINTIFFS' MOTION TO REVERSE AND
OVERRULING OBJECTIONS TO ORDER COMPELLING DISCOVERY**

    This matter involves one of the numerous discovery disputes that has surfaced during this litigation. Defendants sought to compel Plaintiffs Breanna Renteria and Laura Smith to respond to certain requests for admission, Doc. 88, and they also requested an order directing non-party Gospel Light Mennonite Church Medical Aid Plan ("Gospel Light")[1] to provide complete responses to their subpoena requests, Doc. 81. The parties settled most of their disagreements without court intervention. *See* Doc. 107. Magistrate Judge Khalsa resolved the outstanding issues and granted Defendants' motions. *See* Doc. 120 ("Order"). She ordered individual Plaintiffs and

---

[1] Gospel Light, which does business as Liberty HealthShare, was formerly a plaintiff in this action. *See* Doc. 1 at 4-8. The Court dismissed Gospel Light pursuant to the *Younger* abstention doctrine. *See* Doc. 38 at 23. Tammy Waters withdrew because "no present dispute" existed between her and the New Mexico Office of the Superintendent of Insurance and Alice Kane. *See* Docs. 75, 80. Renteria and Smith are the sole remaining plaintiffs.

1

Gospel Light (collectively, "PGL") to provide comprehensive responses to the disputed requests. *See* Doc. 120 at 9. PGL timely objected to the Order and now asks the Court to reverse. *See* Doc. 121 ("Objections"). Having reviewed the record, the relevant law, and the parties' briefing, the Court is unpersuaded that the Order contains reversible error. PGL's Objections are overruled.

## STANDARD OF REVIEW

When a party timely objects to a magistrate judge's written order resolving nondispositive, pretrial matters, the district judge assigned to the case must consider the objections "and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A). The rule (and statute) incorporates two distinct modes of inquiry.

First, under the clearly erroneous standard, the district court defers to the magistrate judge's findings "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[2] *See Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). That this Court might have ruled differently is insufficient grounds to overturn the magistrate judge's decision. "[T]he court will overrule the magistrate judge's determination only if [their] discretion is clearly abused." *Hinsdale v. City of Liberal*, 981 F. Supp. 1378, 1379 (D. Kan. 1997) (citations omitted). Second, the contrary to law standard (as the name suggests) calls for de novo review to determine whether the magistrate judge applied an incorrect legal standard. *See Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023). The party seeking to overturn a magistrate judge's decision on a

---

[2] In another context, the clearly erroneous standard has been described as requiring a decision to "strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *See In re Antrobus*, 563 F.3d 1092, 1098 n.2 (10th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

nondispositive issue bears the burden of demonstrating error. *Heuser v. Johnson*, 189 F. Supp. 2d 1250, 1256 (D.N.M. 2001).

## DISCUSSION

Judge Khalsa's Order required Gospel Light to provide responses to four subpoena requests. Two of these requests seek documents showing Plaintiffs' contributions to "Liberty's HealthShare Program," including any funds Plaintiffs provided to Gospel Light in the form of "Monthly Share Amounts." Doc. 81-1 at 3-4. The other subpoena requests at issue relate to Gospel Light's payments of Plaintiffs' medical bills. *Id*. at 6-9. As for Plaintiffs, Judge Khalsa ordered them to fully respond to two requests for admission. Doc. 120 at 7-9. These requests ask each Plaintiff to admit they have not "been directed to stop contributing [their] Monthly Share Amount by any representative of Liberty HealthShare" and to admit that "Liberty HealthShare has not refused to pay any Medical Expense Submission(s) submitted by you . . . ." Doc. 88-1 at 6-7, 14-15. None of the disputed requests seek information from or about other individuals participating in Gospel Light's healthcare sharing program.

PGL raises four objections to the Order. They argue that Judge Khalsa (1) incorrectly concluded that Defendants showed good cause and excusable neglect for missing a 21-day deadline to file a motion to compel; (2) erred in finding that the disputed requests were proportional and relevant; (3) incorrectly found that the requests do not violate Plaintiffs' privacy rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); and (4) failed to conduct a balancing test to determine whether the discovery sought by Defendants was privileged under the First Amendment to the United States Constitution. Doc. 121 at 16-26. The Court addresses each objection in turn.

