IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BREANNA RENTERIA and LAURA
SMITH,

       Plaintiffs,

       v.                                  No. 1:23-cv-00276-MLG-KK

NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE
and ALICE T. KANE, Superintendent of
Insurance, in her official capacity,

       Defendants.

**<ins>ORDER GRANTING MOTION TO COMPEL DEPOSITION</ins>**

Before the Court is Plaintiffs' Motion to Compel Non-Party Hearing Officer R. Alfred Walker's Deposition Subpoena (Doc. 184) ("Motion"), filed July 28, 2025. Defendants responded in opposition to the Motion on August 8, 2025, and Plaintiffs replied in support of it on August 29, 2025. (Docs. 189, 198.) The Court, having considered the parties' submissions, the record, and the relevant law, FINDS that the Motion is well-taken and should be GRANTED as set forth below.

**I. Introduction**

In their Motion, Plaintiffs seek to compel nonparty R. Alfred Walker to appear to be deposed in this matter. (Doc. 184.) Defendant the New Mexico Office of the Superintendent of Insurance ("OSI") employed Mr. Walker as a hearing officer at times relevant to Plaintiffs' complaint. (*Id.* at 2-3; Doc. 189 at 2.) On September 14, 2022, Mr. Walker presided over an evidentiary hearing in an OSI enforcement action against former Plaintiff Gospel Light Mennonite Church Medical Aid Plan ("Gospel Light"), a health care sharing ministry ("HCSM"). (Doc. 160-23 at 1-2; Doc. 189 at 2.) On January 20, 2023, Mr. Walker issued a 100-page Recommended

Decision and Order Setting Deadline for Exceptions ("Recommended Decision"), in which he recommended that the Superintendent (a) adopt Mr. Walker's findings of fact, conclusions of law, and recommendations, (b) order Gospel Light to cease and desist from operating in New Mexico until it complied with state insurance code requirements, and (c) levy a $10,040,000 fine against Gospel Light. (Doc. 160-23 at 55.) In a Final Order dated February 22, 2023, Interim Superintendent Jennifer Catechis adopted Mr. Walker's Recommended Decision but reduced the fine imposed to $2,510,000. (Doc. 1-11 at 7.)

On March 31, 2023, Plaintiffs and Gospel Light brought this action challenging the validity of Ms. Catechis' Final Order on a number of constitutional and legal grounds.[1] (*See generally* Doc. 1.) Among other things, Plaintiffs claim that Defendants discriminated against them on the basis of their religion in violation of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 46-53, 58-61.) Plaintiffs also claim that Defendants violated their procedural due process rights under the Fourteenth Amendment. (*Id.* at 61-64.) The complaint refers to Mr. Walker several times and suggests that he participated in Defendants' wrongful actions. (*See, e.g., id.* at 22-23, 35, 64.)

On November 6, 2024, Plaintiffs subpoenaed Mr. Walker to appear to be deposed.[2] (Doc. 184 at 3.) A week later, Defendants filed a motion to quash the subpoena and for a protective order.[3] (Doc. 104.) The Court stayed discovery on February 14, 2025, and denied Defendants' motion without prejudice on May 28, 2025, in light of the stay. (Docs. 151, 156.) After the Court lifted the stay, (Doc. 162), Plaintiffs filed the present Motion, arguing that the Court should compel

---

[1] Plaintiffs Renteria and Smith are members of Gospel Light's HCSM. (Doc. 1 at 7.) On the parties' joint motion, the Court dismissed a third individual plaintiff, Tammy Waters, on July 8, 2024. (Docs. 75, 80.)

[2] Plaintiffs filed the subpoena in question on November 7, 2024, but it was subsequently marked as filed in error, apparently pursuant to D.N.M.LR-Civ. 30.1. (Doc. 98.)

[3] Mr. Walker also filed a Notice of Non-Appearance regarding the deposition on November 15, 2024. (Doc. 105.)

Mr. Walker to appear to be deposed pursuant to their November 6, 2024 subpoena. (Doc. 184 at 4.) Defendants oppose the Motion, arguing that Mr. Walker's testimony is irrelevant and protected by the deliberative process and mental process privileges.[4]

## II. Legal Standards

Federal Rule of Civil Procedure 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Factors courts should consider in determining whether discovery is "proportional to the needs of the case" include:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* The Federal Rules of Civil Procedure authorize a party to subpoena nonparty witnesses to appear to be deposed on topics within this scope of discovery. Fed. R. Civ. P. 30, 45.

> The deliberative process privilege
>
> shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news. To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure.