**I.      Good Cause and Excusable Neglect**

3

Judge Khalsa found that Defendants demonstrated good cause and excusable neglect for missing the 21-day deadline found in District of New Mexico Local Rule of Civil Procedure ("D.N.M.LR-Civ.") 26.6. Doc. 122-1 at 2-3 (8:18-9:3). She provided two grounds for her decision. Judge Khalsa found that PGL's counsel "in some way contributed to the delay" by suggesting that the parties meet to discuss the discovery disputes after the 21-day deadline had already passed. *Id.* at 2 (5:20-6:9). Second, she afforded Defendants' attorneys some leeway because one of them experienced a medical emergency. *Id.* at 1-2 (3:18-5:17, 8:11-21). These conclusions are reasonable and supported in the record, but PGL nevertheless finds fault in Judge Khalsa's approach. They argue that she "misapplied the legal standard and overlooked Tenth Circuit precedent" in reaching her decision. Doc. 121 at 17. The Court disagrees.

Regardless of whether the Court applies the good cause or excusable neglect standard, Defendants' burden remains low. "Showing good cause for an extension of time is not a particularly demanding requirement[,]" and it is an easier burden to meet than demonstrating excusable neglect. *See Kucera v. CIA*, 429 F. Supp. 3d 970, 972 (D.N.M. 2019). But even "'excusable neglect' under [Federal Rule of Civil Procedure] 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (footnotes omitted). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances . . . ."[3] *Id.* at 395; *see also Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) ("A

---

[3] In *Pioneer*, the United States Supreme Court was addressing the excusable neglect standard under Rule 9006 of the Federal Rules of Bankruptcy Procedure. 507 U.S. at 395. In its analysis, however, the Court observed that the rule "was patterned after Rule 6(b)" of the Federal Rules of Civil Procedure. *Id.* at 391. Other courts have since cited *Pioneer* when analyzing excusable neglect under different Federal Rules, including Rule 6(b). *See, e.g., Segura v. Workman*, 351 F. App'x 296, 298 (10th Cir. 2009); *Petrone v. Werner Enters., Inc.*, 105 F.4th 1043, 1056 (8th Cir. 2024);

finding of excusable neglect depends on four factors: (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, . . . and (4) whether the movant acted in good faith." (citation modified)).

Applying these legal principles here, the Court first notes that PGL does not cite the applicable standards for finding good cause or excusable neglect, nor do they explain how Judge Khalsa erred under these standards. *See generally* Doc. 121. Instead, PGL claims that Judge Khalsa erroneously relied on defense counsel's claim of a medical emergency. They represent that the Tenth Circuit has held that "unsupported assertions of attorney illness within a motion filing are insufficient to meet the good cause and inexcusable neglect standards here." Doc. 121 at 16-17. That assertion is incorrect and arises from a misunderstanding of *Lopez v. Cantex Health Care Centers II, LLC*, No. 23-2038, 2023 WL 7321637 (10th Cir. Nov. 7, 2023). Doc. 121 at 17.

In *Lopez*, the defendants untimely filed a response to a remand motion. 2023 WL 7321637, at *1. They indicated that the late filing was the result of a clerical error and that "several staff members [were] out with illness . . . ." *Id.* The district court found that such an explanation did not demonstrate excusable neglect. *Id.* On appeal, the Tenth Circuit affirmed the district court. *Id.* at *4-5. In reaching its decision, the *Lopez* Court specifically distinguished the ill staff members from a situation involving a sick attorney, which the court observed may be "sufficient for a finding of excusable neglect" under Tenth Circuit precedent. *Id.* at *4 (quoting *Perez*, 847 F.3d at 1253); *see Perez*, 847 F.3d at 1253 ("A lawyer's medical problems or serious health challenges may be an adequate justification for delayed filings, and therefore can be sufficient for a finding of excusable

---

*Tubens v. Doe*, 976 F.3d 101, 104-05 (1st Cir. 2020); *Raymond v. Int'l Bus. Machines Corp.*, 148 F.3d 63, 66 (2d Cir. 1998).

neglect."). *Lopez* is plainly distinguishable from this instant matter—where one of Defendants' attorneys had a medical emergency—and its dicta supports Judge Khalsa's ruling.