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (quotation marks and citations omitted) (*"Sierra Club"*). The privilege also "serves to prevent the premature disclosure of proposed policies, and avoids misleading the public by dissemination of documents

---

[4] Plaintiffs do not dispute that Defendants have standing to oppose the deposition of Mr. Walker because Defendants are the holders of the privileges that, according to them, protect Mr. Walker's testimony. (*See* Doc. 184 at 6.)

3

suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (quotation marks omitted).

To fall within the deliberative process privilege, a document must be both "predecisional" and "deliberative." *Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Sierra Club*, 592 U.S. at 268. Such documents may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Biological Diversity*, 336 F. Supp. 2d at 1160. "[F]actual materials" do not fall within the scope of the privilege "unless: (1) they are inextricably intertwined with deliberative materials, or (2) their disclosure would reveal deliberative material." *Trentadue*, 501 F.3d at 1229 (citation omitted). The agency bears the burden to show that the privilege applies. *Ctr. for Biological Diversity*, 336 F. Supp. 2d at 1159.

Importantly, the deliberative process privilege is not absolute, and a party can overcome it "if his or her need for the materials and the need for accurate fact-finding override the Government's interest in non-disclosure." *Id.* at 1161. Courts have identified several factors to be weighed in assessing whether the privilege has been overcome, including:

(1)  "[t]he relevance of the evidence sought to be protected";

(2)  "[t]he availability or unavailability of comparable evidence from other sources";

(3)  "the government's role in the litigation";

(4)  "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions";

4

(5)     "the interest of the litigant, and ultimately society, in accurate judicial fact finding";

(6)     "the seriousness of the litigation and the issues involved";

(7)     "the presence of issues concerning alleged governmental misconduct"; and,

(8)     "the federal interest in the enforcement of federal law."

*Id.*; *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003); *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).

Courts have generally restricted or declined to apply the deliberative process privilege in cases in which the agency's subjective intent or "the decisionmaking process itself" is "genuinely" at issue, *e.g.*, in federal civil rights litigation. *In re Delphi Corp.*, 276 F.R.D. 81, 85-86 (S.D.N.Y. 2011); *see, e.g., In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997) ("[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred."); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) ("[T]he party seeking disclosure may overcome the claim of privilege … by making a *prima facie* showing of misconduct."); *Denver First Church of Nazarene v. Cherry Hills Vill.*, Civ. No. 05-2463, 2006 WL 7354733, at *6 (D. Colo. July 19, 2006) ("[A]s long as [the p]laintiff can set forth any evidence, including circumstantial evidence, of illegal motive, [the p]laintiff can overcome [the d]efendants' claim for deliberative process privilege.").

Some courts have "take[n] the position that the deliberative process privilege simply does not apply" in such cases. *Denver First Church of Nazarene*, 2006 WL 7354733, at *6 (citing cases). These courts reason that

> [t]he privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's [subjective] intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious … that the privilege has no place … in a constitutional claim for discrimination.

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.)*, on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) (citations and footnote omitted). Other courts have reasoned somewhat differently, holding that the usual factors must be considered in assessing whether the privilege has been overcome but that these factors usually "weigh in favor of overriding the privilege" when the plaintiff's cause of action turns on the lawfulness of the government's motive. *Denver First Church of Nazarene*, 2006 WL 7354733, at *6 (citing cases).

As a practical matter, "whether the privilege is categorically inapplicable" to such cases or is instead "dependent on a balancing of factors" is often a question of style rather than substance, *In re Delphi Corp.*, 276 F.R.D. at 85, because "[b]oth approaches tend to yield the same result." *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 14 (E.D.N.Y. 2014). Where the agency's subjective intent is at issue or "the [deliberative] process itself is challenged," the plaintiff's need for documents reflecting that intent or process "will often outweigh the government's interest in candid discussions." *In re Delphi Corp.*, 276 F.R.D. at 86.

"Related to the deliberative process privilege—indeed, perhaps inherently part of it" is "the mental process privilege." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122. The mental process privilege "protects the secret mental processes of those who, acting in a judicial or quasi-judicial capacity, make decisions as to facts or as to law." *Singer Sewing Mach. Co. v. N. L. R. B.*, 329 F.2d 200, 206 (4th Cir. 1964); *cf. Lutz v. Weld Cnty. Sch. Dist. No. 6*, 784 F.2d 340, 344 (10th Cir. 1986) (noting the existence of the mental process privilege but declining to comment on its merits or applicability). While the deliberative process privilege concerns communications between government officials, "[t]he mental process privilege encompasses the thoughts of government officials that are not communicated to others." *Denver First Church of Nazarene*, 2006 WL 7354733, at *7.