The other cases PGL cites in support of their argument are also inapposite. For example, in *Magraff v. Lowes HIW, Inc.*, the Tenth Circuit held that the district court did not abuse its discretion in finding that the attorney's "error in calendaring the deadline"—not illness—caused the plaintiff to untimely file a notice of appeal. 217 F. App'x 759, 761-62 (10th Cir. 2007). The Tenth Circuit explained that "abuse of discretion is . . . a very deferential standard of review" and, in applying it, deference is given "to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." *Id*. at 762 (internal quotation marks omitted) (quoting *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 1994)). And in *Flor v. Board of Regents of University of New Mexico*, Magistrate Judge Fashing found that the plaintiff failed to establish good cause for extending the time for filing a motion to compel because even though the "[p]laintiff obviously knew the proper procedure to extend the deadline to file motions to compel[,]" he "inexplicably failed to follow that procedure to extend the deadline . . . ." No. 1:20-cv-00027-MIS-LF, 2022 WL 2209564, at *2 (D.N.M. June 1, 2022). She also noted that the plaintiff had not engaged with the defendants in good faith communications regarding the motion and that he had not complied with Federal Rule of Civil Procedure 37(a). *Id*. at *3. For these reasons, she denied the motion to compel and held that it was filed untimely. *Id.* at *1. Again, neither the facts nor the holdings presented in these cases are germane.

In sum, PGL misrepresents *Lopez*'s holding, and the other cases they cite in support of their motion are similarly not on point.[4] Judge Khalsa did not misconstrue Tenth Circuit law or err in finding good cause and excusable neglect. The Court rejects PGL's argument to the contrary.

## II. Relevance of Defendants' Requests

Judge Khalsa found that the requested discovery was proportional and relevant to the issue of the individual Plaintiffs' standing, other claims and defenses, as well as the "core allegations that Gospel Light's [healthcare sharing ministry] is *not* an unauthorized insurance product . . . ."[5] Doc. 120 at 5-6, 8. PGL challenges that conclusion, asserting that Judge Khalsa misinterpreted the allegations in their Complaint, Doc. 1, and "utilized an incorrect definition of relevance," but PGL fails to include any legal analysis or citation to legal authority to support the latter claim. *See* Doc. 121 at 19-23. The Court therefore reviews the Order solely under the clearly erroneous standard. *See Heuser*, 189 F. Supp. 2d at 1256.

Defendants seek information addressing "changes in Plaintiffs' membership status with [Gospel Light] and/or their financial relationships with [Gospel Light]." Doc. 121 at 19-20. Although that discovery plainly goes to issues attendant to standing, PGL argues that the requested discovery is irrelevant because the operative pleading "never alleges that Defendants' actions altered [Gospel Light]'s financial situation or its membership. *Id.* at 20. That is incorrect. The Complaint repeatedly alleges that Defendants' regulatory actions impaired Gospel Light's

---

[4] "In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). To be sure, citation to an unpublished order is permitted if it has "persuasive value with respect to a material issue in a case and would assist the court in its disposition . . . ." *Id*. For the reasons discussed above, that exception does not apply here.

[5] In reaching this conclusion, Judge Khalsa cited the correct standards for relevance under Federal Rules of Civil Procedure 26(b)(1), 36(a), and 45. *See* Doc. 120 at 3-4.

operations and stymied Plaintiffs' participation in Gospel's Light's healthcare sharing plan. *See* Doc. 1 at 52 ¶ 229 (alleging that Defendants' actions will prevent individual Plaintiffs from "be[ing] able to carry out their religious beliefs by participating in the Gospel Light Mennonite Church Medical Plan"); *id*. at 57 ¶ 268 ("Defendants would effectively take over Gospel Light Mennonite Church Medical Aid Plan's management of its own membership rolls by dictating who could be admitted, excluded, and expelled."); *id*. ¶ 272 ("Plaintiff Gospel Light Mennonite Church Medical Aid Plan and its past, current, and prospective members (including the three individual Plaintiff members) constitute an expressive association that desires to associate for the purpose of engaging in shared religious and communicative exercise, including but not limited to the voluntary sharing of health care needs, practices, expenses, and other burdens.").

PGL's assertions also conflict with the position they took at the hearing before Judge Khalsa. There, PGL's attorneys represented that "our claims are that the individual plaintiffs . . . are now being systematically prevented from participating in any health care sharing because of the antagonistic actions of the OSI to their religious practice, which is health sharing." Doc. 122-1 at 7 (28:13-18). PGL's counsel also agreed with Judge Khalsa that "the complaint challenges and claims that the defendants made an incorrect determination that the program is an unauthorized insurance product." Doc. 122-1 at 8 (29:14-18). Finally, as pointed out by PGL, Doc. 121 at 22-23, this Court has already determined that Plaintiffs' claimed "inability to share healthcare costs" confers standing upon them. Doc. 38 at 6. Evidence that Plaintiffs are able to share healthcare costs—i.e., whether they have been able to continue paying into the healthcare sharing plan and

8

receiving payments for medical expenses—directly affects whether they have standing. PGL's attempt to argue otherwise is not compelling.[6]