"[T]he mental process privilege does not extend to deliberations regarding administrative or executive acts performed by judges" or quasi-judicial officers. *Swanston v. City of Plano, Texas*, Civ. No. 19-412, 2020 WL 4732214, at \*3 (E.D. Tex. Aug. 14, 2020) (quotation marks omitted). Nor does it "extend to matters of fact that do not probe into the mental processes employed in formulating the judgment in question." *Id.* (quotation marks omitted). And, like the deliberative process privilege, the mental process privilege "is qualified—*i.e.,* it may be overcome." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122.

In light of the similar policy concerns that drive the deliberative process and mental process privileges, it is unsurprising that courts analyze them in similar ways. Thus, courts use the same factors that apply to the deliberative process privilege to assess whether the mental process privilege has been overcome. *See, e.g.*, *id.* at 1122-23; *Swanston*, 2020 WL 4732214, at \*2–\*3. And, as with the deliberative process privilege, some courts have held that the mental process privilege does not apply in cases that turn on the defendant's subjective motive or intent, while others have balanced the relevant factors to determine whether the mental process privilege has been overcome in such cases. *Compare, e.g.*, *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) (holding that mental process privilege is unavailable when the defendant's intent is central to the plaintiff's case) *and Denver First Church of Nazarene*, 2006 WL 7354733, at \*7 (same) *with N. Pacifica, LLC*, 274 F. Supp. 2d at 1122-26 (holding that courts should balance relevant factors to determine whether mental process privilege has been overcome in federal civil rights case) *and Swanston*, 2020 WL 4732214, at \*3, \*7-\*9 (same).

Nevertheless, the two privileges are not identical.

> [T]he level of intrusiveness entailed when a person's mental processes are probed may be greater than when objective indicia of deliberation (*e.g.,* communications)

are disclosed. Thus, the two privileges may be subject to different outcomes depending on the circumstances.[5]

*N. Pacifica, LLC*, 274 F. Supp. 2d at 1123. The Court will consider Plaintiffs' Motion in light of the foregoing standards.

### III. Analysis

In their response to Plaintiffs' Motion, Defendants argue that the Court should not compel Mr. Walker to appear to be deposed because his testimony is irrelevant to the parties' claims and defenses. (*See, e.g.,* Doc. 189 at 1, 7.) But this argument is unfounded. As the hearing officer who issued a recommended decision regarding the challenged enforcement action against Gospel Light after presiding over an evidentiary hearing, Mr. Walker doubtless has information relevant to Plaintiffs' claims, including their religious discrimination and due process claims, and to Defendants' defenses. For example, Mr. Walker presumably has information about the procedures the OSI used to resolve enforcement actions generally and the enforcement action against Gospel Light specifically, including the procedures he himself used. In addition, Mr. Walker may have information about the statements and actions of other OSI decisionmakers that could support or undermine an inference of unlawful discrimination against Gospel Light or its members. Such information is obviously and substantially relevant to the parties' claims and defenses.

Defendants also argue that the Court should not compel Mr. Walker to appear to be deposed because the deliberative process and mental process privileges protect his testimony. (Doc. 189 at

---

[5] In a case brought pursuant to the Administrative Procedure Act, the United States Supreme Court stated in dicta that "where there are administrative findings that were made at the same time as the [agency] decision … there must be a strong showing of bad faith or improper behavior" before a party can inquire into a decisionmaker's mental processes regarding the decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). However, this statement has not been extended to civil rights actions in which the decisionmaker's "improper behavior" is central to the plaintiff's claims.

11-14.) But this argument is flawed as well. In their Motion, Plaintiffs assert that they intend to depose Mr. Walker regarding, among other things:

> (1) the OSI's typical procedures for its employees who conduct investigations and enforcement actions, (2) the OSI's understanding of the definitions of insurance, healthcare plan, HCSM, the exemptions from the New Mexico Insurance Code, and the like, (3) the OSI's understanding about legitimate versus illegitimate HCSMs, (4) the OSI's understanding of how the Affordable Care Act impacts its actions, and (5) each of the above in relation to the OSI's actions against Gospel Light.

(Doc. 184 at 7.)