### III. Violation of HIPAA

PGL next argues that the requested discovery violates privacy protections provided by HIPAA.[7] Doc. 121 at 24. Specifically, PGL complains that "the medical bill amounts themselves are protected by HIPAA privacy laws," and therefore the Order violates HIPAA by directing disclosure of Plaintiffs' medical bills. *Id.* at 24. Yet again, the case law PGL provides in support of their position is not on point and is easily distinguished from this case. *Id.* (citing *Plambeck v. Kroger Co.*, No. CIV. 11-5054-JLV, 2012 WL 640051, at *16 (D.S.D. Feb. 27, 2012); *Teasdale v. Marin Gen. Hosp.*, 138 F.R.D. 691, 694 (N.D. Cal. 1991)). For example, in *Plambeck*, the court determined that the plaintiff's requested medical records and medical bills were "protected health information" under HIPAA. 2012 WL 640051, at *6. That does not, however, bolster PGL's implicit assertion that health information protected by HIPAA can never be disclosed for discovery purposes. Neither does *Teasdale*, which does not address HIPAA and instead provides an analysis of California's peer review privilege, the relevance of which Plaintiffs fail to explain. 138 F.R.D. at 693-95.

Further, as Defendants note, HIPAA does not categorically prohibit disclosure of protected health information. Indeed, it expressly provides for the production of such materials in the course of judicial and administrative proceedings. *See* Doc. 129 at 7 (citing 45 C.F.R. § 164.512(e)(1)(ii)).

---

[6] PGL also argues that the subpoena and admission requests are irrelevant to the issue of whether Gospel Light provides insurance to its members. Doc. 121 at 23. But their argument consists only of quotations from their counsel's statements at the hearing before Judge Khalsa. *Id.*

[7] PGL does not provide a citation to specific provisions of HIPAA, or any related regulations, implicated by Judge Khalsa's order. *See* Doc. 121 at 24; Doc. 137 at 7-9.

PGL does not respond to this argument. *See generally* Doc. 137 at 7-9.[8] That omission is dispositive, so the Court overrules PGL's objection. *See Mackey v. IBP, Inc.*, 167 F.R.D. 186, 204 (D. Kan. 1996) ("The party resisting discovery has the burden to demonstrate the validity of such objections.").

### IV.     First Amendment Privilege

PGL's final objection is that Judge Khalsa failed to properly assess whether compelled disclosure of Defendants' requested discovery would infringe upon Plaintiffs' First Amendment associational rights. Doc. 121 at 24-26. According to PGL, Judge Khalsa erred by (1) determining that Plaintiffs did not make a prima facie showing that the First Amendment privilege applies, and (2) not considering the balancing test set forth in *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977). Doc. 121 at 24-26. The Court disagrees.

To assert the First Amendment privilege, PGL must "make an evidentiary showing of a reasonable probability of chill on an association right." *In re Motor Fuel Temperature Sales Pracs. Litig.* (*Motor Fuel II*), 641 F.3d 470, 489 (10th Cir. 2011) (internal quotation marks omitted) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.* (*Motor Fuel I*), 707 F. Supp. 2d 1145, 1152-53 (D. Kan. 2010)).[9] This threshold inquiry determines whether the Court must undertake further analysis; if the party "do[es] not make that prima facie showing, the Court need not conduct the balancing test." *Motor Fuel I*, 707 F. Supp. 2d at 1165; *see also Motor Fuel II*, 641 F.3d at 492

---

[8] The Court notes that the Order specifically provides that "Plaintiffs and Gospel Light may redact Plaintiffs' protected health information from any documents or information they produce to Defendants in response to the foregoing requests." Doc. 120 at 9 ¶ 3.

[9] *See also Motor Fuel II*, 641 F.3d at 492 (concluding that "the district court did not err in applying the prima facie burden"); *id.* ("[T]he weight of authority regarding the First Amendment privilege has always required the party asserting the privilege to initially demonstrate a reasonable probability that disclosure will chill its associational rights.").

n.15 ("[T]he court only reaches the second prong of the First Amendment privilege inquiry if the party claiming the privilege satisfies its prima facie burden."). The resisting party "meets its burden by submitting, for example, affidavits which describe harassment and intimidation of a group's known members, and the resulting reluctance of people sympathetic to the goals of the group to associate with it for fear of reprisals." *Motor Fuel II*, 641 F.3d at 491 (citation modified). Other means of proof may be acceptable depending on the circumstances presented, but a party's assertion of a chill must be "properly supported by evidence[.]" *Id.* at 490.