To the extent that Mr. Walker's testimony about these topics would not expose predecisional, deliberative communications or his unexpressed thoughts about his rulings and recommendations, it would fall outside the scope of the deliberative process and mental process privileges. Further, as noted above, the privileges do not protect factual content related to these topics unless it is inextricably intertwined with deliberative content or its disclosure would reveal deliberative content. Thus, for example, testimony about the OSI's procedures for conducting investigations and enforcement actions, including against Gospel Light and other HCSMs, would appear to fall well outside the scope of either privilege.

Moreover, to the extent that Mr. Walker's testimony falls within the scope of the deliberative process or mental process privilege, Plaintiffs have overcome these privileges to some degree. Initially, the Court finds persuasive the line of civil rights cases in which courts have weighed the relevant factors in deciding whether the privileges have been overcome, instead of declining to apply them categorically. As such, the privileges should generally be analyzed "one lawsuit—indeed, one document [or answer]—at a time" based on all of the relevant factors. *Myles v. Cook Cnty.*, Civ. No. 21-3935, 2023 WL 4976212, at *3 (N.D. Ill. Aug. 3, 2023). However, the Court will not conduct an item-by-item analysis here, not only because it cannot do so—specific documents and testimony have not been presented for its review—but also because it need not do

so. In light of the general topics Plaintiffs have described, it is clear that not all of Mr. Walker's testimony will be protected, and that is enough to require his deposition to go forward.

Broadly, as discussed above, Mr. Walker's testimony is relevant. And because he played a unique role in the OSI's enforcement action against Gospel Light, he is likely to have at least some information that is not available from other sources. As for the other factors to be weighed, the OSI obviously has a central role in this litigation; the litigants and the public have a strong interest in accurate judicial factfinding; the litigation presents serious issues; Plaintiffs have alleged and presented evidence of facts that could support an inference of discriminatory intent; and, there is a strong federal interest in enforcing federal law. All of these factors weigh in favor of overriding the privileges.

Of course, the risk that requiring Mr. Walker to testify will hinder frank discussion and independent decisionmaking at the OSI weighs against overriding the privileges. And this is not an insignificant consideration. Indeed, this factor could tip the scales in favor of preserving the privileges with respect to specific testimony that is only marginally relevant or that concerns topics about which other comparable evidence is available.[6] But for the most part, the factors in favor of overriding the privileges outweigh the countervailing factors in this civil rights action.

In sum, much of Mr. Walker's likely testimony is both relevant to the parties' claims and defenses and not protected by the deliberative process or mental process privilege, either because it does not fall within the scope of these privileges or because the privileges, which are qualified,

---

[6] For example, it is unlikely that Plaintiffs could successfully compel Mr. Walker to elaborate on the official reasons he gave for his recommendations regarding Gospel Light, because their need for him to do so is negligible in light of the availability of comparable evidence from another source, *i.e.*, his 100-page Recommended Decision. And of course, any privilege that might have otherwise protected the Recommended Decision itself has been waived because it has been incorporated into the OSI's Final Decision. *Nat'l Council of La Raza v. Dep't of Just.*, 339 F. Supp. 2d 572, 585 (S.D.N.Y. 2004). On the subject of waiver, however, Plaintiffs have not shown that Defendants have waived any privileges protecting any other testimony Mr. Walker may give, because they have not identified the specific testimony for which they claim the privileges have been waived or the specific circumstances giving rise to each such waiver. (*See* Doc. 184 at 14.)

have been overcome. Thus, the Court will grant Plaintiffs' Motion and compel Mr. Walker to appear to be deposed pursuant to Plaintiffs' November 6, 2024 subpoena. However, the Court's Order is without prejudice to Defendants' ability to instruct Mr. Walker not to answer specific questions on the basis of the deliberative process or mental process privilege, and the Court expects the parties to familiarize themselves with the law discussed herein so that they may comply with it in formulating the questions they ask and any assertions of privilege they make at the deposition.[7]

IT IS THEREFORE ORDERED as follows:

1.      Plaintiffs' Motion to Compel Non-Party Hearing Officer R. Alfred Walker's Deposition Subpoena (Doc. 184) is GRANTED;

2.      Within fourteen (14) days of entry of this Order, the parties and Mr. Walker or his counsel shall confer with one another regarding a mutually agreeable date and time for Mr. Walker's deposition; and,

3.      Within thirty-five (35) days of entry of this Order, Mr. Walker shall appear to be deposed pursuant to Plaintiffs' November 6, 2024 subpoena, modified to reflect the new date and time the parties and Mr. Walker have selected.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

[7] And of course, this Order is without prejudice to Defendants' and Mr. Walker's ability to assert any other applicable privileges in response to specific questions asked at the deposition.

11