      Here, PGL presents no direct evidence to support its contention that the requested discovery is reasonably likely to chill Plaintiffs' First Amendment associational rights. *See generally* Doc. 122-1; Doc. 92 at 9-10; *see Motor Fuel II*, 641 F.3d at 491-92; *cf. Perry v. Schwarzenegger*, 591 F.3d 1126, 1143 (9th Cir. 2009) (concluding a party made a prima facie showing that the First Amendment privilege applied by "present[ing] declarations from several individuals attesting to the impact compelled disclosure would have"). Instead, they point to allegations made in a related New Mexico state court proceeding as well as their attorney's characterization of unspecified discovery at the hearing before Judge Khalsa. *See* Doc. 121 at 26; Doc. 122-1 at 5 (19:8-24)). But PGL cites no legal authority (and the Court is unaware of any) holding that allegations raised in other litigation or that counsel's representations are sufficient to meet their burden.[10] *See* Doc. 121 at 26; Doc. 137 at 11.

---

[10] Allegations in an unverified complaint, like the New Mexico state court complaint cited by PGL, are not evidence. *See, e.g.*, *Williams v. McCallin*, 439 F. App'x 707, 710 (10th Cir. 2011) (providing that an "unverified complaint is not evidence"); *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 284 n.14 (D.C. Cir. 2014) ("[A]llegations in . . . [an] unverified complaint . . . are not evidence at all."). Nor are the unsworn statements of counsel. *See, e.g.*, *Duran v. LaFarge N. Am., Inc.*, 855 F. Supp. 2d 1243, 1252 (D. Colo. 2012) ("The arguments of counsel are of course not themselves evidence . . . .").

11

Perhaps more significantly, PGL does not explain how responding to the disputed discovery requests would result—even potentially—in a chilling effect on Plaintiffs' associational rights. Doc. 121 at 26. The challenged discovery does not seek membership lists, personally identifying information from nonparties, or details about foundational religious beliefs. *See Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 U.S. Dist. LEXIS 49483, at \*17 (S.D. Fla. June 29, 2008) ("Courts have repeatedly held that the disclosure of an organization's membership list potentially implicates First Amendment associational rights."); *In re Deliverance Christian Church*, No. 11-62306, 2011 Bankr. LEXIS 5219, at \*14 (Bankr. N.D. Ohio Dec. 1, 2011) (concluding that a party met its prima facie burden by showing that disclosing the personal information of donors would have a chilling effect on "future giving and membership"); *Johnson v. Wash. Times Corp.*, 208 F.R.D. 16, 17 (D.D.C. 2002) ("There is nothing I know of in the American experience that suggests to me that by giving one's name and address to a church one thereby agrees to the publication of one's religious affiliation to the whole world."). The Tenth Circuit has "not articulated the precise quantum of proof necessary to establish a prima facie case of privilege under the First Amendment," but PGL's argument falls well short of establishing that the discovery requests at issue have a "reasonable probability" of chilling Plaintiffs' (or any other nonparty's) associational rights.[11] *See Motor Fuel II*, 641 F.3d at 491-92 (concluding that the district court did not err by finding that a "single unsworn statement" was insufficient to establish a prima facie case of potential First Amendment infringement).

In sum, the First Amendment privilege "is not absolute, . . . as it only protects a party from compelled disclosure that would chill the associational rights at issue." *Wal-Mart Stores v. Tex.*

---

[11] As other courts have noted, "privileges are narrow, and when there is minimal danger to infringing on a First Amendment right, the burden of establishing a privilege is high." *In re Deliverance Christian Church*, 2011 Bankr. LEXIS 5219, at \*11.

*Alcoholic Bev. Comm'n*, No. A-15-CV-134-RP, 2016 U.S. Dist. LEXIS 140450, at *18 (W.D. Tex. Oct. 11, 2016). Plaintiffs fail to show that discovery requests seeking records of their payments to and from Gospel Light will stymie their First Amendment Right to Association.

## CONCLUSION

The Court is not persuaded that the Order, Doc. 120, contains reversible error. PGL's Objections are therefore overruled and their Motion to Reverse, Doc. 121, is denied.

By 5 p.m. on January 13, 2026, Gospel Light must provide all documents responsive to Subpoena Requests Nos. 4, 5, 7, and 8 for the period from 12 months prior to entry of the challenged cease-and-desist order to the present. Doc. 120 at 9. PGL may redact information discussing specific medical conditions or treatments.

Plaintiffs must respond, without objection, to Defendants' Requests for Admission Nos. 3 and 4 no later than 5 p.m. on January 13, 2026. *Id*.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA